# 24-2555

## United States Court of Appeals
### *for the*
## Second Circuit

JAMES HARKER,

*Plaintiff-Appellant*,

– v. –

META PLATFORMS, INC., ASSOCIATION OF INDEPENDENT COMMERCIAL PRODUCERS, INC., SOMETHING IDEAL, LLC, DBA M SS NG P ECES, BBDO WORLDWIDE, INC.,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK (No. 1:23-cv-07865-LTS)

---

**OPENING BRIEF FOR PLAINTIFF-APPELLANT**

---

Ronald A. Berutti
**MURRAY-NOLAN
BERUTTI LLC**
30 Wall Street
8th Floor
New York, NY 10005
(212) 575-8500
ron@mnblawfirm.com

Clark Lassiter Hildabrand
**COOPER & KIRK, PLLC**
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600
Fax: (202) 220-9601
childabrand@cooperkirk.com

*Attorneys for Plaintiff-Appellant James Harker*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION......................................................................................1

JURISDICTIONAL STATEMENT ........................................................3

STATEMENT OF THE ISSUES ..............................................................4

STATEMENT OF THE CASE ..................................................................4

    I.    Factual Background. ...................................................................4

    II.    Procedural History. ....................................................................9

SUMMARY OF ARGUMENT ...............................................................11

STANDARD OF REVIEW .....................................................................12

ARGUMENT ...........................................................................................13

I.    Harker Has Standing To Bring His Discrimination Claims.........................13

    A.    Harker plausibly alleged sufficient facts to establish standing...........13

    B.    Harker did not need to apply to the unposted positions to have standing to bring his discrimination claims against Defendants. .......15

II.    Harker Has Standing To Bring His Retaliation Claims. ...............................24

CONCLUSION ........................................................................................25

## TABLE OF AUTHORITIES

**Case**                                                                                      **Page**

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*,
    103 F.4th 765 (11th Cir. 2024) .......................................................... 15, 20, 23

*Amadei v. Nielsen*,
    348 F. Supp. 3d 145 (E.D.N.Y. 2018) ........................................................ 22

*Antonyuk v. James*,
    120 F.4th 941 (2d Cir. 2024) ................................................................ 15, 16

*Bohnak v. Marsh & McLennan Cos.*,
    79 F.4th 276 (2d Cir. 2023) .................................................................. 14, 15

*Carney v. Adams*,
    592 U.S. 53 (2020) ................................................................................ 18

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016) ................................................ 1, 12, 13, 14, 22, 24

*Cottrell v. Alcon Labs.*,
    874 F.3d 154 (3d Cir. 2017) ...................................................................... 14

*DiCocco v. Garland*,
    52 F.4th 588 (4th Cir. 2022) ..................................................................... 14

*Dowdy v. N.Y. City Dep't of Sanitation*,
    No. 22-CV-6284, 2023 WL 6258536 (S.D.N.Y. Sept. 26, 2023) ..... 15, 18, 19

*Equal Rts. Ctr. v. Uber Techs., Inc.*,
    525 F. Supp. 3d 62 (D.D.C. 2021) ............................................................. 19

*Grant v. Bethlehem Steel Corp.*,
    635 F.2d 1007 (2d Cir. 1980) .................................................................... 17

*Guthrie v. Rainbow Fencing, Inc.*,
    113 F.4th 300 (2d Cir. 2024) ................................................................ 15, 19

*Harker v. Meta Platforms, Inc.*,
    No. 23-cv-7865, 2024 WL 3990261 (S.D.N.Y. Aug. 29, 2024) ................... 10

*Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps.*
    *of Library of Cong., Inc. v. Billington*,
    737 F.3d 767 (D.C. Cir. 2013) .................................................................. 24

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977) ...................................................................... 16, 17, 18

*Jackson-Bey v. Hanslmaier*,
   115 F.3d 1091 (2d Cir. 1997) ............................................................ 15, 16, 18

*Petrosino v. Bell Atlantic*,
   385 F.3d 210 (2d Cir. 2004) .................................... 2, 11, 16, 18, 22, 23, 25

*Reed v. Lockheed Aircraft Corp.*,
   613 F.2d 757 (9th Cir. 1980) ................................................................ 16, 17

*Soule v. Conn. Ass'n of Schs., Inc.*,
   90 F.4th 34 (2d Cir. 2023) ...................................... 12, 13, 14, 15, 19, 22, 24

*Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*,
   600 U.S. 181 (2023) ............................................................................... 17, 18

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ....................................................................................... 19

*Woods v. Centro of Oneida, Inc.*,
   103 F.4th 933 (2d Cir. 2024) ....................................................................... 15

## Rules, Codes, and Statutes

FED. R. CIV. P.
   12(b)(1) ........................................................................................................ 10
   12(b)(6) ........................................................................................................ 10

