# 24-2555

## United States Court of Appeals
### *for the*
### Second Circuit

JAMES HARKER,

*Plaintiff-Appellant*,

– v. –

META PLATFORMS, INC., ASSOCIATION OF INDEPENDENT COMMERCIAL PRODUCERS, INC., SOMETHING IDEAL, LLC, DBA M SS NG P ECES, BBDO WORLDWIDE, INC.,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (No. 1:23-cv-07865-LTS)

## JOINT APPENDIX

Ronald A. Berutti
**MURRAY-NOLAN BERUTTI LLC**
30 Wall Street
8th Floor
New York, NY 10005
(212) 575-8500
ron@mnblawfirm.com

Clark Lassiter Hildabrand
**COOPER & KIRK, PLLC**
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600
Fax: (202) 220-9601
childabrand@cooperkirk.com

*Attorneys for Plaintiff-Appellant James Harker*

# TABLE OF CONTENTS

**Page**

District Court Docket Entries ...................................................................A-1

Amended Complaint, Doc. 34 (Nov. 22, 2023) ...................................A-11

Amended Complaint Ex. 1 EEOC Right to Sue Letter, Doc. 34-1
    (Nov. 22, 2023) .........................................................................A-37

Amended Complaint Ex. 2 Declaration of James Harker, Doc. 34-2
    (Nov. 22, 2023) .........................................................................A-42

Plaintiff's Motion to Dismiss Response Ex. 1 Emails, Doc. 45-1
    (Jan. 25, 2024) ..........................................................................A-48

Plaintiff's Motion to Dismiss Response Ex. 2 Call Sheet, Doc. 45-2
    (Jan. 25, 2024) ..........................................................................A-51

Memorandum Order Granting Motions to Dismiss, Doc. 49
    (Aug. 29, 2024) .........................................................................A-53

Judgment Dismissing Amended Complaint, Doc. 50 (Aug. 30, 2024)...............A-63

Notice of Appeal, Doc. 51 (Sept. 24, 2024) .......................................A-64

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:23-cv-07865-LTS

Harker v. Meta Platforms, Inc. et al          Date Filed: 09/05/2023
Assigned to: Judge Laura Taylor Swain          Date Terminated: 08/30/2024
Cause: 28:1331cv Fed. Question: Other Civil Rights          Jury Demand: Plaintiff
                                               Nature of Suit: 440 Civil Rights: Other
                                               Jurisdiction: Federal Question

**Plaintiff**

**James Harker**          represented by     **Nicholas Barry**
                                            America First Legal Foundation
                                            611 Pennsylvania Ave SE #231
                                            Washington, DC 20003
                                            615-431-9303
                                            Email: nicholas.barry@aflegal.org
                                            *ATTORNEY TO BE NOTICED*

                                            **Ronald A. Berutti**
                                            Murray-Nolan Berutti LLC
                                            136 Central Avenue
                                            Ste 2nd Floor
                                            Clark, NJ 07066
                                            908-588-2111
                                            Email: ron@murray-nolanberutti.com
                                            *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Meta Platforms, Inc.**          represented by     **Catherine Anne Rizzoni**
                                                    Latham & Watkins LLP
                                                    505 Montgomery Street
                                                    Suite 2000
                                                    San Francisco, CA 94111
                                                    415-391-0600
                                                    Email: cat.rizzoni@lw.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Danielle Conley**
                                                    Latham & Watkins

A-2

555 Eleventh Street NW
Suite 1000
Washington, DC 20004
202-637-2200
Email: danielle.conley@lw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melanie Blunschi**
Latham & Watkins LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
415-391-0600
Email: melanie.blunschi@lw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christine Casey Smith**
Latham & Watkins LLP
555 Eleventh Street NW
Suite 1000
Washington, DC 20004-1304
202-637-2282
Email: christine.smith@lw.com
*ATTORNEY TO BE NOTICED*

**Jasmine Benjamin**
Latham & Watkins LLP
555 Eleventh Street NW
Suite 1000
Washington D.C., DC 20004
202-654-7121
Email: jasmine.benjamin@lw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Association of Independent Commercial Producers, Inc.**

represented by **Paul Patrick Rooney**
Ellenoff Grossman & Schole, LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105
(646) 895-7185
Fax: (484) 805-7022
Email: prooney@egsllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Danielle Conley**
(See above for address)

**A-3**

*ATTORNEY TO BE NOTICED*

**Jaclyn Ruocco**
Ellenoff Grossman & Schole LLP
1345 Sixth Avenue
Ste 15th Floor
New York, NY 10017
973-902-9489
Email: jruocco@egsllp.com
*ATTORNEY TO BE NOTICED*

**Nicola Ciliotta**
Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas
Ste 11th Floor
New York
New York, NY 10105
212-370-1300
Email: nciliotta@egsllp.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Something Ideal LLC**              represented by  **Nicholas M Reiter**
*doing business as*                   Venable LLP
M SS NG P ECES                        151 West 42nd Street
                                      Ste 49th Floor
                                      New York, NY 10036
                                      212-370-6296
                                      Fax: 212-307-5598
                                      Email: NMReiter@Venable.com
                                      *LEAD ATTORNEY*
                                      *ATTORNEY TO BE NOTICED*

                                      **Danielle Conley**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

                                      **Jessie F. Beeber**
                                      Venable LLP
                                      151 West 42nd Street, 49th Floor
                                      New York, NY 10036
                                      212-307-5500
                                      Fax: 212-307-5598
                                      Email: jbeeber@venable.com
                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**BBDO Worldwide, Inc.**             represented by  **Guy Cohen**
                                      Davis & Gilbert LLP

**A-4**

1675 Broadway
New York, NY 10019
212-468-4853
Fax: 212-468-4888
Email: gcohen@dglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Angela Marie Dunay**
Davis Gilbert LLP
1675 Broadway
New York, NY 10019
212-468-4995
Email: adunay@dglaw.com
*ATTORNEY TO BE NOTICED*

**Danielle Conley**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/05/2023 | 1 | COMPLAINT against Association of Independent Commercial Produces, Inc., BBDO Worldwide, Inc., Meta Platforms, Inc., Something Ideal LLC d/b/a M SS NG P ECES. (Filing Fee $ 402.00, Receipt Number ANYSDC-28239908)Document filed by James Harker..(Berutti, Ronald) (Entered: 09/05/2023) |
| 09/05/2023 | 2 | CIVIL COVER SHEET filed..(Berutti, Ronald) (Entered: 09/05/2023) |
| 09/05/2023 | 3 | REQUEST FOR ISSUANCE OF SUMMONS as to Meta Platforms, Inc., Association of Independent Commercial Producers, Inc., Something Ideal LLC d/b/a "M SS NG P ECES", BBDO Worldwide, Inc., re: 1 Complaint,. Document filed by James Harker.. (Berutti, Ronald) (Entered: 09/05/2023) |
| 09/06/2023 | | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Ronald A. Berutti. The party information for the following party/parties has been modified: Association of Independent Commercial Produces, Inc, Something Ideal LLC d/b/a M SS NG P ECES. The party information for the party/parties has been modified for the following reason/reasons: party name contained a typographical error; alias party name was omitted. (vf) (Entered: 09/06/2023) |
| 09/06/2023 | | ***NOTICE TO ATTORNEY REGARDING CIVIL. CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Ronald A. Berutti. The following case opening statistical information was erroneously selected/entered: County code New York. The following correction(s) have been made to your case entry: the County code has been modified to Kings. (vf) (Entered: 09/06/2023) |
| 09/06/2023 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Vernon S. Broderick. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/ |

| | | |
|---|---|---|
| | | district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(vf) (Entered: 09/06/2023) |
| 09/06/2023 | | Magistrate Judge Stewart D. Aaron is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (vf) (Entered: 09/06/2023) |
| 09/06/2023 | | Case Designated ECF. (vf) (Entered: 09/06/2023) |
| 09/06/2023 | 4 | ELECTRONIC SUMMONS ISSUED as to Association of Independent Commercial Producers, Inc., BBDO Worldwide, Inc., Meta Platforms, Inc., Something Ideal LLC. (vf) (Entered: 09/06/2023) |
| 09/29/2023 | 5 | JOINT LETTER MOTION for Extension of Time *for Defendants to Answer or Move and Approval of Proposed Briefing Schedule* addressed to Judge Vernon S. Broderick from Melanie M. Blunschi dated September 29, 2023. Document filed by Meta Platforms, Inc.. (Attachments: # 1 Proposed Order - Stipulation and [Proposed] Order Extending Time to Answer or Move in Response to Plaintiff's Complaint).(Blunschi, Melanie) (Entered: 09/29/2023) |
| 09/29/2023 | 6 | PROPOSED STIPULATION AND ORDER. Document filed by Meta Platforms, Inc... (Blunschi, Melanie) (Entered: 09/29/2023) |
| 09/29/2023 | 7 | MOTION for Melanie M. Blunschi to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28361446. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Meta Platforms, Inc.. (Attachments: # 1 Affidavit / Declaration of Melanie M. Blunschi in Support of Motion to Appear Pro Hac Vice, # 2 Exhibit A - Certificate of Good Standing, # 3 Proposed Order Granting Motion to Appear Pro Hac Vice).(Blunschi, Melanie) (Entered: 09/29/2023) |
| 10/02/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 7 MOTION for Melanie M. Blunschi to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28361446. Motion and supporting papers to be reviewed by Clerk's Office staff. The document has been reviewed and there are no deficiencies. (va)** (Entered: 10/02/2023) |
| 10/02/2023 | 8 | NOTICE OF APPEARANCE by Paul Patrick Rooney on behalf of Association of Independent Commercial Producers, Inc...(Rooney, Paul) (Entered: 10/02/2023) |
| 10/02/2023 | 9 | NOTICE OF APPEARANCE by Jaclyn Ruocco on behalf of Association of Independent Commercial Producers, Inc...(Ruocco, Jaclyn) (Entered: 10/02/2023) |
| 10/02/2023 | 10 | NOTICE OF APPEARANCE by Nicola Ciliotta on behalf of Association of Independent Commercial Producers, Inc...(Ciliotta, Nicola) (Entered: 10/02/2023) |
| 10/02/2023 | 11 | STIPULATION AND ORDER EXTENDING TIME TO ANSWER OR MOVE IN RESPONSE TO PLAINTIFF'S COMPLAINT: IT IS HEREBY STIPULATED AND AGREED by and among plaintiff James Harker ("Plaintiff") and defendants Meta Platforms, Inc., Association of Independent Commercial Producers, Inc., Something Ideal, LLC, and BBDO Worldwide, Inc. ("Defendants"), that: (a) the time within which |

A-6

| | | |
|---|---|---|
| | | Defendants may answer or move in response to Plaintiffs complaint is hereby extended to, and including, November 3, 2023; (b) in the event any party moves to dismiss the complaint, Plaintiffs answering brief shall be due on or before December 5, 2023; (c) any reply briefs on such motion shall be due 14 days after service of Plaintiffs answering brief; and (d) this stipulation may be executed in counterparts, and facsimile, electronic, and.pdf signature shall be considered originals for purposes of this stipulation. Application Granted. SO ORDERED., Association of Independent Commercial Producers, Inc. answer due 11/3/2023; BBDO Worldwide, Inc. answer due 11/3/2023; Meta Platforms, Inc. answer due 11/3/2023; Something Ideal LLC answer due 11/3/2023. (Signed by Judge Vernon S. Broderick on 10/02/2023) (ama) (Entered: 10/02/2023) |
| 10/02/2023 | | Set/Reset Deadlines: Responses due by 12/5/2023 (ama) (Entered: 10/02/2023) |
| 10/03/2023 | 12 | ORDER GRANTING MOTION TO APPEAR PRO HAC VICE granting 7 MOTION for Melanie M. Blunschi to Appear Pro Hac Vice.. (Signed by Judge Vernon S. Broderick on 10/3/2023) (jca) (Entered: 10/03/2023) |
| 10/10/2023 | 13 | MOTION for Christine C. Smith to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28403044. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Meta Platforms, Inc.. (Attachments: # 1 Affidavit / Declaration in Support of Motion to Appear Pro Hac Vice, # 2 Exhibit A - Certificate of Good Standing, # 3 Proposed Order Granting Motion to Appear Pro Hac Vice).(Smith, Christine) (Entered: 10/10/2023) |
| 10/11/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 13 MOTION for Christine C. Smith to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28403044. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (sgz)** (Entered: 10/11/2023) |
| 10/11/2023 | 14 | ORDER granting 13 Motion for Christine C. Smith to Appear Pro Hac Vice (HEREBY ORDERED by Judge Vernon S. Broderick)(Text Only Order) (al) (Entered: 10/11/2023) |
| 10/24/2023 | 15 | NOTICE OF APPEARANCE by Danielle Conley on behalf of Meta Platforms, Inc... (Conley, Danielle) (Entered: 10/24/2023) |
| 10/25/2023 | 16 | NOTICE OF APPEARANCE by Jessie F. Beeber on behalf of Something Ideal LLC.. (Beeber, Jessie) (Entered: 10/25/2023) |
| 10/25/2023 | 17 | NOTICE OF APPEARANCE by Nicholas M Reiter on behalf of Something Ideal LLC..(Reiter, Nicholas) (Entered: 10/25/2023) |
| 10/25/2023 | 18 | **FILING ERROR - DEFICIENT DOCKET ENTRY - FILER ERROR -(SEE #19)** RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Something Ideal LLC..(Reiter, Nicholas) Modified on 10/27/2023 (kj). (Entered: 10/25/2023) |
| 10/25/2023 | 19 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Tribeca Enterprises LLC for Something Ideal LLC. Document filed by Something Ideal LLC..(Reiter, Nicholas) (Entered: 10/25/2023) |
| 10/27/2023 | 20 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Meta Platforms, Inc...(Conley, Danielle) (Entered: 10/27/2023) |