42 U.S.C.
   § 1981 .......................................................................................................... 10
   § 1985(3) ...................................................................................................... 10
   § 2000e *et seq.* ........................................................................................... 10

N.Y. Exec. Law § 296 ...................................................................................... 10

iii

## INTRODUCTION

Plaintiff-Appellant James Harker, an experienced electrician on commercial, film, and television productions, was not considered for positions because he is white. Defendants-Appellees created and implemented a program—the Double the Line ("DTL") initiative—that intentionally discriminates against white men and women by making positions exclusively available to "BIPOC" individuals ("Black Indigenous People of Color"). These Double the Line positions included a DTL gaffer (senior electrician) position on a December 2022 production for Defendant-Appellee Meta Platforms, Inc. ("Meta"), that paid more than Harker was compensated as a best boy electrician (the gaffer's second in command). But the Double the Line positions were offered solely to BIPOC individuals with no application process and without Harker's knowledge. After he pointed out that the sham apprenticeship program was racially discriminatory, Defendant-Appellee Something Ideal, LLC—the production company—ceased hiring Harker for subsequent projects.

Through their discriminatory Double the Line program and retaliatory refusal to hire Harker, Defendants have inflicted upon Harker concrete, particularized, and actual injuries. Such injuries include financial loss, a classic injury in fact. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).

1

Yet the district court dismissed Harker's discrimination and retaliation claims after ruling that Harker did not have standing. A-62. In its decision, the district court made a series of legal errors. Most significantly for the discrimination claims, the district court faulted Harker for not applying for the DTL positions even though no application process existed for those unposted positions. This Court's decision in *Petrosino v. Bell Atlantic* makes clear that a plaintiff does not need to allege applying for job openings when "the vacancy at issue was not posted" and "the employee *either* had (a) no knowledge of the vacancy before it was filled *or* (b) attempted to apply for it through informal procedures endorsed by the employer." 385 F.3d 210, 227 (2d Cir. 2004) (emphases added). Harker had no knowledge of the DTL positions for the Meta production until after the production began, when Something Ideal had already filled them with exclusively BIPOC individuals. Even informally applying would make no difference because the DTL positions were expressly limited to BIPOC individuals, excluding Harker based on the color of his skin.

Dispensing with Harker's complaint in gross, the district court did not explain why Harker lacks standing to bring his retaliation claims. Something Ideal knows that Harker seeks work as an electrician on commercial, film, and television productions. The production company had hired Harker in the past and even entered into a settlement with the National Labor Relations Board, requiring Something

2

Ideal to offer him work. Something Ideal stopped offering Harker work after he questioned the company's overt racial discrimination.

Harker's injuries are not abstract. He has suffered and continues to suffer injury traceable to Defendants' racially discriminatory Double the Line initiative and retaliatory hiring decisions. Because Harker has standing, the district court's order and judgment granting Defendants' motions to dismiss should be reversed.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367(a). The district court granted Defendants' motions to dismiss to the extent they sought dismissal for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) on August 29, 2024, A-62, and entered judgment dismissing the Amended Complaint on August 30, 2024, A-63. Plaintiff filed a timely notice of appeal on September 24, 2024. A-64. This Court has appellate jurisdiction under 28 U.S.C. § 1291. This appeal is from a final order and judgment that dispose of all claims.

## STATEMENT OF THE ISSUES

1. Did Plaintiff-Appellant Harker have standing to bring discrimination claims when Defendants-Appellees refused to consider Harker for positions that lacked any application process and that were filled with members of other races before Harker had any knowledge of the positions?

2. Did Plaintiff-Appellant Harker have standing to bring retaliation claims against Defendant-Appellee Something Ideal when the production company ceased to hire Harker for any subsequent projects after he questioned the company's racially discriminatory practices?

## STATEMENT OF THE CASE

### I.    Factual Background.

James Harker is an experienced motion picture lighting technician who, at the time of the operative complaint, had worked for over twenty-seven years as an electrician on major commercial, feature film, and television productions. A-17 ¶ 34. Most of his work is done as a gaffer, best boy, or electrician. A-17 ¶ 35. A gaffer is the most senior or highest-level electrician on a production, while a best boy electrician is second in command, has supervisory duties over the other electricians, and reports to the gaffer. *Id.* Harker is experienced in maintaining the safety of the set with the high voltage cables, sophisticated equipment unique to the industry, and complicated rigging techniques necessary to prevent risks, including fire and

electrocution, that could harm the cast and crew. A-18 ¶ 36. Harker has primarily worked in positions such as electrician and best boy electrician but would like to increase his experience as a gaffer. A-18 ¶ 37; A-43 ¶ 9.