A-7

| | | |
|---|---|---|
| 11/03/2023 | 21 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Association of Independent Commercial Producers, Inc...(Ruocco, Jaclyn) (Entered: 11/03/2023) |
| 11/03/2023 | 22 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Catherine A. Rizzoni to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28524726. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Meta Platforms, Inc.. (Attachments: # 1 Affidavit / Declaration in Support of Motion to Appear Pro Hac Vice, # 2 Exhibit A - Certificate of Good Standing, # 3 Proposed Order Granting Motion to Appear Pro Hac Vice). (Rizzoni, Catherine) Modified on 11/6/2023 (vba). (Entered: 11/03/2023) |
| 11/03/2023 | 23 | MOTION for Jasmine D. Benjamin to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28525030. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Meta Platforms, Inc.. (Attachments: # 1 Affidavit of Jasmine D. Benjamin in Support of Motion to Appear Pro Hac Vice, # 2 Exhibit A: Certificates of Good Standing, # 3 Proposed Order Granting Motion to Admit Counsel Pro Hac Vice).(Benjamin, Jasmine) (Entered: 11/03/2023) |
| 11/03/2023 | 24 | MOTION to Dismiss *the Complaint*. Document filed by Meta Platforms, Inc...(Conley, Danielle) (Entered: 11/03/2023) |
| 11/03/2023 | 25 | MEMORANDUM OF LAW in Support re: 24 MOTION to Dismiss *the Complaint*. . Document filed by Meta Platforms, Inc...(Conley, Danielle) (Entered: 11/03/2023) |
| 11/03/2023 | 26 | MOTION to Dismiss *the Complaint Against Something Ideal*. Document filed by Something Ideal LLC. Responses due by 12/5/2023.(Reiter, Nicholas) (Entered: 11/03/2023) |
| 11/03/2023 | 27 | MEMORANDUM OF LAW in Support re: 26 MOTION to Dismiss *the Complaint Against Something Ideal*. . Document filed by Something Ideal LLC..(Reiter, Nicholas) (Entered: 11/03/2023) |
| 11/06/2023 | 28 | NOTICE OF APPEARANCE by Guy Cohen on behalf of BBDO Worldwide, Inc... (Cohen, Guy) (Entered: 11/06/2023) |
| 11/06/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 23 MOTION for Jasmine D. Benjamin to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28525030. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (vba)** (Entered: 11/06/2023) |
| 11/06/2023 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 22 MOTION for Catherine A. Rizzoni to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28524726. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): expired Certificate of Good Standing from Supreme Court of California;. Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order. (vba)** (Entered: 11/06/2023) |

| | | |
|---|---|---|
| 11/06/2023 | 29 | MOTION for Catherine A. Rizzoni to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28532746. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Meta Platforms, Inc.. (Attachments: # 1 Affidavit / Declaration of Catherine A. Rizzoni in Support of Motion to Appear Pro Hac Vice, # 2 Exhibit A - Certificate of Good Standing, # 3 Proposed Order Granting Motion to Appear Pro Hac Vice).(Rizzoni, Catherine) (Entered: 11/06/2023) |
| 11/07/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 29 MOTION for Catherine A. Rizzoni to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28532746. Motion and supporting papers to be reviewed by Clerk's Office staff. The document has been reviewed and there are no deficiencies. (vba)** (Entered: 11/07/2023) |
| 11/07/2023 | 30 | ORDER granting 23 Motion for Jasmine D. Benjamin to Appear Pro Hac Vice (HEREBY ORDERED by Judge Vernon S. Broderick)(Text Only Order) (al) (Entered: 11/07/2023) |
| 11/07/2023 | 31 | ORDER granting 29 Motion for Catherine A. Rizzoni to Appear Pro Hac Vice (HEREBY ORDERED by Judge Vernon S. Broderick)(Text Only Order) (al) (Entered: 11/07/2023) |
| 11/13/2023 | 32 | MOTION for Nicholas R. Barry to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by James Harker. (Attachments: # 1 Affidavit NRB Declaration, # 2 Exhibit TN Cert. of Good Standing, # 3 Proposed Order PHV Prop. Order).(Barry, Nicholas) Modified on 11/14/2023 (sgz). Modified on 11/15/2023 (sgz). (Entered: 11/13/2023) |
| 11/14/2023 | | Pro Hac Vice Fee Due: for 32 MOTION for Nicholas R. Barry to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff...**(sgz) (Entered: 11/14/2023) |
| 11/14/2023 | | Pro Hac Vice Fee Payment: for 32 MOTION for Nicholas R. Barry to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff..** Filing fee $ 200.00, receipt number ANYSDC-28564515..(Barry, Nicholas) (Entered: 11/14/2023) |
| 11/15/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 32 MOTION for Nicholas R. Barry to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (sgz)** (Entered: 11/15/2023) |
| 11/15/2023 | 33 | ORDER granting 32 Motion for Nicholas R. Barry to Appear Pro Hac Vice (HEREBY ORDERED by Judge Vernon S. Broderick)(Text Only Order) (al) (Entered: 11/15/2023) |
| 11/22/2023 | 34 | AMENDED COMPLAINT amending 1 Complaint, against Association of Independent Commercial Producers, Inc., BBDO Worldwide, Inc., Meta Platforms, Inc., Something Ideal LLC with JURY DEMAND.Document filed by James Harker. Related document: 1 Complaint,. (Attachments: # 1 Exhibit EEOC Right to Sue Letter, # 2 Exhibit Declaration of James Harker).(Barry, Nicholas) (Entered: 11/22/2023) |
| 11/27/2023 | 35 | ORDER: Accordingly, it is hereby: ORDERED that Defendants shall file a letter within seven (7) days deciding whether their motions to dismiss should be deemed moot without prejudice to refile new motions to dismiss in accordance with Federal Rule of Civil Procedure 15(a)(3), or if I should evaluate the current motions to dismiss in light |

| | | |
|---|---|---|
| | | of the facts alleged in the amended complaint. SO ORDERED. (Signed by Judge Vernon S. Broderick on 11/27/2023) (rro) (Entered: 11/27/2023) |
| 11/30/2023 | 36 | NOTICE OF APPEARANCE by Angela Marie Dunay on behalf of BBDO Worldwide, Inc...(Dunay, Angela) (Entered: 11/30/2023) |
| 12/01/2023 | | NOTICE OF CASE REASSIGNMENT to Judge Laura Taylor Swain. Judge Vernon S. Broderick is no longer assigned to the case. (tro) (Entered: 12/01/2023) |
| 12/01/2023 | 37 | LETTER MOTION for Extension of Time *and Response to the Court's Request (ECF No, 25) for Clarification Regarding the Status of Defendants' Pending Motions to Dismiss* addressed to Judge Laura Taylor Swain from Danielle Conley dated December 1, 2023. Document filed by Association of Independent Commercial Producers, Inc., BBDO Worldwide, Inc., Meta Platforms, Inc., Something Ideal LLC. (Attachments: # 1 Proposed Order - Stipulation and [Proposed] Order Extending Time to Answer or Move in Response to Plaintiff's Amended Complaint).(Conley, Danielle) (Entered: 12/01/2023) |
| 12/05/2023 | 38 | MEMO ENDORSEMENT on re: [37-1] denying as moot without prejudice 24 Motion to Dismiss; denying as moot without prejudice 26 Motion to Dismiss; terminating 37 Letter Motion for Extension of Time. ENDORSEMENT: The Court hereby denies the pending motions to dismiss as moot without prejudice to give Defendants the opportunity to respond to the new allegations raised by Plaintiff in his amended complaint. DE nos. 24, 26, and 37 resolved. SO ORDERED. (Signed by Judge Laura Taylor Swain on 12/5/2023) (vfr) (Entered: 12/05/2023) |
| 12/19/2023 | 39 | MOTION to Dismiss *the First Amended Complaint Against Something Ideal LLC.* Document filed by Something Ideal LLC..(Reiter, Nicholas) (Entered: 12/19/2023) |
| 12/19/2023 | 40 | DECLARATION of Nicholas M. Reiter, Esq. in Support re: 39 MOTION to Dismiss *the First Amended Complaint Against Something Ideal LLC.*. Document filed by Something Ideal LLC..(Reiter, Nicholas) (Entered: 12/19/2023) |
| 12/19/2023 | 41 | MEMORANDUM OF LAW in Support re: 39 MOTION to Dismiss *the First Amended Complaint Against Something Ideal LLC.* . Document filed by Something Ideal LLC..(Reiter, Nicholas) (Entered: 12/19/2023) |
| 12/19/2023 | 42 | AMENDED MOTION to Dismiss *the First Amended Complaint Against Something Ideal LLC.* Document filed by Something Ideal LLC..(Reiter, Nicholas) (Entered: 12/19/2023) |
| 12/19/2023 | 43 | MOTION to Dismiss */ Non-Employer Defendants' Motion to Dismiss the First Amended Complaint.* Document filed by Meta Platforms, Inc...(Conley, Danielle) (Entered: 12/19/2023) |
| 12/19/2023 | 44 | MEMORANDUM OF LAW in Support re: 43 MOTION to Dismiss */ Non-Employer Defendants' Motion to Dismiss the First Amended Complaint.* . Document filed by Meta Platforms, Inc...(Conley, Danielle) (Entered: 12/19/2023) |
| 01/25/2024 | 45 | RESPONSE in Opposition to Motion re: 43 MOTION to Dismiss */ Non-Employer Defendants' Motion to Dismiss the First Amended Complaint.* . Document filed by James Harker. (Attachments: # 1 Exhibit Email From Something Ideal, # 2 Exhibit Call Sheet for Meta Shoot).(Barry, Nicholas) (Entered: 01/25/2024) |