In the commercial production industry, the standard practice is that production companies do not use an application process to make hires but instead initiate contact with prospective employees to offer them specific work. A-43 ¶ 4. Consistent with that standard industry practice, on December 12, 2022, a production supervisor offered Harker a position with Something Ideal to work as a best boy electrician for a Meta commercial being shot on December 14, 2022. A-18 ¶ 40; A-43 ¶ 5. Something Ideal offered Harker the position even though he had never applied to work for Something Ideal. A-43 ¶ 3. Harker had not applied to work for Something Ideal in that position and was unaware of any application process for any position on the production. A-18 ¶ 41; A-43 ¶ 6.

In the email offering Harker the position of best boy electrician, the production supervisor indicated that the gaffer had already been hired. A-49 (Dec. 12, 2022 5:02 PM email). Harker accepted the best boy position for the December 14, 2022 production. A-19 ¶ 44; A-43 ¶ 7.

At the production, Harker noticed that the call sheet listed nine "DTL" employees, including a "Gaffer – DTL" different from the non-DTL gaffer. A-52; *see* A-19–20 ¶¶ 46, 54; A-44 ¶ 10. The production supervisor explained that "DTL"

5

refers to "Double the Line," a program sponsored by Defendant-Appellee Association of Independent Commercial Producers, Inc. ("AICP"), to double certain roles with positions filled by BIPOC individuals. A-44 ¶¶ 11–12. All DTL employees on the Meta production were BIPOC, the only characteristic they all shared. A-23 ¶ 82; A-47 ¶ 42. Something Ideal did not have an application process to hire for the DTL program and did not post the DTL positions. A-30 ¶¶ 134–35.

Harker spoke and worked with the DTL gaffer, Jasiel Lampkin. A-19–20 ¶¶ 47–48, 58. Ms. Lampkin is BIPOC. A-44 ¶ 16. She lacked experience as an electrician or gaffer and was unable even to properly coil an electric extension cord, which is among the most basic skills of any motion picture electrician. A-44–45 ¶¶ 17–18. Despite Lampkin's lack of experience, she was paid more as the DTL gaffer than Harker was as the best boy electrician. A-19 ¶ 49. But because Harker is white, Something Ideal did not consider him for the DTL gaffer position, a leadership position on the December 2022 production. A-20 ¶ 55.

The DTL program was not an apprenticeship program. A-24–25 ¶ 95. As Harker observed, several DTL positions were filled with individuals with substantial industry experience and who operated without supervision. *See* A-45–47 ¶¶ 19–36, 41–42. The BIPOC "Electrician–DTL," for example, was fully qualified as an electrician and did not act as an apprentice. A-46 ¶¶ 32–36. In contrast, the non-BIPOC electrician lacked substantial commercial production experience and

6

connections to the industry but was not hired in a DTL role. A-46–47 ¶¶ 37–40. But for Harker's race, color, and national origin, he was qualified for the positions reserved by Defendants for BIPOC individuals. A-27 ¶ 112.

After learning that the DTL program paid participants through a separate system that may have deprived them of some collective bargaining agreement benefits, Harker informed Something Ideal through the production supervisor that depriving only DTL hires of such benefits was racially discriminatory, as all DTL employees were members of racial minorities. A-44 ¶ 14. (Harker had himself withdrawn from the relevant union before the December 2022 production. A-18 ¶¶ 38–39.) The production supervisor informed Harker that the DTL designation was related to a program run by the AICP and that Something Ideal was required to follow the DTL program for the December 2022 Meta production. A-44 ¶ 12.

Since Harker complained that the DTL program is racially discriminatory, he has not been hired for any subsequent projects by any of the Defendants. A-47 ¶ 46. Something Ideal has not offered Harker employment since December 14, 2022, even though the production company had entered into a settlement with the NLRB requiring Something Ideal to offer Harker employment at least until the expiration of the settlement agreement on May 9, 2023. Something Ideal Am. Mot. to Dismiss Reply, Doc. 47 at 8–9 (Feb. 22, 2024); Pl.'s Resp. to Something Ideal Am. Mot. to Dismiss, Doc. 46 at 13 (Jan. 15, 2024).

The DTL initiative is part of AICP's "Equity and Inclusion Program." A-14 ¶ 21. The AICP is an association of commercial production companies whose members account for 80-85% of all motion picture advertisements in the United States. A-14 ¶¶ 19–20. The association has not hidden the racially discriminatory purpose and operation of the program to advantage BIPOC individuals and exclude white men and women because of their race, color, or national origin. A-14 ¶¶ 22–33. The intent and purpose of the DTL initiative and of AICP's Equity and Inclusion Program is to encourage, facilitate, and promote illegal race-based hiring to "push forward a demographic shift" and to stigmatize, target, harm, demote, constructively discharge, refuse to hire, and intentionally discriminate against white people like Harker solely because of their race, color, and national origin. A-17 ¶ 33 (quoting AICP, *Equity and Inclusion*, https://bit.ly/3Z3P1sr).