| | | |
|---|---|---|
| 01/25/2024 | 46 | RESPONSE in Opposition to Motion re: 42 AMENDED MOTION to Dismiss *the First Amended Complaint Against Something Ideal LLC*., 39 MOTION to Dismiss *the First Amended Complaint Against Something Ideal LLC*. . Document filed by James Harker.. (Barry, Nicholas) (Entered: 01/25/2024) |
| 02/22/2024 | 47 | SECOND REPLY MEMORANDUM OF LAW in Support re: 42 AMENDED MOTION to Dismiss *the First Amended Complaint Against Something Ideal LLC*., 39 MOTION to Dismiss *the First Amended Complaint Against Something Ideal LLC*. . Document filed by Something Ideal LLC..(Reiter, Nicholas) (Entered: 02/22/2024) |
| 02/22/2024 | 48 | REPLY MEMORANDUM OF LAW in Support re: 43 MOTION to Dismiss / *Non-Employer Defendants' Motion to Dismiss the First Amended Complaint*. . Document filed by Association of Independent Commercial Producers, Inc., BBDO Worldwide, Inc., Meta Platforms, Inc...(Conley, Danielle) (Entered: 02/22/2024) |
| 08/29/2024 | 49 | MEMORANDUM ORDER granting the extent they seek dismissal of the Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) 39 Motion to Dismiss; 42 Motion to Dismiss; 43 Motion to Dismiss. For the foregoing reasons, the Motions are granted to the extent they seek dismissal of the Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Clerk of Court is respectfully directed to enter judgment dismissing the Amended Complaint in its entirety and close this case. This Memorandum Order resolves docket entries nos. 39, 42, and 43. SO ORDERED. (Signed by Judge Laura Taylor Swain on 8/29/2024) (vfr) Transmission to Orders and Judgments Clerk for processing. (Entered: 08/29/2024) |
| 08/30/2024 | 50 | CLERK'S JUDGMENT re: 49 Memorandum Order. in favor of Association of Independent Commercial Producers, Inc., BBDO Worldwide, Inc., Meta Platforms, Inc., Something Ideal LLC against James Harker.It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Memorandum Order dated August 29, 2024, the Motions are granted to the extent they seek dismissal of the Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Judgment is hereby entered dismissing the Amended Complaint in its entirety; accordingly, the case is closed. (Signed by Acting Clerk of Court Daniel Ortiz on 8/30/2024) (nd) (Additional attachment(s) added on 8/30/2024: # 1 Notice of Right to Appeal) (nd). Modified on 8/30/2024 (nd). (Entered: 08/30/2024) |
| 09/24/2024 | 51 | NOTICE OF APPEAL from 49 Order on Motion to Dismiss,,,,,,,,,,,, 50 Clerk's Judgment,,,. Document filed by James Harker. Filing fee $ 605.00, receipt number ANYSDC-29941055. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Berutti, Ronald). (Entered: 09/24/2024) |
| 09/25/2024 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 51 Notice of Appeal.(tp) (Entered: 09/25/2024) |
| 09/25/2024 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 51 Notice of Appeal, filed by James Harker were transmitted to the U.S. Court of Appeals.(tp) (Entered: 09/25/2024) |

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES HARKER, <br><br>       *Plaintiff* <br><br>       v. <br><br> META PLATFORMS, INC., ASSOCIATION OF INDEPENDENT COMMERCIAL PRODUCERS, INC., SOMETHING IDEAL, LLC, doing business as "M SS NG P ECES," and BBDO WORLDWIDE, INC. <br><br>       *Defendants.* | Civil Action No.: 1:23-CV-07865 <br><br> **<u>AMENDED COMPLAINT AND JURY DEMAND</u>** |

Plaintiff James Harker, by and through his undersigned counsel, hereby avers:

## NATURE OF THE ACTION

1.     This lawsuit is about a race-based hiring program called "Double the Line," which intentionally discriminates against white men and women, in violation of the Constitution and laws.

2.     "Double the Line" was created by the Association of Independent Commercial Producers ("AICP") to benefit "Black Indigenous People of Color" ("BIPOC") and to exclude non-BIPOC individuals.

3.     The unlawful and immoral intention and purpose of "Double the Line" is to discriminate between, and steer jobs and independent contracting opportunities to, individuals based on their race, color, and/or national origin to "push forward a

demographic shift." Equity and Inclusion, AICP, https://bit.ly/3Z3P1sr.

4.     Meta Platforms, Inc. ("Meta"), BBDO Worldwide, Inc. ("BBDO"), and Something Ideal, Inc. conspired and combined with AICP to support and implement "Double the Line."

5.     James Harker is an experienced motion picture lighting technician who, for over twenty-seven years, has worked on major commercial, feature film, and television productions, primarily as an electrician and as a member of the crew behind the camera.

6.     Yet because he is a white man, the Defendants targeted him for discrimination, stigma, and cancellation.

7.     The Defendants have denied Mr. Harker equal rights in violation of 42 U.S.C. § 1981.

8.     The Defendants have conspired to violate Mr. Harker's civil rights in violation of 42 U.S.C. 1985(3).

9.     Something Ideal, Inc. has violated Mr. Harker's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq., by intentionally discriminating against him because of his race, color, or national origin.

**THE PARTIES**

10.     The Plaintiff, James Harker, is a New York citizen with his primary residence in Brooklyn, New York.

11.     Defendant Meta Platforms, Inc. maintains its headquarters in Menlo Park, California, and is incorporated in Delaware. Defendant Meta has a registered

agent and can be served at 80 State Street, Albany, NY 12207.

12.     Defendant, Something Ideal, LLC, d/b/a "M SS NG P ECES" has its principal place of business in New York and is a Florida Limited Liability Company. Defendant Something Ideal, LLC, has a registered agent and can be served at 801 US HWY 1, North Palm Beach, FL 33408.

13.     Defendant BBDO Worldwide, Inc. ("BBDO") has its principal place of business in New York and is a New York Corporation. Defendant BBDO has a registered agent and can be served % Corporation Services Co., 80 State Street, Albany, NY 12207.

14.     Defendant AICP has its principal place of business in New York and is a New York Not-For-Profit Corporation. Defendant AICP has a registered agent and can be served % Drechsler & Leff, 292 Madison Ave., New York, NY, 10017.

## JURISDICTION AND VENUE

15.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the federal claims arise under the Constitution and laws of the United States.

16.     This Court has supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367(a).

17.     Plaintiff seeks declaratory and injunctive relief under 28 U.S.C. §§ 2201, 2202. Plaintiff seeks compensatory and punitive damages under 42 U.S.C. §§ 1981, 1985(3), 1986, 1988, and 42 U.S.C. § 2000e et seq. and the New York Human Rights Law.

18.     Venue is proper in this District under 42 U.S.C § 2000e-5(f)(3), and 28 U.S.C. § 1391(b)(2).

## FACTS

### A.     The Double the Line Program Created by AICP.

19.     Defendant AICP is an association of commercial production companies.

20.     According to the AICP, its members account for 80-85% of all motion picture ads in the United States. AICP at a Glance, AICP, https://bit.ly/47NVJH0.

21.     The AICP created and supports the "Double the Line" ("DTL") initiative as part of its Equity and Inclusion Program.

22.     DTL is described by the AICP on its website as follows.

> What does it mean to #doubletheline? It's simple. On every commercial production, roles for the project are listed on individual lines in the budget with their associated costs.
>
> On every job you are bidding, the agency and/or client will consult with the production and post production company and based on potential candidates, costs, and opportunities, will agree to double the role of any single position on the bid. In doing so, they agree to cover the costs to hire a BIPOC candidate to work alongside the chosen role.

*Double the Line*, AICP, https://bit.ly/3OXQ095.

23.     The AICP defines "BIPOC" to mean "Black Indigenous People of Color" and uses the term to target and exclude white people because of their race, color, or national origin.

24.     The AICP justifies this unlawful and immoral racial discrimination on the grounds that:

> Many agencies and clients are reaching out to production and post

companies asking how to add mandates to the bidding process to increase diversity among crew.

We are asking clients and agencies to take the pledge to #doubletheline so that we can increase diversity and inclusion with an emphasis on leadership positions.

*Double the Line*, AICP, https://bit.ly/3OXQ095.

25.     Defendants Meta, BBDO, and Something Ideal are examples of such "clients and agencies."

26.     The AICP describes how DTL works this way:

Once the role is agreed upon, the final total of that budget line (including the appropriate P&W, insurance, etc.) would be duplicated on a separate line item labeled "Double the Line." Production and post companies can make this "Double the Line" line item cost plus and provide any required back up. In this way, the total amount invested is clear on every project and makes the monetary investment accountable and measurable.

*Double the Line*, AICP, https://bit.ly/3OXQ095.

27.     The AICP's website contains an "FAQ" explaining that clients, production companies, and ad agencies should participate in the DTL initiative because "In order to increase the diversity of crew at all levels of the process, we have to acknowledge that a primary issue we face is access to our industry." *Double the Line*, AICP, https://bit.ly/3OXQ095.

28.     The AICP website provides additional clarity on the scope of the agreement between the various parties, including the agency, client, and production company:

The way it [DTL] works is simple. An agency or client commits in advance to #doubletheline in their bidding specs. In bidding, the production or post company will identify one or more lines they'd

suggest be doubled, based either on potential candidates they
know, the nature of the job, or a predetermined financial
commitment. Once the role is agreed upon, the final total of that
budget line (including the appropriate P&W, insurance, etc.)
would be duplicated on a separate line item called "Double the
Line." Production and post companies can make this "Double the
Line" item cost plus and provide any required backup. In this
way, the total amount invested is clear on any project and makes
the monetary investment accountable and measurable.

*Double the Line*, AICP, https://bit.ly/3OXQ095.

29.     The AICP even provides resources to find BIPOC-only candidates with

a list of other organizations that primarily focus on hiring only black candidates, such

as "Black in Post," which focuses solely on black artists in post-production work.

*Talent Resources*, AICP, https://bit.ly/3QXBBwc.

30.     It explains:

For instance, an agency or client would commit to spending $15k
and the production company could suggest they double the line
for the producer. Whether it's someone coming from television, or
a producer that they have been working with in music videos and
want to continue their training. The agency or client would agree,
thereby allowing a BIPOC producer to work alongside the
commercial producer in a paid capacity.

The idea is to pick one line that allows a candidate who has not
previously had access to our business, but is qualified in the role,
to have access to the production to learn the nuances around
commercial    production    in    a    real,    hands    on    way.

*Double the Line*, AICP, https://bit.ly/3OXQ095.

31.     The AICP explains that the production company is responsible for

"identifying, hiring, and educating" the DTL candidates. *Double the Line*, AICP,

https://bit.ly/3OXQ095.

32.     The AICP further explains that the funds invested in the DTL initiative

can be categorized and tracked because the funds are "clearly labeled in the budget on their own dedicated line to easily allow a production, post production company, agency, or client to track the monies invested." *Double the Line*, AICP, https://bit.ly/3OXQ095. Specifically:

> Once the role is agreed upon, the final total of that budget line (including the appropriate P&W, insurance, etc.) would be duplicated on a separate line item labeled "Double the Line." Production and post companies can make this "Double the Line" line item cost plus and provide any required back up. In this way, the total amount invested is clear on every project and makes the monetary investment accountable and measurable.

*Double the Line*, AICP, https://bit.ly/3OXQ095.

33.     The intent and purpose of the DTL initiative and of the AICP's "Equity and Inclusion program" is to encourage, facilitate, and promote facially illegal race-based hiring to "push forward a demographic shift" and to stigmatize, target, harm, demote, constructively discharge, refuse to hire, and intentionally discriminate against white people like Mr. Harker solely because of their race, color, and national origin.

## B.     James Harker's Work Experience.

34.     James Harker has worked for over twenty-seven years as an electrician on major commercial, feature film, and television productions.

35.     Most of his work over the last twenty-seven years was done as a gaffer, best boy, or electrician. A gaffer is the most senior or highest-level electrician on a production, while a best boy electrician has supervisory duties over the other electricians and reports to the gaffer.

36.     Mr. Harker's experience generally, and as a gaffer particularly, includes understanding protocols, work practices, and electrical equipment as essential to maintaining the safety of the set because they are dealing with high voltage cables, sophisticated equipment unique to the industry, and complicated equipment rigging techniques necessary to prevent the risk of fire or electrocution to the cast and crew, as well as countless other potential injuries.

37.     Mr. Harker has primarily worked in lower electrical positions on set during his career, such as an electrician, best boy electrician, and generator operator, but he would like to increase his experience as a gaffer. Harker Dec. at ¶ 9 (attached as Exhibit 2).

38.     Mr. Harker is a former union member with the International Alliance of Theatrical State Employees ("IATSE") Local 52.

39.     Mr. Harker withdrew from the union before the December 14, 2022, production.

### C.     The December 14, 2022, Production.

40.     On December 12, 2022, Mr. Harker received an email from the production supervisor, Shun Tsuchiya, and was offered a position as Best Boy Electrician for a commercial being made on December 14, 2022. Harker Dec. at ¶ 5.

41.     Mr. Harker did not apply for a position and was unaware of any application process. Harker Dec. at ¶ 6.

42.     His only contact for the job was the communication from Something Ideal's production supervisor, Shun Tsuchiya.

43.     He was not offered any gaffer positions. Harker Dec. at ¶ 8.

44.     He accepted the Best Boy position. Harker Dec. at ¶ 7.

45.     On December 14, 2022, Mr. Harker's responsibilities included supervisory responsibilities, organizing equipment, managing the work of electricians according to the needs of the gaffer, and ensuring all the crew members' paperwork (their W-2 forms, NYS wage forms, timecards, etc.) were completed and submitted.