Funding for the DTL program is used "to cover the costs to hire" only BIPOC candidates. A-14 ¶ 22 (quoting AICP, *Double the Line*, https://bit.ly/3OXQ095). The AICP justifies this unlawful racial discrimination on the grounds that "[m]any agencies and clients are reaching out to production and post companies asking how to add mandates to the bidding process to increase diversity among crew." A-14–15 ¶ 24 (quoting AICP, *Double the Line*, https://bit.ly/3OXQ095). The AICP asks "clients and agencies to take the pledge to #doubletheline so that we can increase diversity and inclusion with an emphasis on leadership positions." *Id.*

8

Defendants Meta, BBDO Worldwide, Inc. ("BBDO"), and Something Ideal are examples of such "clients and agencies." A-15 ¶ 25. Meta (the client) and/or BBDO (the agency) committed to "covering the cost of the selected role[s], thereby doubling the line" for the December 2022 production. A-25 ¶¶ 97–98. Defendants were aware of and participated in the Double the Line initiative with full knowledge and intent to discriminate on the basis of race, color, or national origin. A-25 ¶¶ 99–101. They conspired and contracted to implement the DTL initiative and to deny and continue to deny Mr. Harker the opportunity to contract for available positions he was willing and qualified to fill. A-25 ¶ 101.

As a result of the discriminatory and retaliatory conduct of the Defendants, Harker has incurred loss of earnings, earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish and loss of life's pleasures. A-25 ¶ 102.

## II.  Procedural History.

Harker filed a timely charge with the EEOC on May 31, 2023, for discrimination by Something Ideal. A-30 ¶ 131. The EEOC issued a Notice of Right to Sue Letter on June 8, 2023. A-38–39.

Harker filed suit in the U.S. District Court for the Southern District of New York on September 5, 2023. Complaint, Doc. 1 (Sept. 5, 2023). He filed an amended complaint on November 22, 2023. A-11. Harker brought six claims:

(1) discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981;

(2) discrimination in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985(3);

(3) retaliation in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981;

(4) discrimination in violation of Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e *et seq.*; (5) retaliation in violation of Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e *et seq.*; and (6) discrimination in violation of the New York Human Rights Law, N.Y. Exec. Law § 296. A-26–34 ¶¶ 105–54.

Something Ideal moved to dismiss the amended complaint for lack of subject-matter jurisdiction, FED. R. CIV. P. 12(b)(1), and for failure to state a claim, FED. R. CIV. P. 12(b)(6). Something Ideal Am. Mot. to Dismiss, Doc. 42 (Dec. 19, 2023). The other Defendants filed a similar motion to dismiss. Non-Employer Defs.' Mot. to Dismiss, Doc. 43 (Dec. 19, 2023).

On August 29, 2024, Judge Laura Taylor Swain granted Defendants' motions "to the extent they seek dismissal of the Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." A-62. This decision is also available at *Harker v. Meta Platforms, Inc.*, No. 23-cv-7865, 2024 WL 3990261 (S.D.N.Y. Aug. 29, 2024). The district court ruled that Harker lacked standing because he had not suffered an Article III "injury in fact." A-56. On August 30, 2024, the district court entered judgment "dismissing the Amended Complaint in its entirety" due to the "lack of subject matter jurisdiction pursuant to Federal Rule

of Civil Procedure 12(b)(1)." A-63. Harker filed a timely notice of appeal on September 24, 2024. A-64.

## SUMMARY OF ARGUMENT

Defendants conspired to deny Harker employment opportunities because he is white. Something Ideal then retaliated against him for questioning Defendants' racially discriminatory Double the Line initiative. Under a normal application of this Court's standing precedent, Harker suffered injuries in fact traceable to Defendants' conduct excluding him from the unposted positions he was willing and otherwise qualified to serve in.

To reach a contrary result, the district court faulted Harker because he did not use nonexistent application processes for the unposted DTL positions or other, non-DTL positions. The district court refused to apply this Court's ruling in *Petrosino*, 385 F.3d at 227, which establishes that Harker did not need to apply for the unposted positions in order to challenge his exclusion from them. Harker was not aware of the DTL positions before Defendants filled them, and Something Ideal already knew that Harker was interested in and willing to fill motion picture electrical technician positions. Either suffices for standing. Contrary to the standard appropriate for a facial motion to dismiss for lack of standing, the district court rejected Harker's clear statement that he was willing to serve in the DTL positions and refused to credit Harker's allegation that the DTL program is not a genuine

11

apprenticeship program, even though he identified several examples of highly qualified BIPOC individuals serving in DTL roles as non-apprentices. Harker was excluded from the DTL positions not because they were apprenticeship roles but rather because of the positions' facially discriminatory racial requirements.