46.     Listed on the Call Sheet for the December 14, 2022, Meta production were two gaffers; one of them had "DTL" listed next to their name.

47.     Mr. Harker spoke with the gaffer with DTL next to her name ("Gaffer–DTL"), and it was his impression she lacked experience as a gaffer. Harker Dec. at ¶ 17.

48.     Mr. Harker observed that the Gaffer–DTL was unable to even properly coil an electric extension cord, which is among the most basic skills of any motion picture electrician. Harker Dec. at ¶ 18.

49.     While preparing the crew's paperwork as part of his duties, Mr. Harker learned the DTL–Gaffer, despite her lack of experience, was compensated more highly than he was, despite him being an experienced electrician.

50.     While the Gaffer–DTL was pleasant, it became clear to Mr. Harker that she had virtually no experience as an electrician or gaffer and limited knowledge of the electrical equipment and work practices on set. Harker Dec. at ¶ 17.

51.     Mr. Harker followed up with questions to both the Gaffer–DTL  and the

Production Supervisor.

52. Mr. Harker asked Shun Tsuchiya, the production supervisor, what the DTL designation meant. Harker Dec. at ¶ 11.

53. Tsuchiya explained that the DTL designation was related to a program run by the AICP that applied to the December 14, 2022, Meta production. Harker Dec. at ¶ 12.

54. The Call Sheet listed a total of nine (9) "DTL" production members working on December 14, 2022.

55. Because Mr. Harker is white, he was not considered for any of the relevant positions, including leadership roles such as Gaffer, designated as "DTL" on the December 14, 2022, Call Sheet.

56. During the December 14, 2022 Meta production, Mr. Harker worked with Jasiel Lampkin, who was listed as the "Gaffer–DTL" on the call sheet. Harker Dec. at ¶ 15.

57. Ms. Lampkin is BIPOC. Harker Dec. at ¶ 16.

58. After working with Ms. Lampkin, Mr. Harker understands that she lacked experience as a gaffer and would not be qualified for the role but for her BIPOC status. Harker Dec. at ¶ 17.

59. During the December 14, 2022 Meta production, Mr. Harker worked with Shawn Batey, who was listed as the "Prop Master–DTL" on the call sheet. Harker Dec. at ¶ 19.

60. Mr. Harker has known of Ms. Batey for many years through IATSE

Local 52. Harker Dec. at ¶ 20.

61.     Ms. Batey is an experienced props professional with extensive connections in the industry. Harker Dec. at ¶ 21.

62.     On the December 14, 2022, Meta production, Ms. Batey conducted the technical scout on behalf of the Property Department without any supervision; acting in the role of a true "Prop Master" rather than a mere apprentice. Harker Dec. at ¶ 22.

63.     Ms. Batey is BIPOC. Harker Dec. at ¶ 23.

64.     Mr. Harker understands that Ms. Batey would not have been in the Prop Master–DTL position but for her BIPOC status. Harker Dec. at ¶ 24.

65.     During the December 14, 2022 Meta production, Mr. Harker worked with Brian "Ishmael" Johnson, who was listed as the "Key Grip–DTL" on the call sheet. Harker Dec. at ¶ 25.

66.     Mr. Johnson acted as the de facto best boy grip, working independently from the key grip, because he was a very experienced grip with industry experience. Harker Dec. at ¶ 26.

67.     Mr. Johnson was not acting as an apprentice to the Key Grip, Martin Flores. Harker Dec. at ¶ 27.

68.     Mr. Harker believes Mr. Johnson was hired or recommended for hire for the Key Grip–DTL position by Martin Flores, the Key Grip on set. Harker Dec. at ¶ 28.

69.     Mr. Harker understands that Mr. Johnson would not have been in the

Key Grip–DTL position but for his BIPOC status. Harker Dec. at ¶ 29.

70.     When Mr. Harker told Mr. Johnson what the "DTL" designation on the call sheet meant, he was surprised. Harker Dec. at ¶ 30.

71.     Mr. Johnson is BIPOC. Harker Dec. at ¶ 31.

72.     During the December 14, 2022 Meta production, Mr. Harker worked with Jayson Jordan, who was an Electrician–DTL on the set. Harker Dec. at ¶ 32.

73.     Mr. Jordan did not act as an apprentice, and did not shadow anyone; instead, he was fully qualified as an electrician and performed admirably as such. Harker Dec. at ¶ 33.

74.     Mr. Harker believes that Mr. Jordan was hired or recommended for hire for the Electrician–DTL position by Lyon Taylor, the Gaffer on set. Harker Dec. at ¶ 34.

75.     Mr. Jordan is BIPOC. Harker Dec. at ¶ 35.

76.     Mr. Harker understands that Mr. Jordan would not have been in the Electrician–DTL position but for his BIPOC status. Harker Dec. at ¶ 36.

77.     During the December 14, 2022 Meta production, Mr. Harker worked with Christian Cobo, who was an electrician on the set. Harker Dec. at ¶ 37.

78.     Mr. Harker believes Mr. Cobo lacked substantial commercial production experience and connections to the industry. Harker Dec. at ¶ 38.

79.     Mr. Cobo is not BIPOC. Harker Dec. at ¶ 39.

80.     Mr. Cobo was not hired in a "DTL" role. Harker Dec. at ¶ 40.

81.     Mr. Harker noticed throughout the shoot that DTL employees had

various skill levels; at least one was an amateur without any marketable skills in their role, while others were experienced professionals who did not shadow their non-DTL equivalents because they were well qualified and did not need to. Harker Dec. at ¶ 41.

82.     The only characteristic all DTL employees shared was their "BIPOC" status. Harker Dec. at ¶ 42.

83.     Mr. Harker has never been employed by BBDO Worldwide. Harker Dec. at ¶ 43.

84.     Mr. Harker has never been employed by Meta Platforms. Harker Dec. at ¶ 44.

85.     Mr. Harker has never been employed by the AICP. Harker Dec. at ¶ 45.

86.     During the December 14, 2022 Meta production, Mr. Harker discovered that Something Ideal planned to pay the DTL employees through a separate system that may have deprived them of their rights under the IATSE Collective Bargaining Agreement ("CBA"). Harker Dec. at ¶ 13.

87.     Mr. Harker informed Something Ideal, through production Supervisor Shun Tsuchiya, that depriving only DTL hires of benefits owed to them under the CBA was racially discriminatory, as the DTL employees were members of racial minorities. Harker Dec. at ¶ 14.

88.     Tsuchiya explained that the DTL designation was related to a program run by the AICP and that Something Ideal was required to follow the DTL program for the December 14, 2022 Meta production. Harker Dec. at ¶ 12.

89.    Since December 14, 2022, Mr. Harker has not been re-hired for any subsequent projects by the Defendants. Harker Dec. at ¶ 46.

### D.    Defendants' Relationship to the DTL Program.

90.    Defendant Meta is listed on the AICP website as a DTL Program Supporter. Double the Line Supporters, AICP, https://bit.ly/47Oz9Oy.

91.    The "Double the Line" supporters are described as follows:

> In addition to our membership, Double the Line is supported by industry-leading clients and agencies. We thank them for their commitment to a more diverse industry and creating opportunities for **BIPOC** crew members.

92.    Something Ideal, LLC, was the production company for the commercial being made for Meta on December 14, 2022.

93.    The FAQ for the DTL Program on AICP's website explains how candidates are selected for participation:

> The role will be selected based on the parameters of the project with potential candidates identified by the production or post production company. The goal of this is for the companies to invest in the building of careers and apprenticeship training over a period of several jobs to ensure the needed experience is received. The agency and the client would commit to covering the cost of the selected role, thereby doubling the line.

*Double the Line*, AICP, https://bit.ly/3OXQ095 (click on "Question: How do I select a candidate for participation?").

94.    Mr. Harker is not asserting that the DTL program was or is an apprenticeship program, only that this is how AICP describes the program.

95.    Based on the very experienced DTL hires, such as Ms. Batey, and the inexperienced hires to senior positions, such as the Gaffer-DTL, it was not an

apprenticeship program and an attempt to try and reframe the DTL program as an apprenticeship program, would be a sham designed to justify statutory violations.

96.     Defendant Something Ideal, LLC, participated in the DTL initiative.

97.     Defendant Meta, the client, and/or Defendant BBDO, the agency, committed to "covering the cost of the selected role, thereby doubling the line."

98.     Upon information and belief, Defendant Meta and/or Defendant BBDO had a "clearly labeled" budget identifying the cost of the DTL initiative.

99.     Defendants were aware of and participated in the DTL initiative with full knowledge and intent to discriminate on the basis of race, color, or national origin.

100.    Defendants conspired to implement the DTL initiative and Equity Inclusion program with the goal of creating lasting positions for these DTL individuals.

101.    Defendants conspired and contracted to implement the DTL initiative and to deny and continue to deny Mr. Harker the opportunity to contract for available positions for which he was willing and qualified to do so.

102.    As a result of the discriminatory and retaliatory conduct of the Defendants, Mr. Harker has incurred loss of earnings, earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures.

103.    Defendants acted with malice and/or reckless indifference to Mr. Harker's protected rights.

104.    The willful and wanton conduct of the Defendants described above was outrageous and warrants the grant of punitive damages.

## CLAIMS FOR RELIEF

### Count I
### Violation of the Civil Rights Act of 1866, 42 U.S.C. §1981

105.    Plaintiff repeats and reasserts each and every allegation in paragraphs 1-104 above as if fully set forth herein at length.

106.    42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of private contracts.

107.    It protects the rights of "would-be" contractors along with those who have already made contracts.

108.    Congress created a guarantee of racial neutrality in private contracting through the Civil Rights Act of 1866. 42 U.S.C. §1981.

109.    Section 1981 "has a specific function: It protects the equal right of 'all persons' … 'to make and enforce contracts without respect to race.'" *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up).

110.    42 U.S.C. § 1981 permits claims based on intentional discrimination of employment contracts. *Patterson v. McLean Credit Union*, 491 U.S. 164, 182 (1989) ("Of course, some overlap will remain between the two statutes: specifically, a refusal to enter into an employment contract on the basis of race. Such a claim would be actionable under Title VII as a "refus[al] to hire" based on race, 42 U.S.C. § 2000e–2(a), and under § 1981 as an impairment of "the same right ... to make ... contracts ... as ... white citizens," 42 U.S.C. § 1981.")

111.   Defendants conspired and agreed to contract based on race, color, or national origin pursuant to the DTL initiative.

112.   But for his race, color, and national origin, Mr. Harker was qualified for the positions reserved by Defendants for "BIPOC" individuals.

113.   Defendants Meta, BBDO, and AICP, jointly and severally, are knowingly and intentionally violating Section 1981 by expressly excluding Mr. Harker from employment through the denial to make and enforce contracts and other contract opportunities because of his race, color, or national origin.

114.   Defendants have acted with malice and/or reckless indifference to Mr. Harker's rights, and thus have caused Mr. Harker to be damaged.

## Count II
### Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985(3)

115.   Plaintiff repeats and reasserts each and every allegation in paragraphs 1-114 above as if fully set forth herein at length.

116.   The Defendants conspired and agreed to discriminate against Mr. Harker, and to violate his legal rights, because of his race or national origin.

117.   The Defendant AICP designed the racially discriminatory DTL initiative and condoned, encouraged, aided and abetted its implementation and execution, all in violation of Mr. Harker's rights.

118.   The Defendant Meta participated in, condoned, encouraged, facilitated, and aided and abetted the implementation and execution of the racially discriminatory DTL initiative by, among other things, funding it, promoting it, and authorizing or encouraging the use of racially discriminatory hiring practices on,

inter alia, the December 14, 2022 Meta production, all in predictable and intentional violation of Mr. Harker's rights.

119.   The Defendant BBDO participated in, condoned, encouraged, facilitated, and aided and abetted the racially discriminatory DTL initiative by, among other things, funding it and authorizing or encouraging the use of racially discriminatory hiring practices on, inter alia, the December 14, 2022 Meta production, all in predictable and intentional violation of Mr. Harker's rights.