Focusing only on Harker's discrimination claims, the district court did not provide any explanation whatsoever as to why he lacked standing to bring his retaliation claims against Something Ideal. Harker has standing to bring his retaliation claims because the production company ceased hiring him for *any* subsequent projects in either DTL or non-DTL positions after he questioned the company's racially discriminatory practices, inflicting financial, reputational, and other injuries on Harker in particular.

The district court's order and judgment granting Defendants' motions to dismiss should be reversed.

## **STANDARD OF REVIEW**

This Court reviews de novo the district court's dismissal of the complaint for lack of standing. *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 44 (2d Cir. 2023) (en banc). Where, as here, the Rule 12(b)(1) motions are facial ones based on the allegations of the complaint and exhibits attached to it, "the plaintiff has no evidentiary burden." *Carter*, 822 F.3d at 56–57. "At the pleading stage, general factual allegations of injury may suffice." *Soule*, 90 F.4th at 45 (quoting *Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "The task of" this Court "is to determine whether" Plaintiff "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter*, 822 F.3d at 56 (cleaned up). The Court must construe the complaint and attached exhibits in Plaintiff Harker's favor, "accepting all material factual allegations as true" and "draw[ing] all reasonable inferences in favor of" Harker. *Soule*, 90 F.4th at 44, 48; *see Carter*, 822 F.3d at 57.

## ARGUMENT

### I.     Harker Has Standing To Bring His Discrimination Claims.

Harker plausibly alleged facts sufficient to suggest that he has standing to sue. He has established each of the three elements of Article III standing: (1) Harker "suffered an injury in fact," (2) that "'is fairly traceable' to Defendants' challenged conduct," and (3) "is likely to be redressed by a favorable judicial decision." *Soule*, 90 F.4th at 45 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Harker has "a personal stake in the outcome of the litigation." *Id.* In ruling otherwise, the district court improperly rejected the relevance of this Court's decision in *Petrosino*, refused to accept all material factual allegations in the amended complaint as true, and declined to draw reasonable inferences in Harker's favor.

### A. Harker plausibly alleged sufficient facts to establish standing.

Construing the amended complaint and accompanying exhibits in Plaintiff Harker's favor, as the Court must at the motion to dismiss stage, Harker easily

"allege[d] facts that affirmatively and plausibly suggest that [he] has standing to sue." *Carter*, 822 F.3d at 56 (cleaned up). Defendants conspired to racially discriminate against Harker by funding and creating Double the Line positions for the December 2022 Meta production and other productions that were only offered to BIPOC individuals. Defendants excluded Harker from the DTL positions because he is white. Harker was and is willing to fill DTL positions. A-25 ¶ 101. Defendants' exclusion of Harker from these DTL employment opportunities caused him "concrete," "particularized," and "actual or imminent" harms redressable by judicial relief. *Soule*, 90 F.4th at 45.

As one example, Harker would have earned more money and gained gaffer experience in the DTL gaffer position for the December 2022 Meta production if he had been offered that position instead of the best boy position. A-19 ¶ 49. "[L]oss of employment and the resulting loss of wages and other benefits" are "classic and paradigmatic injuries for standing purposes." *DiCocco v. Garland*, 52 F.4th 588, 591–92 (4th Cir. 2022) (quotation omitted); *see also Carter*, 822 F.3d at 55 ("Any monetary loss suffered by the plaintiff suffices for this element; even a small financial loss suffices." (quotation omitted)); *Cottrell v. Alcon Labs.*, 874 F.3d 154, 163 (3d Cir. 2017) ("[F]inancial harm is a classic and paradigmatic form of injury in fact." (cleaned up)). Defendants also stigmatized Harker and inflicted reputational harms on him because he is white, "intangible harms" that are "traditionally

14

recognized as providing a basis for lawsuits in American courts." *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 284 (2d Cir. 2023) (quotation omitted).

Defendants continue to injure Harker by excluding him from all DTL positions due to his skin color, causing him further financial, reputational, and other harms. *See Woods v. Centro of Oneida, Inc.*, 103 F.4th 933, 940 (2d Cir. 2024). Harker "has actually lost wages" and "is not simply policing legal infractions in the abstract." *Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300, 309–10 (2d Cir. 2024).

While the district court did not rule on redressability, the courts could redress Harker's past and ongoing injuries by awarding him damages and issuing declaratory and injunctive relief against Defendants and their racially discriminatory Double the Line initiative. *See Soule*, 90 F.4th at 47–48; *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 772 (11th Cir. 2024). Harker has established all three elements necessary for Article III standing.

### B. Harker did not need to apply to the unposted positions to have standing to bring his discrimination claims against Defendants.