120.   The Defendant Something Ideal, LLC, pursuant to its agreements with the other Defendants, participated in, condoned, facilitated, and aided and abetted the racially discriminatory DTL initiative by applying it to the December 14, 2022 Meta production, all in predictable and intentional violation of Mr. Harker's rights.

121.   Mr. Harker brings this claim, in the alternative, against Something Ideal.

122.   The Defendants' actions as described herein constitute an unlawful race-based conspiracy in malicious and willful violation of Mr. Harker's rights contrary to 42 U.S.C. § 1985(3), and thus have caused Mr. Harker to be damaged. *See Rowe Ent., Inc. v. William Morris Agency, Inc.*, 2000 WL 896929, at *13 (S.D.N.Y. July 6, 2000) (holding that a § 1981 claim can satisfy the second element of a § 1985(3) claim that requires deprivation of equal protection of the laws or privileges and immunities) (*aff'd*, 167 F. App'x 227 (2d Cir. 2005) (on appeal, holding only that Plaintiffs' failure to prove intentional discrimination caused their claims to fail, without discussing the interplay between §§ 1981 and 1985).

## Count III
## Retaliation in Violation of the Civil Rights Act of 1866, 42 U.S.C. §1981

123.   Plaintiff repeats and reasserts each and every allegation in paragraphs 1-122 above as if fully set forth herein at length.

124.   Mr. Harker communicated to Defendant Something Ideal, that their payment practices may deprive DTL employees of benefits they were owed under the IATSE Collective Bargaining Agreement.

125.   Because the "DTL" category is defined by race, Mr. Harker expressed to Shun Tsuchiya, Something Ideal's production supervisor for the December 14, 2022 Meta production, that depriving DTL employees of benefits owed to them under the CBA was racially discriminatory.

126.   After the December 14, 2022 Meta production, Something Ideal ceased to hire Mr. Harker for future projects, thus refusing to contract with him, based in part on his objection to the way Something Ideal was discriminating based on race.

127.   This constitutes Retaliation in Violation of the Civil Rights Act of 1866. 42 U.S.C. § 1981(b). *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 454 (2008) ("§ 1981(b) in the 'context of employment discrimination ... would include ... claims of ... retaliation.'")

## Count IV
## Discrimination in Violation of Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e et seq.

128.   Plaintiff repeats and reasserts each and every allegation in paragraphs 1-127 above as if fully set forth herein at length.

129.   The Defendant Something Ideal, LLC, pursuant to its agreements with

the Defendants Meta and BBDO, and for the purpose of executing Defendant AICP's plan to "push forward demographic shift," created a racially exclusive applicant pool for DTL positions on the December 14, 2022, production that limited, segregated, or classified Mr. Harker in a way as to deprive him, or tending to deprive him, of employment opportunities or adversely affect his status as an applicant or employee because of his race or color.

130.    The Defendant Something Ideal, LLC, pursuant to its agreements with the Defendants Meta and BBDO, and for the purpose of executing Defendant AICP's plan to "push forward demographic shift," paid the DTL–gaffer more than it paid Mr. Harker,  adversely affecting him with respect to his compensation, terms, conditions, or privileges of employment because of his race and color.

131.    Mr. Harker filed a timely charge with the EEOC for discrimination by the Defendant Something Ideal, LLC, on May 31, 2023.

132.    Mr. Harker has a Notice of Right to Sue Letter from the United States Equal Employment Opportunity Commission, dated June 8, 2023, and has exhausted the applicable administrative remedies prior to this suit. Exhibit 1.

133.    Mr. Harker has complied with Title VII's charge filing provisions, 42 U.S.C. §§ 2000e-5(e)(1) and (f)(1).

134.    Something Ideal did not have an application process to hire for the DTL program on the December 14, 2022 Meta production.

135.    There was no public posting of the DTL position available that called for individuals to apply to any DTL position.

136. Mr. Harker had no knowledge that there were DTL positions available for the December 14, 2022 Meta production.

137. Something Ideal initiated contact with prospective employees to offer them specific work in accordance with standard industry practice.

138. Something Ideal created its applicant pool internally and hired from that applicant pool.

139. Mr. Harker was excluded from that applicant pool because of race or color as the applicant pool only consisted of BIPOC individuals and excluded all non-BIPOC individuals, including white people.

140. Because Mr. Harker was excluded from that applicant pool, he was excluded from higher paying positions.

141. A formal application for employment is not required to state a Title VII claim. *Petrosino v. Bell Atlantic*, 385 F.3d 210, 227 (2nd Cir. 2004) ("to be excused from the specific application requirement, an employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer.").

142. The Defendant's actions as described herein constitute unlawful race and/or color discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and thus have caused Mr. Harker to be damaged.

## Count V
## Retaliation in Violation of Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e-2 et seq.

143.    Plaintiff repeats and reasserts each and every allegation in paragraphs 1-142 above as if fully set forth herein at length

144.    Mr. Harker communicated to Defendant Something Ideal, that their payment practices may deprive DTL employees of benefits they were owed under the IATSE Collective Bargaining Agreement.

145.    Because the "DTL" category is defined by race, Mr. Harker expressed to Shun Tsuchiya, Something Ideal's production supervisor for the December 14, 2022 Meta production, that depriving DTL employees of benefits owed to them under the CBA was racially discriminatory.

146.    Defendant Something Ideal, LLC has not hired Mr. Harker for any subsequent projects since Mr. Harker questioned Defendants' unlawful DTL hiring and payment practice, and filed a Title VII claim against Something Ideal.

147.    The Defendant's actions as described herein constitute an unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and thus have caused Mr. Harker to be damaged.

## Count VI
## Violation of N.Y. Exec. Law § 296

148.    Plaintiff repeats and reasserts each and every allegation in paragraphs 1-147 above as if fully set forth herein at length

149.    The New York Human Rights Law prohibits the Defendants:

A. From discriminating against Mr. Harker based on his race, color,

national origin, or age.

B. From refusing to hire or employ or to bar or to discharge him, or to discriminate against him in compensation or in terms, conditions or privileges of employment, based on his race, color, national origin, or age.

C. From posting the AICP program online and making any inquiry in connection with prospective employment, which expresses directly or indirectly, any limitation, specification or discrimination as to race, color, or national origin unless based upon a bona fide occupational qualification.

D. From denying or withholding from Mr. Harker the right to be admitted to or participate in the AICP initiative because of his race, color, or national origin.

E. From discriminating against Mr. Harker in his pursuit of employment and contracting opportunities subject to the AICP program, and in the terms, conditions or privileges thereof, because of his race, color, or national origin.

150. The public policy of this State condemns racial discrimination. "No person shall, because of race, color, creed, or religion, be subjected to any discrimination in his civil rights." (N. Y. Const., art. I, § 11, adopted by Constitutional Convention of 1938; approved by the People, Nov. 8, 1938.).

151. Likewise, it is unlawful to aid, abet, incite, compel, or coerce any of the acts forbidden by the New York Human Rights Law. N.Y. Exec. Law § 296, et seq.

152. The Defendants Meta, Something Ideal, and BBDO, in concert, aided and abetted, and condoned by the AICP, denied Mr. Harker employment and contracting opportunities solely because of his race, color, and/or national origin.

153. These Defendants, aided and abetted by AICP, placed less-qualified DTL "BIPOC" employees in leadership positions and paid the DTL "BIPOC" employee his superior  more than Mr. Harker solely because of race, color, or national origin.

154.    The Defendants violated New York's Human Rights Law, and thus have
caused Mr. Harker to be damaged.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Harker respectfully requests that this Court enter
judgment in his favor and against Meta, AICP, BBDO, and Something Ideal, LLC,
jointly and severally with respect to all defendants identified in each separate
Count, and provide the following relief:

A.    A declaratory judgment that the Double the Line Program violates 42
U.S.C. §§ 1981, 1985(3) and/or Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000e-2 et seq.

B.    A declaratory judgment that the Defendants are violating New York's
Human Rights Law, N.Y. Exec. Law § 296.

C.    A permanent injunction barring the Defendants from operating the
"Double the Line" program and otherwise violating applicable
nondiscrimination laws.

D.    An order for such equitable relief, including back pay, will make James
Harker whole for the Defendants' conduct; compensatory damages;
punitive damages; and prejudgment and post-judgment interest.

E.    Awarding compensatory damages to Mr. Harker for past pain and
suffering, emotional upset, mental anguish, humiliation, and loss of
life's pleasures, which he has suffered as a result of Defendants'
improper conduct.

F.    An award of punitive damages.

G.    An award of other such damages as appropriate for violations of Title
VII, 42 U.S.C. §§ 1981 and 1985(3), and the New York Human Rights
Law.

H.    An order for damages pursuant to 42 U.S.C. § 1986.

I.    Reasonable costs and expenses of this action, including attorneys' fees,
under 42 U.S.C. §1988 and any other applicable laws.

J.      Such other relief as the Court deems just, proper, or equitable, including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

## JURY DEMAND

The plaintiff herein demands trial by jury on all Counts so triable.

Dated: New York, New York          Respectfully submitted,
        November 22, 2023          /s/ *Ronald A. Berutti*

                                   Ronald A. Berutti
                                   MURRAY-NOLAN BERUTTI LLC
                                   30 Wall Street
                                   8th Floor
                                   New York, New York 10005
                                   (212) 575-8500
                                   ron@murray-nolanberutti.com

                                   /s/ *Nicholas R. Barry*
                                   Nicholas R. Barry (TN Bar No. 031963)
                                   (pro hac vice granted)
                                   Ian Prior (MA Bar No. 655704)
                                   (pro hac vice forthcoming)
                                   Julia Zsuzsa Haller (NY Bar No. 2851426)
                                   (pro hac vice forthcoming)
                                   AMERICA FIRST LEGAL FOUNDATION
                                   611 Pennsylvania Ave, SE #231
                                   Washington, DC 20003
                                   Telephone: (615) 431-9303
                                   Facsimile: (513) 216-9882
                                   nicholas.barry@aflegal.org
                                   ian.prior@aflegal.org
                                   juli.haller@aflegal.org
                                   *Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

This document complies with Local Rule 11.1(b) because it uses a 12-point font.

# Exhibit 1

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 06/08/2023

**To:** Mr. James J. Harker
       250 Ocean Parkway Apt. 5-I
       BROOKLYN, NY 11218
Charge No: 520-2023-04789

EEOC Representative and email:    RICHARD MCCRAE
                                 Investigator
                                 richard.mccrae@eeoc.gov

---

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2023-04789.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
06/08/2023

---

Timothy Riera
Acting District Director

**A-39**

**Cc:**

Please retain this notice for your records.

### INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 520-2023-04789 to the District Director at Timothy Riera, 33 Whitehall St 5th Floor

New York, NY 10004.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

# Exhibit 2

## DECLARATION OF JAMES HARKER

I, James Harker, declare:

1.　　My name is James Harker. I am over the age of 21 and fully competent to make this declaration.

2.　　I have personal knowledge of all of the facts stated in this declaration.

3.　　I have never applied to work for Something Ideal.

4.　　It is my understanding, from my experience with Something Ideal, that they do not use an application process to make hires, but instead initiate contact with prospective employees to offer them specific work, in accordance with industry-standard practices.

5.　　I was contacted, via email, by Shun Tsuchiya on December 12, 2022, and offered a position with Something Ideal to work as a Best Boy Electrician for a META commercial being shot on December 14, 2022.

6.　　I did not apply for a position, and I am unaware of any application process for the December 14, 2022 Meta production.

7.　　I accepted the Best Boy Electrician position.

8.　　I was not offered a Gaffer position.

9.　　I have primarily worked in lower electrical positions on set during my career, such as a third electrician, best boy electrician, and generator operator, but would like to increase my experience and skills as a Gaffer.

10.     During the December 14, 2022 Meta production, I learned that some employees were designated as "DTL" employees on the call sheet.

11.     Upon inquiring with the production supervisor, Shun Tsuchiya, about the designation, I learned that it refers to "Double the Line," an AICP-sponsored program where certain roles are doubled, and the doubled jobs are filled by "BIPOC" individuals.

12.     Shun Tsuchiya explained that the DTL designation was related to a program run by the AICP and that Something Ideal was required to follow the DTL program for the December 14, 2022 Meta production.

13.     I also learned that the DTL program paid participants through a separate system, that may have deprived them of some benefits they are owed under the IATSE Collective Bargaining Agreement ("CBA").