The district court ruled that Harker had not suffered "an Article III 'injury in fact'" because he did not "allege that he 'actually applied for the position at issue.'" A-56 (quoting *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997); *Dowdy v. N.Y. City Dep't of Sanitation*, No. 22-CV-6284, 2023 WL 6258536, at *5 (S.D.N.Y. Sept. 26, 2023)). Although the district court treated *Jackson-Bey* as a case about injury in fact, it really "sounds in traceability." *Antonyuk v. James*, 120 F.4th

15

941, 978 n.21 (2d Cir. 2024). Harker's injuries were traceable to the Defendants racially discriminating against him and did not "result[] from his own decision not to follow [] simple procedure[s]." *Jackson-Bey*, 115 F.3d at 1095.

The December 2022 Meta production DTL positions were unposted and filled in a racially discriminatory manner before Harker ever knew about them. *Petrosino*, 385 F.3d at 227; *see Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 761 (9th Cir. 1980) (reversing denial of discrimination claim where employee "had no notice of an opening"). Even if there had been an application process for the DTL positions, which there was not, Harker could challenge his racially discriminatory exclusion from them because the vacancies at issue were "not posted" and were filled before Harker learned about them. *Petrosino*, 385 F.3d at 227.

And Defendants have continued to impose facially discriminatory policies to exclude Harker from DTL positions that completely lack an application process. Something Ideal knows Harker is an experienced motion picture lighting technician seeking work but refuses to offer him the DTL positions that it offers to BIPOC individuals. Article III does not prohibit Harker from seeking relief in federal court from such racial discrimination. Defendants have announced their "policy of discrimination" against white men and women, and their victims are "not [] limited to the few who ignore[]" the policy "and subject[] themselves to personal rebuffs" because they are not BIPOC. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324,

16

365 (1977) (providing example of posting "a sign reading 'Whites Only' on the hiring-office door").

Article III does not require Harker to "engage in a futile gesture" of submitting an application for unposted DTL positions that have no application process and that Defendants exclude him from with facially discriminatory racial requirements. *Id.* at 365–66; *see also Reed*, 613 F.2d at 762 ("When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application."). Defendants cannot insulate their racially discriminatory Double the Line initiative from scrutiny in federal court simply because they choose not to provide an application process for the unposted DTL positions, which they then offer only to BIPOC individuals. *See Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1017 (2d Cir. 1980) ("[W]e believe that the failure to solicit qualified blacks as foremen constitutes a form of unacceptable discrimination in this case, since whites were here being solicited at the same time, even though the whites made no application for the foreman's jobs for which they were hired.").

"Eliminating racial discrimination means eliminating all of it." *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 206 (2023). An "individual's race may never be used against him in the" employment "process" any more than it could be used against him in the college admissions

17

process. *Id.* at 218; *see id.* at 256–57 (Thomas, J., concurring) (noting that federal employment discrimination laws provide even *less* protection for racial discriminators). The "manner in which" Defendants "publicize[] vacancies" and their "recruitment techniques" do not allow their racial discrimination to "escape[] the scrutiny of the federal courts." *Teamsters*, 431 U.S. at 365 & n.51.

Nevertheless, the district court dismissed Harker's discrimination claims from federal court because he did not engage in the futile gesture of applying for the unposted, racially restricted DTL positions. To reach this result, it ruled that *Petrosino* is not relevant to "whether a plaintiff has established standing to bring such a claim." A-61.

This was error. While *Petrosino* was a case about the merits of a Title VII employment discrimination claim, 385 F.3d at 213, so was *Teamsters*, 431 U.S. at 328. Both cases explain how federal courts should handle discrimination claims when the plaintiff did not apply for a position. And the Supreme Court has made clear that decisions such as *Teamsters* about the futility of applying for positions before bringing Title VII discrimination claims are relevant precedents for determining whether a plaintiff has Article III standing. *Carney v. Adams*, 592 U.S. 53, 66 (2020) (quoting *Teamsters*, 431 U.S. at 365–66, as one of "our precedents" for determining standing); *see also Jackson-Bey*, 115 F.3d at 1096 (citing *Teamsters*, 431 U.S. at 365–66, for "threshold requirement[s] for standing"); *Dowdy*, 2023 WL

6258536, at *5 (agreeing that "the Supreme Court recognized the *Teamsters* holding in the context of Article III standing" even though "this decision was not explicitly related to standing"); *Equal Rts. Ctr. v. Uber Techs., Inc.*, 525 F. Supp. 3d 62, 76, 78–79 (D.D.C. 2021) (Ketanji Brown Jackson, J.) (using *Teamsters* for standing analysis). Like *Teamsters*, this Court's decision in *Petrosino* is relevant for determining whether a plaintiff has "a personal stake in the outcome of the litigation" of discrimination claims. *Soule*, 90 F.4th at 45.