14.     I informed Something Ideal, through production Supervisor Shun Tsuchiya, that depriving only DTL hires of benefits owed to them under the CBA was racially discriminatory, as the DTL employees were members of racial minorities.

15.     During the December 14, 2022, Meta production, I worked with Jasiel Lampkin, who was listed as the "Gaffer–DTL" on the call sheet.

16.     Ms. Lampkin is BIPOC.

17.     It was my understanding, after working with and speaking to Ms. Lampkin, that she lacked experience as an electrician or gaffer and would not be qualified for the role but for her BIPOC status.

18.     Ms. Lampkin was unable to perform even simple electrical tasks, like properly coiling an extension cord.

19.     During the December 14, 2022 Meta production, I worked with Shawn Batey, who was listed as the "Prop Master – DTL" on the call sheet.

20.     I have known of Ms. Batey for many years through IATSE Local 52.

21.     Ms. Batey is an experienced props professional with extensive connections in the industry.

22.     On the December 14, 2022, Meta production, Ms. Batey conducted the technical scout on behalf of the Property Department without any supervision; acting in the role of a true "Prop Master" rather than a mere apprentice.

23.     Ms. Batey is BIPOC.

24.     I understand that Ms. Batey would not have been in the Prop Master–DTL position but for her BIPOC status.

25.     During the December 14, 2022 Meta production, I worked with Brian "Ishmael" Johnson, who was listed as the "Key Grip–DTL" on the call sheet.

26.     Mr. Johnson acted as the de facto best boy grip, working independently from the key grip, because he was a very experienced grip with industry experience.

27.    Mr. Johnson was not acting as an apprentice to the Key Grip, Martin Flores.

28.    I believe Mr. Johnson was hired or recommended for hire for the Key Grip–DTL position by Martin Flores, the Key Grip on set.

29.    It is my understanding that Mr. Johnson would not have been in the Key Grip–DTL position but for his BIPOC status.

30.    When I told Mr. Johnson what the "DTL" designation on the call sheet meant, he was surprised.

31.    Mr. Johnson is BIPOC.

32.    During the December 14, 2022 Meta production, I worked with Jayson Jordan, who was an "Electrician–DTL" on the set.

33.    Mr. Jordan did not act as an apprentice, and did not shadow anyone; instead, he was fully qualified as an electrician and performed admirably as such.

34.    I believe Mr. Jordan was hired or recommended for hire for the Electrician–DTL position by Lyon Taylor, the Gaffer on set.

35.    Mr. Jordan is BIPOC.

36.    It is my understanding that Mr. Jordan would not have been in the Electrician–DTL position but for his BIPOC status.

37.    During the December 14, 2022 Meta production, I worked with Christian Cobo, who was an electrician on the set.

38.   I believe Mr. Cobo lacked substantial commercial production experience and connections to the industry.

39.   Mr. Cobo is not BIPOC.

40.   Mr. Cobo was not hired in a "DTL" role.

41.   I noticed throughout the shoot that DTL employees had various skill levels; at least one was an amateur without any marketable skills in their role, while others were experienced professionals who did not shadow their non-DTL equivalents because they were well qualified and did not need to.

42.   The only characteristic all DTL employees shared was their "BIPOC" status.

43.   I have never been employed by BBDO Worldwide.

44.   I have never been employed by META Platforms.

45.   I have never been employed by the AICP.

46.   Since December 14, 2022, I have not been hired for any subsequent projects by any of the Defendants.


I declare under penalty of perjury that the foregoing is true and correct.


**NOVEMBER 22, 2023**
Date

James Harker

# Exhibit 1



James Harker <harkernyc@gmail.com>

---

## Avail check // M ss ng P eces // Meta
8 messages

---

**Shun Tsuchiya** <shunsuket@gmail.com>                               Mon, Dec 12, 2022 at 5:02 PM
To: James Harker <harkernyc@gmail.com>
Cc: Lyon Taylor <lyon.taylor@gmail.com>

Hi James!

Shun here, PM on the job with M ss ng p eces for Meta.

Wanted to check your avail to BB Elec for this one - shoots 12/14 (wed) in New York, NY.
Rate is scale.
Gaffer is Lyon Taylor, cc'ed here.

Please let me know if you are avail & hope you are well!
Thank you,

Shun Tsuchiya | Production Supervisor
cell: 419.494.6585

Job name / # • Meta / 1306
Billing: M ss ng P eces • 836 Manhattan Ave. 2nd fl., Brooklyn, NY 11222

---

**James Harker** <harkernyc@gmail.com>                               Mon, Dec 12, 2022 at 5:21 PM
To: Shun Tsuchiya <shunsuket@gmail.com>
Cc: Lyon Taylor <lyon.taylor@gmail.com>

Yes, I am available.
[Quoted text hidden]

---

**Shun Tsuchiya** <shunsuket@gmail.com>                               Mon, Dec 12, 2022 at 5:23 PM
To: James Harker <harkernyc@gmail.com>
Cc: Lyon Taylor <lyon.taylor@gmail.com>

copy! Lyon will reach out;

Lyon Taylor
(646) 309-7703

James Harker
(917) 453-8914

Thank you both!
[Quoted text hidden]

---

**James Harker** <harkernyc@gmail.com>                               Mon, Dec 12, 2022 at 5:40 PM
To: Shun Tsuchiya <shunsuket@gmail.com>
Cc: Lyon Taylor <lyon.taylor@gmail.com>

Will I need to COVID test tomorrow, Tuesday?
[Quoted text hidden]

**Shun Tsuchiya** <shunsuket@gmail.com>                      Mon, Dec 12, 2022 at 5:43 PM
To: James Harker <harkernyc@gmail.com>
Cc: Lyon Taylor <lyon.taylor@gmail.com>

correct. I'll have my testing coordinator reach out to you as well.

[Quoted text hidden]

---

**Lyon Taylor** <lyon.taylor@gmail.com>                      Mon, Dec 12, 2022 at 5:48 PM
To: Shun Tsuchiya <shunsuket@gmail.com>
Cc: James Harker <harkernyc@gmail.com>

Hi James, I'm happy to chat and fill you in on the job if you like. Feel free to give me a call anytime this evening.

[Quoted text hidden]

---

**James Harker** <harkernyc@gmail.com>                      Mon, Dec 12, 2022 at 6:12 PM
To: Lyon Taylor <lyon.taylor@gmail.com>

Hi Lyon,

I'll call around 8:30 PM tonight, if that works for you.

JAMES

[Quoted text hidden]

---

**Lyon Taylor** <lyon.taylor@gmail.com>                      Mon, Dec 12, 2022 at 6:13 PM
To: James Harker <harkernyc@gmail.com>

Thumbs up !
Thanks,
Lyon

[Quoted text hidden]

# Exhibit 2

| m ss ng p eces | | | SHOOT DAY - CALL SHEET -- WEDNESDAY, DECEMBER 14TH, 2022 | | | META / #1306 |
|---|---|---|---|---|---|---|

**Client:** Meta — **Production:** maang peces

m ss ng p eces
11751 Mississippi Ave.
Suite 130
L.A, CA 90025

**GENERAL CALL**

**CREW CALL:** 6:30AM

**BREAKFAST:** 6:15A RTS

**PRODUCTION CONTACTS**
LOCATION MGR: Blear Schmidt
PRODUCTION SUPERVISOR: Shun Tsuchiya:
COMMERCIAL COORDINATOR: Nicola McQuiston:

**Agency:** BBDO

**LOCATION**
The Wing
52 Mercer St.
5TH FLOOR - Shooting/EQ Stage
4TH FLOOR - HMU/Ward/Prod.
New York, NY 10013

**WEATHER**
HIGH: 42   LOW: 31   SUNNY
SUNRISE: 7:12A   SUNSET: 4:29P

**HOSPITAL / URGENT CARE**
NY Presbyterian Lower Manhattan ER (9 min drive)
83 Gold St.
New York, NY 10038

**CREW PARKING / LOCATIONS:**
NO PARKING PROVIDED BY PRODUCTION

PLEASE FILL OUT DAILY COVID SCREENING BEFORE YOU ARRIVE FOR ANY WORK IN PERSON: https://docs.google.com/forms/d/1LYFEJHqtDjEl-FfA26nATtbNsqw7X1l9e-Iz9e3VT0k/viewform?edit_requested=true

***ALL FILMED CONTENT IS STRICTLY CONFIDENTIAL - DO NOT DISTRIBUTE MATERIALS OR PUBLISH PHOTOS OUTSIDE OF PRODUCTION. USE OF SOCIAL MEDIA IS PROHIBITED******