This case is not one, as the district court ruled, where Plaintiff "merely identif[ies] a 'statutory violation,' without pleading personal harm arising from the violation." A-61 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021)). Harker's injuries go "*beyond the statutory violation itself.*" *Guthrie*, 113 F.4th at 306 (quoting *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022)) (emphasis in original). Most obviously, Defendants imposed "monetary harms" on Harker by excluding him from the DTL gaffer position on the December 2022 Meta production, a position better compensated than the best boy position Defendant Something Ideal offered him. *TransUnion*, 594 U.S. at 425. That "monetary injury to the plaintiff" and similar financial injuries from Defendants' racially discriminatory exclusion of Harker from other DTL positions "readily qualify as concrete injuries under Article III." *Id.* The "injury is actual because it is alleged to have already occurred." *Soule*, 90 F.4th at 47.

19

Downplaying Harker's real-world harm, the district court rejected or ignored numerous allegations in the amended complaint so that it could conclude that Harker was not "ready and able" to work in any DTL position. A-59. The amended complaint clearly states that Harker was "willing and qualified to" fill DTL positions. A-25 ¶ 101. This is not a mere "boilerplate 'able and ready' recitation." *Am. All. for Equal Rts.*, 103 F.4th at 774. Harker is not some "bystander[] who simply wish[es] to challenge" the Double the Line initiative because he "disagree[s] with it on principle." *Soule*, 90 F.4th at 46. He is an experienced motion picture lighting technician who has worked as a gaffer, best boy, and electrician.

Something Ideal itself hired Harker as a best boy electrician but paid him less than it paid the DTL gaffer, a position Defendants excluded Harker from because he is white. Harker wants to increase his experience as a gaffer, and the DTL gaffer position would have enabled him to do so. A-18 ¶ 37; A-43 ¶ 9. Normally, the best boy electrician is the number two electrical position on a production, which, absent racial discrimination, should have made Harker a natural candidate for the second gaffer position. But because Harker is white, Something Ideal did not offer him the better-paying DTL gaffer position.

Even the district court acknowledged that Harker "claims to have wanted" the DTL gaffer position "which did, in fact, go to someone he complains was not qualified" but was BIPOC. A-59–60. Harker provided specific examples of how the

20

BIPOC DTL gaffer lacked experience as an electrician or gaffer and was unable even to properly coil an electric extension cord. A-44–45 ¶¶ 17–18. The district court erroneously did not credit these allegations, however, because they were favorable to him. A-60.

Instead, the district court credited the argument of the Defendants other than Something Ideal that, regardless of his race, Harker was unqualified for the DTL positions because he was too experienced. A-59. Tellingly, the production company that actually hired individuals for the December 2022 production did not argue that Harker was otherwise unqualified. As Harker pointed out, numerous highly experienced BIPOC individuals filled other DTL positions and did not act as apprentices, contradicting Defendants' description of the Double the Line initiative as an apprenticeship program. A-45–47 ¶¶ 19–36, 41–42 (identifying the "Prop Master – DTL," "Key Grip–DTL," and "Electrician–DTL"). The DTL electrician was even more highly qualified than one of the non-DTL electricians. A-46–47 ¶¶ 32–40. The "DTL employees had various skill levels" and shared only one characteristic: they were all BIPOC individuals. A-47 ¶¶ 41–42. That fact is consistent with the DTL initiative constituting a racially discriminatory program but is inconsistent with the pretext that it was also an apprenticeship program.

The district court committed legal error by rejecting, without any evidence to the contrary, "Mr. Harker's assessment of the experience of individuals awarded

21

other roles," including roles such as electrician for which he has extensive experience. A-59. Such skepticism of Plaintiff's factual allegations is inappropriate at the motion to dismiss stage. *See Soule*, 90 F.4th at 44, 48; *Carter*, 822 F.3d at 57; *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 154 n.4 (E.D.N.Y. 2018).

Because Harker certainly would have accepted the DTL gaffer position if Defendants had offered it to him, the district court faults him for not "attempt[ing] to express his interest in working as a gaffer on the Production." A-57. But Harker had "no knowledge of the vacancy" that is "at issue"—the DTL gaffer position and the other DTL positions—"before it was filled." *Petrosino*, 385 F.3d at 227. Expressing interest after the fact would have been futile and pointless.

Even if the non-DTL gaffer position were somehow relevant to this inquiry, Harker also did not learn about that unposted position until after it was filled. The production supervisor identified the Meta production's non-DTL gaffer, which appeared to be the *only* gaffer on the production, in the same email offering Harker the best boy position. A-49 (Dec. 12, 2022 5:02 PM email). Harker did not have to rudely demand the already filled position for himself in order to preserve his ability to challenge the racially discriminatory Double the Line initiative which, at the time he was hired as best boy, Harker had no knowledge of.