| CREW | NAME | PHONE | EMAIL | CALL | LOC | CLIENT | NAME | CALL |
|---|---|---|---|---|---|---|---|---|
| DIRECTOR | Oge Egbuonu | | | 7:30A | 5TH FL | CREATIVE DIRECTOR | Lily Wyckoff | 8:30A |
| MANAGING PARTNER/ FOUNDER | Ari Kuschnir | | | N/C | | ASSOCIATE CREATIVE DIRECTOR | George Schlesinger | 8:30A |
| UNIT PRODUCTION MANAGER | Kate Oppenheim | | | O/C | | MARCOM PRODUCTION LEAD | Brian Coate | 8:30A |
| MANAGING PARTNER | Brian Latt | | | N/C | | BRAND MARKETING LEAD | Monica Busch | 8:30A |
| EXECUTIVE PRODUCER | Kelly Martin | | | N/C | | WEBSITE MARKETING MANAGER | Kimberly Gant | 8:30A |
| DIRECTOR OF PRODUCTION | Rebecca Davis | | | N/C | | PROJECT MARKETING MANAGER | James La Vela | 8:30A |
| LINE PRODUCER | Caroline Oriskute | | | 7:30A | 5TH FL | REALITY LABS POLICY MANAGER | Jordan Fleuriteau | 8:30A |
| PRODUCTION SUPERVISOR | Shun Tsuchiya | | | 5:30A | LOC | DIRECTOR, PRODUCT MARKETING AR/VR | Chad Kimner | 8:30A |
| ASST. PROD SUPERVISOR | Nicola McQuiston | | | 5:30A | LOC | PRODUCT MARKETING: SECURITY/PRIVACY, AI | Debraj Ghosh | 8:30A |
| ASST. PROD SUPERVISOR - DTL | Odion-Victoria Igbavboa | | | 5:30A | LOC | PRODUCT MARKETING MANAGER | Elysa Klein | 8:30A |
| 1ST AD | Otis Fung | | | 6A | LOC | POLICY COMMS MANAGER | Jen Martinez | 8:30A |
| 2nd AD | Ramiro Quintero | | | 6A | LOC | AGENCY | NAME | CALL |
| 2nd AD - DTL | Amanda Rodriguez | | | 6A | LOC | SVR GROUP EXECUTIVE PRODUCER | Kim Kietz | 8A |
| CAMERA | NAME | PHONE | | CALL | LOC | EXECUTIVE PRODUCER | Bruce McDonald | 8A |
| DIRECTOR OF PHOTOGRAPHY | Jessica Young | | | 7A | 5TH FL | EXECUTIVE PRODUCER | David Cuocolo | 8A |
| CAMERA OPERATOR | David Quateman | | | 7:30A | 5TH FL | CREATIVE DIRECTOR | James Harvey | 8A |
| 1ST CAMERA ASSISTANT - A CAM | Sammy Leonard | | | 7A | 5TH FL | CREATIVE DIRECTOR | Gina Whitt | 8A |
| 1ST CAMERA ASSISTANT - B CAM | Govinda Anguio | | | 7A | 5TH FL | SVR SENIOR DIRECTOR | Annie Sherbon | 8A |
| 2ND CAMERA ASSISTANT | Xavier Venocta | | | 7A | 5TH FL | ACCOUNT DIRECTOR | Eliot Falconer | 8A |
| 2ND CAMERA ASSISTANT - DTL | Jade Alexia Williams | | | 7A | 5TH FL | EDITORIAL | NAME | CALL |
| DIGITAL IMAGING TECHNICIAN | Anthony Hechanova | | | 7A | 5TH FL | PRODUCER | Kacy Donaldson | N/C |
| ELECTRIC | NAME | PHONE | | CALL | LOC | TALENT - OCP | NAME | CALL |
| GAFFER | Lyon Taylor | | | 6:30A | LOC | HOST | Dr. Ray | 7A |
| GAFFER - DTL | Jaciel Lampein | | | 6:30A | LOC | EXPERT | Michael Running Wolf | 7A |
| BEST BOY ELECTRICIAN | James Harker | | | 6:30A | LOC | META EMPLOYEE | Arjun Atholi | 7A |
| ELECTRICIAN | Christian Cobo | | | 6:30A | LOC | META EMPLOYEE | Sarah Papazoglakis | 7A |
| ELECTRICIAN | Justin Whitlon | | | 6:30A | LOC | EARLY ADOPTER | Jennifer Ray | 7A |
| ELECTRICIAN - DTL | Jayson Jordan | | | 6:30A | LOC | EARLY ADOPTER | Neil Heileger | 7A |
| GRIP | NAME | PHONE | | CALL | LOC | VENDORS | NAME | CALL |
| KEY GRIP | Martin Flores | | | 6:30A | LOC | CAMERA | Greenwood One | N/C |
| KEY GRIP - DTL | Br an* shnee *Johnson | | | 6:30A | LOC | CASTING | Beth Melsky | N/C |
| BEST BOY GRIP | Omar King | | | 6:30A | LOC | CATERING | Little Urban | 15A RTS |
| GRIP | Joquerz Muesas-Reyes | | | 6:30A | LOC | COVID COMPLIANCE | Yah-Mari Cole | N/C |
| ART | NAME | PHONE | | CALL | LOC | | The Sodium Ranch | |
| PRODUCTION DESIGNER | Clayton Keiber | | | 6A | LOC 4TH FL | HARD DRIVES | | N/C |
| ART COORDINATOR | Courtney Webster | | | 6A | LOC 4TH FL | INSURANCE | Front Row | N/C |
| PROP MASTER | Henry Lockwood | | | 6A | LOC 4TH FL | LIGHTING | The Sodium Ranch | N/C |
| PROP MASTER - DTL | Shawn Batey | | | 6A | LOC 4TH FL | PAYROLL | New Caps | N/C |
| 2ND PROP | Arianna Priesner | | | 6A | LOC 4TH FL | PERMITS | MOFTB | N/C |
| 3RD PROP | Edmund Bastian | | | 6A | LOC 4TH FL | PRODUCTION SUPPLIES | Below The Line | N/C |
| WARDROBE/ MAKE UP | NAME | PHONE | | CALL | LOC | SOUND | Matt Isreal | N/C |
| KEY HAIR STYLIST | Mia Delina | | | 6:30A | LOC 4TH FL | TRAVEL | Atlantic- Scott Gill | N/C |
| KEY MAKEUP ARTIST | Liz Voon | | | 6:30A | LOC 4TH FL | VTR | Brian Carmichael | N/C |
| MAKEUP ARTIST | T a R vers | | | 6:30A | LOC 4TH FL | WALKIES | What's Your Twenty | N/C |
| STYLIST | Gabrielle Rosanberg | | | 6:30A | LOC 4TH FL | SAFETY MEETING INFORMATION | | |
| ASSISTANT STYLIST | Kelcey Charter | | | 6:30A | LOC 4TH FL | START TIME: | END TIME: | |
| ASSISTANT STYLIST - DTL | Ashleigh Lashton | | | 6:30A | LOC 4TH FL | | | |
| SCRIPT / VTR / SOUND | NAME | PHONE | | CALL | LOC | ADMINISTRATOR | | |
| VTR | Brian Carmichael | | | 6:30A | LOC 5TH FL | 1ST AD & COVID COMPLIANCE MANAGER: | | |
| SOUND MIXER | Matt Isreal | | | 7:30A | LOC 5TH FL | PRODUCTION SUMMARY | | |
| BOOM OPERATOR | Jason Todd | | | 7:30A | LOC 5TH FL | 1ST SHOT AM: 8:15A | STOCK: N/A | |
| SCRIPT SUPERVISOR | Andrea Greer | | | 7:30A | LOC 5TH FL | 1ST MEAL: START     END | HARD DRIVE: | |
| SCRIPT SUPERVISOR - DTL | Dominique Spooner | | | 7:30A | LOC 5TH FL | 1ST SHOT PM: | HARD DRIVE SPACE: | |
| LOCATIONS / TRANSPO | NAME | PHONE | | CALL | LOC | 2ND MEAL: START     END | TOTAL FOOTAGE SHOT: | |
| LOCATION MANAGER | Blear Schmidt | | | 5:30A | LOC | CAM WRAP: | | |
| CAMERA TEAMSTER | Dominick Pirozzi | | | 6:30A | LOC | GRIP WRAP: | SOUND ROLL # S: | |
| GAE TEAMSTER | Ed Cruz | | | 6A | LOC | | | |
| COVID COMPLIANCE | NAME | PHONE | | CALL | LOC | | | |
| COVID COMPLIANCE MANAGER | Yah-mari Cole | | | 5:30A | LOC | ELEC WRAP: | | |
| COVID COMPLIANCE ASSISTANT | Ayo Janeen Jackson | | | 5:30A | LOC | | | |
| COVID COMPLIANCE ASSISTANT | per Yah-mari Cole | | | 5:30A | LOC | | | |
| CATERING / CRAFTY | NAME | PHONE | | CALL | LOC | NOTES | | |
| CRAFT SERVICE | Ann Marie Senior | | | 8:15A RTS | | | | |
| CRAFT SERVICE ASST | Kenton Senior | | | 8:15A RTS | | | | |
| PRODUCTION ASSISTANTS/SECURITY | NAME | PHONE | | CALL | LOC | | | |
| SECURITY | Issaka Koudougou | | | 5:45A | LOC | | | |
| PA | Xav er Barker | | | 5:30A | LOC | | | |
| PA | Johnathan Sanchez | | | 5:30A | LOC | | | |
| PA | Hector Cansiac | | | 5:30A | LOC | | | |
| PA | Jann o Vera | | | 5:30A | LOC | | | |
| PA | Cameron Ba hes | | | 5:30A | LOC | | | |
| PA | Amena F uksove | | | 5:30A | LOC | | | |
| PA | Ax e Hechenova | | | 7:30A | LOC | | | |
| PA | Lindsay Mabie | | | 5:30A | LOC | | | |
| PA | Vivian Istomin | | | 6:30A | LOC | | | |

**CREW EMPLOYER OF RECORD:**
NEW CAPS, LLC • 2300 Empire Ave. 5th Floor, Burbank, CA 91504 •
TEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

JAMES HARKER,

        Plaintiff,

    -v-                           No.  23-CV-7865-LTS

META PLATFORMS, INC., ASSOCIATION
OF INDEPENDENT COMMERCIAL
PRODUCERS, INC., SOMETHING IDEAL,
LLC, d/b/a "M SS NG P ECES," and BBDO
WORLDWIDE, INC.,

        Defendants.

--------------------------------------------------------x

<u>Memorandum Order</u>

      Plaintiff James Harker ("Plaintiff" or "Mr. Harker") brings this action against

his former employer, Something Ideal, LLC ("Something Ideal"), and a group of defendants

comprised of Meta Platforms, Inc. ("Meta"), Association of Independent Commercial

Producers, Inc. ("AICP"), and BBDO Worldwide, Inc. ("BBDO," and together, the "Non-

Employer Defendants"), asserting six causes of action related to "a race-based hiring program

called 'Double the Line'" ("DTL").  (See docket entry no. 34 (the "Amended Complaint" or

"AC").)  Before the Court are motions by Something Ideal and the Non-Employer Defendants,

respectively, to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).  (Docket entry nos. 39, 42, 43 (the "Motions").)  Plaintiff asserts that

the Court has jurisdiction of his federal claims pursuant to 28 U.S.C. section 1331.

      The Court has reviewed carefully all of the parties' submissions in connection

with the Motions.  For the following reasons, the Court grants both Motions, dismissing the

Amended Complaint for lack of standing.

BACKGROUND

The following facts are taken as true for the purposes of this motion practice.

Mr. Harker has over twenty-seven years of experience working as an electrician on major commercial, feature film, and television productions; most of his work was done as a gaffer, best boy, or electrician, "but he would like to increase his experience as a gaffer."[1] (AC ¶¶ 34-35.)  On December 12, 2022, Mr. Harker received an email from the production supervisor for a commercial (the "Commercial") being made on December 14, 2022 (the "Production") and was offered a position as the best boy electrician on the Production.  (Id. ¶ 40.)  The Commercial was being made by Something Ideal, a production company, on behalf of Meta, its client, and BBDO, a commercial agency.  (See id. ¶¶ 42, 97-98.)  "Mr. Harker did not apply for a position and was unaware of any application process[,]" but he accepted the best boy electrician position.  (Id. ¶¶ 41, 44.)

When Mr. Harker arrived at the Production on December 14, 2022, he noticed that the Call Sheet listed two gaffers, one of whom had "DTL" listed next to her name (the "DTL-Gaffer").  (AC ¶ 46.)  It was Mr. Hacker's impression, after speaking with the DTL-Gaffer and observing her work, that "she lacked experience as a gaffer."  (Id. ¶¶ 47-48.)  The DTL-Gaffer, "despite her lack of experience, was compensated more highly than" Mr. Harker on the Production.  (Id. ¶ 49.)

Mr. Harker asked the production supervisor what the DTL designation meant, and he learned that "the DTL designation was related to a program run by the AICP."  (AC

---

[1]     "A gaffer is the most senior or highest-level electrician on a production, while a best boy electrician has supervisory duties over the other electricians and reports to the gaffer." (AC ¶ 35.)

¶ 53.)  To participate in the DTL program, clients and commercial agencies "agree to double the role of any single position on" a job and, in doing so, "agree to cover the costs to hire a BIPOC candidate to work alongside the chosen role."  (Id. ¶ 22.)[2]  The stated goal of the DTL program is to "increase diversity and inclusion with an emphasis on leadership positions" and to allow candidates who "ha[ve] not previously had access to [the commercial production] business, but [are] qualified in the role to have access to the production to learn the nuances around commercial production in a real, hands on way."  (Id. ¶¶ 24, 30.)  To participate in the program, the production company is responsible for "identifying, hiring, and educating" the DTL candidates.  (Id. ¶ 31.)

For the Production, the Call Sheet listed a total of nine production members with the DTL designation.  (AC ¶ 54.)  The Amended Complaint alleges that several production members with the DTL designation "had various skill levels; at least one was an amateur without any marketable skills in their role, while others were experienced professionals who did not shadow their non-DTL equivalents because they were well qualified and did not need to."  (Id. ¶ 81.)  "The only characteristic all DTL employees shared was their 'BIPOC' status."  (Id. ¶ 82.)

Mr. Harker also discovered, during the Production, "that Something Ideal planned to pay the DTL employees through a separate system that may have deprived them of their rights under the IATSE Collective Bargaining Agreement ('CBA')."  (AC ¶ 86.)  Upon this discovery, on December 14, 2022, Mr. Harker informed the production supervisor "that depriving only DTL hires of benefits owed to them under the CBA was racially discriminatory, as the DTL employees were members of racial minorities."  (Id. ¶ 87.)  "Since

---

[2]     The AICP defines "BIPOC" to mean 'Black Indigenous People of Color'."  (AC ¶ 23.)

December 14, 2022, Mr. Harker has not been re-hired[,]" nor has he formally applied or otherwise expressed interest in any roles, "for any subsequent projects by the Defendants." (Id. ¶ 89.)

DISCUSSION

Standing

An action must be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. FED. R. CIV. P. 12(b)(1); see also Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova, 201 F.3d at 113. When determining a motion to dismiss an action for lack of subject matter jurisdiction, the Court must accept all factual allegations pled in the complaint as true, Nat. Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006), but the Court may also consider relevant materials beyond the pleadings. Makarova, 201 F.3d at 113.