In addition to Harker satisfying the first option under *Petrosino*, which excuses not applying for unposted vacancies when the individual has "no knowledge

of the vacancy before it was filled," he also satisfied the second option of using "informal procedures endorsed by the employer." 385 F.3d at 227. There was, of course, no application process for any position on the December 2022 production or any subsequent production. However, Something Ideal knows Harker is an experienced motion picture lighting technician who would accept employment in that field. Besides that knowledge, there is no other "informal procedure[] endorsed by the employer," so Harker also satisfies this second option under *Petrosino*, *id.*

In fact, as Something Ideal admitted below, the production company had even entered into a settlement with the NLRB to offer Harker employment (at a minimum) until the expiration of the settlement agreement on May 9, 2023. Something Ideal Am. Mot. to Dismiss Reply, Doc. 47 at 8–9 (Feb. 22, 2024); Pl.'s Resp. to Something Ideal Am. Mot. to Dismiss, Doc. 46 at 13 (Jan. 15, 2024). Something Ideal cannot now deny knowing that Harker sought employment on the company's productions. The production company does not need any more information to offer Harker employment in a DTL position than it needed when it offered him the best boy position on the Meta production, which Harker did not submit an application for.

The standards of the industry require nothing more from Harker. "Article III doesn't require so futile a gesture" as Harker submitting a non-existent application for unposted DTL positions that Defendants disqualify him from with "race-exclusionary rules." *Am. All. for Equal Rts.*, 103 F.4th at 774.

## II.     Harker Has Standing To Bring His Retaliation Claims.

The district court dismissed Harker's retaliation claims together with his discrimination claims without pausing to provide any explanation as to why Harker lacked standing to bring the retaliation claims against Something Ideal. Harker plausibly alleged facts sufficient to establish standing to bring the retaliation claims. *See Carter*, 822 F.3d at 56.

Since Harker questioned Defendants' racially discriminatory Double the Line initiative on December 14, 2022, Defendant Something Ideal has not hired him for any position—neither for DTL positions nor for non-DTL positions. Something Ideal's refusal to offer positions to Harker has caused him injuries in fact that are redressable in court. Denying Harker employment opportunities has caused him financial, reputational, and other harms. In making this standing determination, the Court must accept Harker's allegations as true and "assum[e] the success of Plaintiff['s] claims on the merits." *Soule*, 90 F.4th at 51; *see also Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Library of Cong., Inc. v. Billington*, 737 F.3d 767, 770–71 (D.C. Cir. 2013) (Kavanaugh, J.) (plaintiffs had standing to bring Title VII retaliation claims even when complaint failed to state a claim).

As with the discrimination claims, it makes no difference that Harker has not applied for the various unposted positions that Something Ideal has not offered him since December 2022. As the positions are unposted and not publicly announced,

Harker satisfies the first option under *Petrosino* because he has "no knowledge" of the specific, unposted vacancies at issue before Something Ideal fills them. 385 F.3d at 227. And Harker satisfies the second option under *Petrosino* because there is no further "informal procedure[] endorsed by the employer" that he needs to complete to alert Something Ideal of his interest in the vacancies. *Id.* Consistent with standard industry practice, the jobs lack any application process, and Something Ideal hired Harker in December 2022 as a best boy electrician even though he did not submit any application. Harker has worked in the industry as a motion picture lighting technician for over a quarter of a century. Something Ideal entered into a settlement agreement to hire Harker that extended nearly five months after it employed Harker to work on the Meta production. Harker is willing and qualified to work for Something Ideal, and there is no application process he could participate in. His injuries are traceable to Something Ideal retaliating against him.

## CONCLUSION

For the foregoing reasons, the district court's order and judgment granting Defendants' motions to dismiss should be reversed.

Dated: December 10, 2024          Respectfully submitted,


Ronald A. Berutti                    /s/Clark Lassiter Hildabrand
**MURRAY-NOLAN**                     **COOPER & KIRK, PLLC**
**BERUTTI LLC**                      Clark Lassiter Hildabrand
30 Wall Street                       1523 New Hampshire Ave., NW
8th Floor                            Washington, DC 20036
New York, NY 10005                   (202) 220-9600
(212) 575-8500                       Fax: (202) 220-9601
ron@mnblawfirm.com                   childabrand@cooperkirk.com


*Attorneys for Plaintiff-Appellant James Harker*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Local Rule 32.1(a)(4)(A) because this brief contains 5,911 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.

Dated: December 10, 2024      <u>/s/ Clark Lassiter Hildabrand</u>
Clark Lassiter Hildabrand

*Attorney for Plaintiff-Appellant*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 10th day of December 2024, I filed the foregoing Opening Brief via the Court's ACMS appellate system, which will electronically notify all counsel requiring notice.

Dated: December 10, 2024

/s/ Clark Lassiter Hildabrand
Clark Lassiter Hildabrand

*Attorney for Plaintiff-Appellant*

28