Article III of the Constitution of the United States restricts the jurisdiction of federal courts to actual cases or controversies. See Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). To demonstrate Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). To plead an Article III "injury in fact" in a case like this, "challeng[ing] an allegedly discriminatory selection policy," a plaintiff must allege that he "actually applied for the position at issue." Dowdy v. N.Y.C. Dep't of Sanitation, No. 22-CV-6284-ALC, 2023 WL 6258536, at *5 (S.D.N.Y. Sept. 26, 2023); Jackson-Bey v. Hanslmaier, 115 F.3d 1091, 1096 (2d Cir. 1997) (holding that plaintiff must allege that he

"submit[ted] to the challenged policy").  The application requirement may be excused "where a plaintiff makes a substantial showing that appl[ying] would have been futile." <u>Dowdy</u>, 2023 WL 6258536, at *5 (citation omitted) (emphasis added).  "In addition to these requirements, a plaintiff asserting standing for a Title VII claim 'must show that they are "able and ready" to apply', even if an application would be futile." <u>Id.</u> (citation omitted).  "This is a 'highly-fact specific' undertaking and requires more than the non-applicant's belief that they meet the 'minimum qualifications' and are 'able and ready.'" <u>Id.</u> (citation omitted).

Here, Mr. Harker does not allege that he applied for a gaffer position—with or without a DTL designation—on the Production or at any other relevant time.  Instead, Mr. Harker presents several arguments as to why this reality is not fatal to his standing to challenge the DTL policy.  The Court considers each argument in turn:

<u>First</u>, Mr. Harker argues that he "<u>could not</u> apply to a DTL gaffer position because there was no application process[,]" and because "he did not know about the DTL program." (Docket entry no. 45 ("Pl. Non-Empl. Mem.") at 8 (emphasis in original).)  While there may have been no formal application process for the DTL-Gaffer role, and while Mr. Harker was not aware of the DTL program, he fails to allege that he made any attempt to express his interest in working as a gaffer on the Production.  This failure is fatal to his claim, because standing to challenge a discriminatory policy "requires an intent that is concrete" that "must go beyond a 'few words of general intent'." <u>Dowdy</u>, 2023 WL 6258536, at *5-6 (citing <u>Carney v. Adams</u>, 592 U.S. 53, 64 (2020)).  The Supreme Court has emphasized that plaintiffs with standing can typically make some showing that "they had applied in the past, there were regular opportunities available with relevant frequency, and they were 'able and ready' to apply for them." <u>Carney</u>, 592 U.S. at 66.  Here, in contrast, Mr. Harker proffers that he "did not seek to be a non-DTL

gaffer" or otherwise express a concrete interest in performing gaffer work.  (Pl. Non-Empl. Mem. at 8.)  This fact is noteworthy because Mr. Harker, who claims that he suffered humiliation and loss of compensation because of the DTL policy, also alleges that the DTL and non-DTL gaffer roles involved the same compensation and set of responsibilities.  (See also AC ¶¶ 49, 81.) Likewise, although Mr. Harker could not have applied to a DTL-Gaffer position before he learned about the program, Mr. Harker never applied or otherwise expressed his interest in being considered for a DTL-Gaffer role in the future, even after he learned about the program on December 14, 2022.  There is also no dispute that Mr. Harker, who has over twenty-seven years of experience working in the commercial production industry, knew that a gaffer position would be available on future commercial productions.[3]  This context "suggests an abstract, generalized grievance, not an actual desire to become" a DTL-Gaffer.  Carney, 592 U.S. at 63.

Second, Mr. Harker argues that he could not apply to the DTL-Gaffer position because "the Defendants agree to select candidates based on their race."  (Pl. Non-Empl. Mem. at 8.)  Arguing that an application is futile due to a racially discriminatory policy alone, however, is not sufficient to establish standing.  In Do No Harm v. Pfizer, Inc., 646 F. Supp. 3d 490 (S.D.N.Y. 2022), aff'd, 96 F.4th 106 (2d Cir. 2024), for example, the court concluded that white and Asian-American members of an organization did not have standing to challenge a fellowship program that required applicants to "meet the program's goals of increasing the pipeline for Black/African . . ., Latino/Hispanic, and Native Americans" because they did not apply for the program.  Id. at 505.  Critically, the plaintiff organization had not adequately shown that at least

---

[3]     Mr. Harker's argument that the gaffer role had already been filled by the time he was offered the role as the best boy electrician on the Production does not alter the fact that Mr. Harker has not alleged that he ever expressed interest in gaffer work to any defendant.  (Pl. Non-Empl. Mem. at 8 n.3.)

one of its members was "ready and able" to apply to the fellowship.  Id. at 506.  So too here:
nowhere in his briefing does Mr. Harker argue that he was "ready and able" to apply (informally
or otherwise) to work as a DTL-Gaffer, and he only alleges that "he would like to increase his
experience as a gaffer."  (AC ¶ 37.)  Nor does he provide any indication as to why, as an industry
veteran with twenty-seven years of experience, he would seek to participate in a program
designed to allow candidates who "ha[ve] not previously had access to [the commercial
production] business, but [are] qualified in the role to have access to the production to learn the
nuances around commercial production in a real, hands on way" or be able to demonstrate that
he was qualified on experiential grounds to participate in such a program.  (AC ¶ 30.)

      The Non-Employer Defendants argue that Mr. Harker's "extensive experience" in
the industry rendered him "unqualified for the DTL Program irrespective of his race."  (Docket
entry no. 44 ("Non-Empl. Mem.") at 9.)  Mr. Harker's response—that the DTL program was not
actually an apprenticeship program designed to improve access to the commercial production
industry and that he had "identified several DTL employees who had extensive experience in
their chosen profession and roles on set" (see Pl. Non-Empl. Mem. at 9)—does not salvage his
claim.  As an initial matter, Mr. Harker's allegation that the DTL program was not a genuine
apprenticeship program is contradicted by other allegations in the Amended Complaint,
including that the DTL was advertised as an "apprenticeship program" and that the individual
hired for the DTL-Gaffer position that Mr. Harker allegedly desired "lacked experience as a
gaffer." (AC ¶¶ 47, 93, 95.)  Furthermore, Mr. Harker's assessment of the experience of
individuals awarded other roles—for which he does not claim relevant skills, and in which he
never expressed interest in performing—are not probative of his qualifications for the DTL-
Gaffer position he claims to have wanted, which did, in fact, go to someone he complains was

not qualified.  Mr. Harker's allegations fail to support standing, which "must be shown affirmatively, and . . . is not made by drawing from the pleadings inferences favorable to the party asserting it."  Dowdy, 2023 WL 6258536, at *4 (quoting Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008)).

One court in this District recently indicated that a plaintiff might demonstrate that he is "ready and able to apply" by alleging "what the requirements are for [the position] and whether [Plaintiff] meets them at the present time."  Samuels v. New York City, No. 23-CV-10045-AS, 2024 WL 3742544, at *2 (S.D.N.Y. Aug. 9, 2024).  While the Amended Complaint notes the requirements that the DTL program advertised, Mr. Harker appears to allege that the only genuine requirement of the program was BIPOC status.  (See AC ¶ 82 ("The only characteristic all DTL employees shared was their 'BIPOC' status.").)  This conclusory allegation is not sufficient to render immaterial the other stated requirements of the program and thus is also insufficient to demonstrate his standing to challenge the program.  See Samuels, 2024 WL 3742544, at *1-2 (granting motion to dismiss for lack of standing where Plaintiff alleged that Defendant provided grants exclusively to women and transgender individuals but failed to allege other requirements of the grant and satisfaction thereof).

Third, Mr. Harker further argues that he has standing, despite not having applied to the DTL-Gaffer position, because he satisfies an exception established in Petrosino v. Bell Atlantic, 385 F.3d 210 (2d Cir. 2004), to the requirement that a plaintiff actually have applied for a position in order to plead a failure-to-promote claim.  (Docket entry no. 46 ("Pl. SI Mem.") at 6.)  In Petrosino, the Second Circuit established a narrow exception to the general rule that, to frame a viable failure-to-promote claim, a plaintiff must plead that he applied to the position unless "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no

knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." 385 F.3d at 227. Mr. Harker's argument, however, is unpersuasive because the <u>Petrosino</u> exception is relevant to the merits issue of whether a plaintiff has stated a failure-to-promote claim under Title VII[4]—not whether a plaintiff has established standing to bring such a claim. In other words, a court would have to determine that a plaintiff has standing to bring before assessing the merits question of whether the <u>Petrosino</u> exception applies to their failure-to-promote claim. Plaintiff here has provided no viable basis for such a determination. Indeed, the Supreme Court has made clear that merely identifying a "statutory violation," without pleading personal harm arising from the violation, does not "suffice to afford a plaintiff standing." <u>TransUnion</u>, 594 U.S. at 429.

Arguing for the impropriety of this result, Mr. Harker asserts that, "[i]f the court determined that the <u>Petrosino</u> rule does not apply here, then the entire commercial production industry (and any that uses a similar method to hire), has received a carte blanche exception from Title VII and § 1981." (Pl. SI Mem. at 6.) This argument is legally baseless because it ignores the fact that, even in <u>Petrosino</u>, the Court required the plaintiff to, at a minimum "tell[] her supervisors that she wished to be considered for" the job opportunities that she sought. 385 F.3d at 228. Here, Mr. Harker does not allege any facts suggesting that he communicated his desire to work as a gaffer, or that Something Ideal could have known that he was interested in working as a gaffer. Therefore, the <u>Petrosino</u> exception cannot salvage his claim.

---

[4]    The Second Circuit has, furthermore, noted that this exception also "may or may not apply in the context of a failure to hire." <u>Rich v. Assoc. Brands Inc.</u>, 559 F. App'x 67, 69 (2d Cir. 2014).

Leave to Amend

Defendants argue that leave to amend should be denied, (docket entry no. 41 ("SI Mem.") at 24; Non-Empl. Mem. at 25), pointing out that Mr. Harker has already amended his complaint once after refusing to engage in pre-motion communications as required by the undersigned's individual practice rules. Mr. Harker requests that the Court "decline to address the issue" until a motion for leave to replead is filed. (Pl. SI Mem. at 17.) Further leave to amend the complaint is denied. Notwithstanding two rounds of dismissal motion practice that have included substantial briefing on the issue of standing, he has not proffered any additional facts that suggest that he can augment his already-amended pleading to establish that he has standing to pursue his claims.

CONCLUSION

For the foregoing reasons, the Motions are granted to the extent they seek dismissal of the Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Clerk of Court is respectfully directed to enter judgment dismissing the Amended Complaint in its entirety and close this case. This Memorandum Order resolves docket entries nos. 39, 42, and 43.

SO ORDERED.

Dated: New York, New York
        August 29, 2024

_/s/ Laura Taylor Swain_____
LAURA TAYLOR SWAIN
Chief United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
JAMES HARKER,

                       Plaintiff,

         -against-                           23 **CIVIL** 7865 (LTS)

                                                            __**JUDGMENT**__

META PLATFORMS, INC., ASSOCIATION
OF INDEPENDENT COMMERCIAL
PRODUCERS, INC., SOMETHING IDEAL,
LLC, d/b/a "M SS NG P ECES," and BBDO
WORLDWIDE, INC.,

                       Defendants.
-----------------------------------------------------------------X

        It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Memorandum Order dated August 29, 2024, the Motions are granted to the

extent they seek dismissal of the Amended Complaint for lack of subject matter jurisdiction

pursuant to Federal Rule of Civil Procedure 12(b)(1). Judgment is hereby entered dismissing the

Amended Complaint in its entirety; accordingly, the case is closed.

**Dated:** New York, New York

         August 30, 2024

                                             **DANIEL ORTIZ**
                                   _____
                                     **Acting Clerk of Court**

                  **BY:** _____
                                      **Deputy Clerk**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

JAMES HARKER,

       *Plaintiff,*

  v.

META PLATFORMS, INC.,
ASSOCIATION OF INDEPENDENT
COMMERCIAL PRODUCERS, INC.,
SOMETHING IDEAL, LLC, d/b/a
"M SS NG P ECES," and BBDO
WORLDWIDE, INC.,

       *Defendants.*

Civil Action No.: 1:23-cv-07865-LTS

**NOTICE OF APPEAL**

Notice is hereby given that Plaintiff James Harker hereby appeals to the United States Court of Appeals for the Second Circuit from this Court's August 29, 2024 Memorandum Order (Dkt. No. 49) and August 30, 2024 Judgment (Dkt. No. 50) granting Defendants' motions and dismissing the Amended Complaint.

Dated: September 24, 2024

         Respectfully submitted,

         /s/ *Ronald A. Berutti*
         Ronald A. Berutti
         Murray-Nolan Berutti LLC
         30 Wall Street
         8th Floor
         New York, NY 10005
         (212) 575-8500
         ron@mnblawfirm.com

         *Counsel for Plaintiff*