# 24-2555

# United States Court of Appeals

*for the*

# Second Circuit

---

JAMES HARKER,

*Plaintiff-Appellant,*

– v. –

META PLATFORMS, INC., ASSOCIATION OF INDEPENDENT
COMMERCIAL PRODUCERS, INC., SOMETHING IDEAL, LLC,
DBA M SS NG P ECES, BBDO WORLDWIDE, INC.,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## RESPONSE BRIEF FOR DEFENDANT-APPELLEE
## SOMETHING IDEAL, LLC D/B/A M SS NG P ECES

JESSIE F. BEEBER
NICHOLAS M. REITER
VENABLE LLP
*Attorneys for Defendant-Appellee*
*Something Ideal, LLC d/b/a*
*M ss ng P eces*
151 West 42nd Street, 49th Floor
New York, New York 10036
(212) 307-5500

CP COUNSEL PRESS    (800) 4-APPEAL • (336932)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure, Defendant-Appellee Something Ideal, LLC, d/b/a/ M ss ng P eces ("Something Ideal") by and through its counsel, Venable LLP, hereby identifies Tribeca Enterprises LLC as Something Ideal's parent corporation.

Dated: February 4, 2025             **VENABLE LLP**

By:  <u>*/s/ Nicholas M. Reiter*</u>
Nicholas M. Reiter
Jessie F. Beeber
151 W. 42nd Street, 49th Floor
New York, New York 10020
Tel. (212) 307-5500
nmreiter@venable.com
jbeeber@venable.com

*Attorneys for Defendant-Appellee*
*Something Ideal, LLC, d/b/a "M ss ng*
*P eces"*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION ....................................................................................... 1

STATEMENT OF JURISDICTION ........................................................... 3

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............. 4

STATEMENT OF THE CASE ................................................................... 5

    I.     THE DTL PROGRAM ................................................................... 5

    II.    HARKER'S SUBSTANTIAL COMMERCIAL PRODUCTION
          EXPERIENCE AND INDUSTRY KNOWLEDGE ............................ 6

    III.   SOMETHING IDEAL'S EMPLOYMENT OF HARKER .................... 6

    IV.   SOMETHING IDEAL'S HIRING OF THE DTL PROGRAM GAFFER FOR
          THE COMMERCIAL ..................................................................... 8

    V.    SOMETHING IDEAL'S HIRING OF OTHER DTL PROGRAM
          EMPLOYEES FOR THE COMMERCIAL ....................................... 8

    VI.   HARKER'S ALLEGED COMMENTS TO HIS SUPERVISOR
          REGARDING THE DTL PROGRAM .......................................... 9

    VII.  PROCEDURAL HISTORY ........................................................ 10

SUMMARY OF ARGUMENT ............................................................... 12

STANDARD OF REVIEW ..................................................................... 15

ARGUMENT ........................................................................................... 17

    I.     THE DISTRICT COURT PROPERLY DETERMINED THAT HARKER
          LACKED STANDING FOR HIS DISCRIMINATION CLAIMS BECAUSE
          HE NEVER EXPRESSED ANY INTEREST IN PERFORMING GAFFER
          WORK FOR SOMETHING IDEAL .......................................... 17

    II.    THE DISTRICT COURT PROPERLY DETERMINED THAT HARKER
          LACKED STANDING FOR HIS RETALIATION CLAIMS BECAUSE HE
          NEVER EXPRESSED ANY INTEREST IN PERFORMING GAFFER
          WORK FOR SOMETHING IDEAL AFTER HE LEARNED OF THE DTL
          PROGRAM ................................................................................. 22

    III.   HARKER DOES NOT STATE A CLAIM FOR DISCRIMINATION OR
          RETALIATION BECAUSE HE FAILED TO EXPRESS INTEREST IN THE
          GAFFER ROLE .......................................................................... 23

IV.   HARKER DOES NOT STATE A RETALIATION CLAIM BECAUSE HE
      FAILS TO ALLEGE A PROTECTED ACTIVITY ..........................................29

V.    HARKER DOES NOT STATE A RETALIATION CLAIM BECAUSE HE
      FAILS TO PLEAD AN ADVERSE EMPLOYMENT ACTION AFTER THE
      COMMERCIAL ........................................................................................36

VI.   THE SECTION 1985(3) CLAIM IS DUPLICATIVE OF THE SECTION
      1981 AND TITLE VII CLAIMS ................................................................38

CONCLUSION .......................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altidor v. Medical Knowledge Grp. LLC*,
 No. 1:22-CV-7083 (MKV), 2023 WL 6124019 (S.D.N.Y. Sept. 16,
 2023) ..........................................................................................................26, 27

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ..................................................................................16, 35

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .........................................................................................16

*Belton v. Borg & Ide Imaging, P.C.*,
 512 F. Supp. 3d 433 (W.D.N.Y. 2021) ............................................................30

*Brown v. Coach Stores, Inc.*,
 163 F.3d 706 (2d Cir. 1998) ...........................................................13, 24, 25, 37

*Carney v. Adams*,
 592 U.S. 53 (2020) ...........................................................................................12

*Chen v. Bowes*,
 No. 98-CV-2478(EBB), 2000 WL 1849762 (D. Conn. Nov. 22,
 2000) .................................................................................................................36

*Chesley v. Union Carbide Corp.*,
 927 F.2d 60 (2d Cir. 1991) .........................................................................14, 15

*Chojar v. Levitt*,
 773 F. Supp. 645 (S.D.N.Y. 1991) ..................................................................24

*Cooper v. N.Y. State Dep't of Labor*,
 819 F.3d 678 (2d Cir. 2016) ............................................................................33

*Donoghue v. Bulldog Invs. Gen. P'ship*,
 696 F.3d 170 (2d Cir. 2012) ............................................................................15

*Dowdy v. New York City Dep't of Sanitation*,
 No. 22-CV-6284, 2023 WL 6258536 (S.D.N.Y. Sept. 26, 2023) .....................17

*Fletcher v. ABM Building Value*,
No. 14 Civ. 4712 (NRB), 2018 WL 1801310 (S.D.N.Y. Mar. 28, 2018) ........................................................................................27

*Foss v. Coca-Cola Enterps., Inc.*,
Case No. 07-CV-1322 (JS)(WDW), 2008 WL 11447999 (E.D.N.Y. Jan. 4, 2008) ........................................................38

*Gad-Tadros v. Bessemer Venture Partners*,
326 F. Supp. 2d 417 (E.D.N.Y. 2004) ..........................................23

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*,
136 F.3d 276 (2d Cir. 1998) ..........................................................35

*Giscombe v. New York City Dep't of Educ.*,
39 F. Supp. 3d 396 (S.D.N.Y. 2014) ............................................29

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny*,
442 U.S. 366 (1979) .......................................................................38

*Holmes v. Grubman*,
568 F.3d 329 (2d Cir. 2009) ..........................................................16

*Hughes v. Twenty-First Century Fox, Inc.*,
304 F. Supp. 3d 445 (S.D.N.Y. 2018) ..........................................23

*Jackson-Bey v. Hanslmaier*,
115 F.3d 1091 (2d Cir. 1997) ........................................17, 20, 21

*Jenkins v. Arcade Bldg. Maint.*,
44 F. Supp. 2d 524 (S.D.N.Y. 1999) ............................................38

*Kelly v. Howard I. Shapiro & Assocs. Consulting Engs., P.C.*,
716 F.3d 10 (2d Cir. 2013) ............................................................30

*Lawrence v. Thomas Learning, Inc.*,
No. 1:05-CV-329 (RFT), 2007 WL 1593270 (N.D.N.Y. Jun. 1, 2007) .............................................................................................31

*Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*,
842 F.2d 590 (2d Cir. 1988) ..........................................................33

*Marakova v. United States*,
201 F.3d 110 (2d Cir. 2000) ................................................................15

*McCall v. City of Danbury*,
116 F. Supp. 2d 316 (D. Conn. 2000), *aff'd*, 16 Fed. App'x 77 (2d
Cir. 2001) ...........................................................................................39

*McCullough v. John T. Mather Hosp. of Port Jefferson, New York,
Inc.*,
No. 16-CV-4968 (DRH)(SIL), 2019 WL 1755436 (E.D.N.Y. Apr.
19, 2019) ............................................................................................30

*Moose Lodge No. 107 v. Irvis*,
407 U.S. 163 (1972) .....................................................................20, 21

*Morrison v. Nat'l Australia Bank Ltd.*,
547 F.3d 167 (2d Cir. 2008) ...............................................................15

*Nat. Res. Def. Council v. Johnson*,
461 F.3d 164 (2d Cir. 2006) ...............................................................15

*O'Brien v. City of New York, Dep't of Educ.*,
686 F. Supp. 3d 221 (E.D.N.Y. 2023) .................................................30

*Paupaw-Myrie v. Mount Vernon City Sch. Dist.*,
No. 21-CV-11237 (CS), 2023 WL 1109702 (S.D.N.Y. Jan. 30,
2022) ..................................................................................................29

*Peddy v. L'Oréal USA, Inc.*,
No. 18-CV-7499 (RA), 2020 WL 4003587 (S.D.N.Y. Jul. 15,
2020) ..................................................................................................31

*Petrosino v. Bell Atlantic*,
385 F.3d 210 (2d Cir. 2004) ....................................................25, 26, 27

*Pollock v. Shea*,
568 F. Supp. 3d 500 (S.D.N.Y. 2021) .................................................26

*Pope v. ESA Servs., Inc.*,
406 F.3d 1001 (8th Cir. 2005) ............................................................36

*Seals v. Marianetti-Desrosiers*,
No. 5:21-CV-988, 2022 WL 3153942 (N.D.N.Y. Aug. 8, 2022).........29

*Singh v. Excel Sec. Corp.*,
   No. 14 Civ. 10111 (PAC), 2021 WL 1199469 (S.D.N.Y. Mar. 30,
   2021) ...................................................................................................38, 39

*Tardd v. Brookhaven Nat. Laboratory*,
   407 F. Supp. 2d 404 (E.D.N.Y. 2006) ................................................38

*Taylor v. City of New York*,
   207 F. Supp. 3d 293 (S.D.N.Y. 2016) ................................................23

*Texas Dep't of Community Affairs v. Burdine*,
   450 U.S. 248 (1981) ............................................................................24

*Torgerson v. City of Rochester*,
   643 F.3d 1031 (8th Cir. 2011) ...........................................................36

*Torre v. Charter Communs., Inc.*,
   493 F. Supp. 3d 276 (S.D.N.Y. 2020) ................................................29

*Townsend v. Benjamin Enterps., Inc.*,
   679 F.3d 41 (2d Cir. 2012) .................................................................32

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................13

*Zoulas v. N.Y.C. Dep't of Educ.*,
   400 F. Supp. 3d 25 (S.D.N.Y. 2019) ..................................................29

**Statutes**

28 U.S.C. § 1291 ..........................................................................................3

28 U.S.C. § 1331 ..........................................................................................3

28 U.S.C. § 1367(a) ......................................................................................3

29 U.S.C. § 158(a)(1) ..................................................................................36

42 U.S.C. § 1981 ...................................... 3, 4, 10, 14, 23, 29, 37, 38, 39

42 U.S.C. § 1985(3) ........................................... 3, 4, 10, 14, 37, 38, 39, 40

42 U.S.C. § 2000e *et seq.* ............. 3, 4, 10, 14, 23, 29, 30, 33, 35, 36, 37, 38, 39, 40

vi

**Court Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................3, 10

Federal Rule of Civil Procedure 12(b)(6) ........................................11, 15, 23, 25, 26

## **INTRODUCTION**

Plaintiff-Appellant James Harker ("Harker") is a self-described 27-year commercial production industry veteran. Appendix ("A," cited herein as "A-___") A-12 (¶ 5); A-17 (¶ 34). He admits that *"[m]ost* of his work over the last twenty-seven years was done as a *gaffer*, best boy, or electrician" on commercial, film, and television productions. A-17 (¶ 35) (emphasis added). He further concedes his knowledge that "[a] gaffer is the most senior or highest-level electrician on a production, while a best boy electrician has supervisory duties over the other electricians and reports to the gaffer." *Id*. In other words, Harker knew full well that the gaffer position existed on any production. Yet he brought suit for his employer's alleged failure to hire him as a gaffer, notwithstanding his admission that he never applied for, or expressed any interest in being offered, a gaffer job.

The District Court properly took into account Harker's undisputed knowledge of the gaffer role and prior work on commercial productions for Something Ideal. As a 27-year veteran with prior gaffer experience and knowledge that gaffer work is performed on commercial productions, it was incumbent upon Harker to, at a minimum, express *some* level of interest in performing gaffer work before filing suit. But he never did, even *after* he learned of the Double the Line ("DTL") Program. Accordingly, his discrimination and retaliation claims were properly dismissed for lack of standing.

Remarkably, Harker does not devote a single sentence in his appeal brief to his conceded knowledge of the gaffer position. Not once does he address his nearly three decades of industry experience or his admission that a commercial production includes a gaffer position. Instead, he ignores this obvious impediment to his claims. This Court should not do the same.

## <u>STATEMENT OF JURISDICTION</u>

The District Court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Harker sought relief under 42 U.S.C. §§ 1981, 1985(3), and 2000e *et seq.* The District Court had supplemental jurisdiction over Harker's New York Human Rights Law claim pursuant to 28 U.S.C. § 1367(a) because the state law claim was so related to the federal law claims that they formed part of the same case or controversy.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because this is an appeal from a final order dated August 29, 2024, in which the District Court granted Defendants-Appellees' motions to dismiss all claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). On August 30, 2024, the Clerk of the District Court entered Judgment dismissing the Complaint. On September 24, 2024, Harker filed a notice of appeal from the District Court's decision.

3

## **STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

1. Did the District Court properly determine that, based on his knowledge of the gaffer position, Harker needed to express at least some interest in performing gaffer work to establish standing for his discrimination and retaliation claims?

2. May this Court alternatively affirm the dismissal of Harker's discrimination and retaliation claims for failure to state a claim upon which relief may be granted because Harker did not express any interest in performing gaffer work for Something Ideal?

3. May this Court alternatively affirm the dismissal of Harker's retaliation claim for failure to state a claim upon which relief may be granted because Harker failed to plead a protected activity?

4. May this Court alternatively affirm the dismissal of Harker's retaliation claim for failure to state a claim upon which relief may be granted because Harker failed to plead an adverse employment action?

5. May this Court alternatively affirm the dismissal of Harker's 42 U.S.C. § 1985(3) claim as duplicative of his claims under 42 U.S.C. §§ 1981 and 2000e *et seq.*?

## STATEMENT OF THE CASE

### I.    The DTL Program

Defendant-Appellee Something Ideal, LLC d/b/a M ss ng P eces ("Something Ideal") is a commercial production company.  A-24 (¶ 92).  It participates in a program called Double the Line ("DTL").  A-25 (¶ 96).  Defendant-Appellee Association of Independent Producers ("AICP") allegedly created the DTL Program to "increase diversity" among commercial production crew members.  A-14–15 (¶¶ 21, 24).  Pursuant to the DTL Program, a commercial production company and/or its client will "double the line" within the production's budget for a specific position so that a second person may "work alongside" the first person "in a paid capacity," thereby gaining access to the commercial production industry.  A-14 (¶ 22); *see also* A-15–16 (¶¶ 26, 28, 30).  Accordingly, instead of hiring one camera operator, casting director, costume designer, etc., a DTL Program participant will hire two individuals in each role, one of whom is a Black, Indigenous, or Person of Color ("BIPOC") "to work alongside" the other individual in the same role.  A-14 (¶ 22).

Pursuant to AICP's website, which was incorporated by reference in the Amended Complaint, the purpose of the DTL Program is to hire "a candidate who has not previously had access" to the commercial production business, but is qualified in the role, such that the candidate will "have access to the production to learn the nuances around commercial production in a real, hands on way."  A-16 (¶

5

30). The "goal" of the DTL Program "is for the companies to invest in the building of careers and apprenticeship training over a period of several jobs to ensure the needed experience is received." A-24 (¶ 93).

## II. Harker's Substantial Commercial Production Experience and Industry Knowledge

Harker is a highly experienced electrician in the commercial production industry. He has over 27 years of experience working as an electrician on major commercial, feature film, and television productions. A-12 (¶ 5); A-17 (¶ 34). He admits that "*[m]ost* of his work over the last twenty-seven years was done as a *gaffer*, best boy, or electrician." A-17 (¶ 35) (emphasis added). He alleges a long list of his job qualifications, including his experience "understanding protocols, work practices, and electrical equipment as essential to maintaining the safety of the set because they are dealing with high voltage cables, sophisticated equipment unique to the industry, and complicated equipment rigging techniques . . . ." A-18 (¶ 36). Based on his substantial industry experience, Harker is aware that "[a] gaffer is the most senior or highest-level electrician on a production, while a best boy electrician has supervisory duties over the other electricians and reports to the gaffer." A-17 (¶ 35).

## III. Something Ideal's Employment of Harker

Harker's claims arise from the alleged hiring practices for a commercial production project for Defendant-Appellee Meta Platforms, Inc. ("Meta") on

6

December 14, 2022 (the "Commercial"). Harker alleges that Something Ideal was the production company for the Commercial. A-24 (¶ 92). He also alleges that Meta and Defendant-Appellee BBDO Worldwide, Inc. funded the DTL program in connection with the Commercial, and that Something Ideal hired the staff. A-25 (¶¶ 96-99).

Two days before the Commercial production, on December 12, 2022, the Commercial's production supervisor offered Harker a position as a "Best Boy" electrician. A-18 (¶ 40). Based on his 27 years of industry experience – including "most" of his prior work being as a gaffer, best boy, or electrician – Harker was aware that a gaffer position existed for the Commercial. A-17 (¶ 35) ("A gaffer is the most senior or highest-level electrician on a production . . . .")

Harker accepted Something Ideal's offer to work as a "Best Boy" electrician on the Commercial. A-19 (¶ 44). He does not allege that a gaffer position was unavailable at that time. Nor does he allege that he expressed an interest in working as a gaffer instead of a Best Boy, whether informally or otherwise. *See generally* A-18–19 (¶¶ 40-44). He complains instead that he "was not offered any gaffer positions" for the Commercial. A-19 (¶ 43). He fails to allege, however, that he applied for any gaffer positions in the first place, despite his 27 years of industry experience and knowledge that commercial productions involve a gaffer role. A-17 (¶¶ 34-35).

7

### IV. Something Ideal's Hiring of the DTL Program Gaffer for the Commercial

Harker alleges that Something Ideal hired two gaffers for the Commercial, one of whom was hired pursuant to the DTL Program. A-19–20 (¶¶ 46, 52-53). According to Harker, the DTL Program gaffer hired for the Commercial, Jasiel Lampkin ("Lampkin"), "had virtually no experience as an electrician or gaffer and limited knowledge of the electrical equipment and work practices on set." A-19 (¶ 50). He also alleges that Lampkin is BIPOC. A-11 (¶ 2); A-20 (¶ 57).

### V. Something Ideal's Hiring of Other DTL Program Employees for the Commercial

Harker claims that Something Ideal employed nine DTL Program employees for the Commercial. A-20 (¶ 54). He alleges that four of the DTL Program positions were filled with BIPOC individuals. In addition to Lampkin, he identifies three other persons as BIPOC candidates who Something Ideal hired in DTL Program positions for the Commercial: (1) Shawn Batey, Prop Master-DTL, A-20 (¶ 59); A-21 (¶ 63); (2) Brian "Ishmael" Johnson, Key Grip-DTL, A-21 (¶ 65); A-22 (¶ 71); and (3) Jayson Jordan, Electrician-DTL, A-22 (¶¶ 72, 75). Harker does not allege the names or races of the five other DTL program employees that he claims Something Ideal employed for the Commercial.[1]

---

[1] Harker alleges, however, that Something Ideal hired a white candidate, Chris Bobo, for a non-DTL electrician position, even though Mr. Bobo lacked professional experience. A-22 (¶¶ 77-79). This allegation undercuts Harker's suggestion of

## VI. Harker's Alleged Comments to His Supervisor Regarding the DTL Program

Harker alleges he made two comments to his supervisor regarding the DTL Program. First, after observing the "DTL" designation adjacent to several job titles set forth in the "Call Sheet" for the Commercial, Harker allegedly asked his supervisor "what the DTL designation meant." A-20 (¶ 52). In response, the supervisor stated that the DTL designation "was a program run by the AICP that applied to the December 14, 2022, Meta production." *Id*. (¶ 53). Second, Harker alleges he told his supervisor that Something Ideal's pay practices "*may* deprive DTL employees of benefits they were owed under the IATSE Collective Bargaining Agreement." A-32 (¶ 144) (emphasis added). Based on his second alleged comment, he asserts that he "expressed" to his supervisor his belief "that depriving [non-white] DTL employees of benefits owed to them under the CBA was racially discriminatory." A-32 (¶ 145); *see also* A-23 (¶ 87) ("Mr. Harker informed Something Ideal, through production Supervisor Shun Tsuchiya, that depriving only DTL hires of benefits owed to them under the CBA *was racially discriminatory, as the DTL employees were members of racial minorities*."). Harker does not allege the precise words he allegedly stated to his supervisor or his supervisor's response,

---

racial animus by Something Ideal. He concedes that Something Ideal offered a white candidate – Mr. Bobo – an opportunity to gain experience in the commercial production industry.

if any, to the alleged second comment.  Harker also does not allege that he informed anyone that he believed Something Ideal was discriminating against white employees.

## VII.  Procedural History

Harker filed his Original Complaint before the District Court on September 5, 2023.  All Defendants-Appellees moved to dismiss the Original Complaint on November 3, 2023 for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.  In response to those motions, Harker filed the Amended Complaint on November 22, 2023.  Harker brought six claims: (1) race discrimination in the making and enforcement of contracts under 42 U.S.C. § 1981 ("Section 1981"); (2) conspiracy to violate his civil rights under 42 U.S.C. § 1985(3) ("Section 1985(3)"); (3) retaliation for complaining of race discrimination in violation of Section 1981; (4) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (5) retaliation for complaining of race discrimination in violation of Title VII; and (6) race discrimination in violation of the New York State Human Rights Law ("Human Rights Law").

On December 19, 2023, Something Ideal moved to dismiss all claims in the Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief may be

10

granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  On the same date, the other Defendants-Appellees filed a similar motion to dismiss for the claims asserted against them.

On August 29, 2024, Chief Judge Laura Taylor Swain granted both motions to the extent dismissal was sought for lack of subject matter jurisdiction.  The District Court determined Harker lacked standing to bring his claims because, among other reasons, "he fail[ed] to allege that he made any attempt to express his interest in working as a gaffer on the Production."  A-57.  On August 30, 2024, the District Court entered judgment dismissing the Amended Complaint in its entirety for the reasons set forth in the District Court's decision and order.  On September 24, 2024, Harker filed his notice of appeal.

## SUMMARY OF ARGUMENT

The District Court properly determined that Harker did not suffer an injury in fact because of his failure to, at a minimum, express some interest in a gaffer position at any time. By virtue of his substantial industry experience and prior work for Something Ideal, Harker *knew* that Something Ideal employed gaffers for its commercial productions. *See* A-17–18 (¶¶ 34-36). He does not contend otherwise in his appeal brief.

Harker's undisputed knowledge of the gaffer position does not mesh with his failure to put Something Ideal on notice – at least informally – of his claimed interest in performing gaffer work. A "few words of general intent" are insufficient to establish an injury in fact for purposes of standing. *Carney v. Adams*, 592 U.S. 53, 64 (2020). And yet, here, Harker did even less than the plaintiff in *Carney*. He never communicated to Something Ideal *any* words of intent – general or specific – for work as a gaffer. Therefore, the District Court properly determined that Harker's actions (and, frankly, his non-actions) "'suggest[] an abstract, generalized grievance, not an actual desire to become' a DTL-Gaffer." A-58 (quoting *Carney*, 592 U.S. at 63).

That type of abstract, generalized grievance is the tell-tale sign of a claimant who lacks standing to sue. The District Court acknowledged Harker's race-based allegations regarding the DTL Program. A-58; A-61. But those allegations, alone,

12

do not confer standing onto Harker. Even if a statutory violation is pleaded, a plaintiff must still allege that the statutory violation caused him to suffer a concrete injury. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) ("Article III standing requires a concrete injury *even in the context of a statutory violation*.") (emphasis added) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

In a desperate attempt to gin up a concrete injury, Harker repeatedly emphasizes the higher compensation he would have earned as a gaffer. This argument puts the cart before the horse. Harker cannot seek wages he would have earned as a gaffer if, as he admits, he never expressed any interest (informally or otherwise) in performing gaffer work. To allow that claim would mean anyone in a lower paying position could allege a discrimination claim, even if the employee never put the employer on notice of his interest in the higher paying position. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) (acknowledging that employers "would be unfairly burdened" if an employee could merely express general interest in a position to satisfy the standing requirement).

The District Court also properly considered, and ultimately rejected, Harker's retaliation claims for lack of standing. Among other reasons, the District Court noted Harker's complete failure to express interest in the DTL-gaffer role, "even <u>after</u> he learned about the program on December 14, 2022." A-58 (emphasis in original). That pleading failure goes to the heart of the retaliation claim. Harker

13

cannot claim retaliatory failure to re-hire because he admits he learned about the DTL Program during the Commercial and thereafter failed to express any interest in being hired as a DTL-gaffer.

Finally, the Court may alternatively dismiss Harker's claims for other reasons in the record unrelated to the standing issue. *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 68 (2d Cir. 1991) (holding that this Court may affirm a lower court's ruling on any basis that is in the record). By failing to express interest in the gaffer position, Harker also failed to state a claim. Further, for the retaliation claim, Harker failed to plead a protected activity and an adverse employment action. And for the Section 1985(3) claim, Harker's claim is duplicative of his Title VII and Section 1981 claims.

The District Court's order and judgment should be affirmed.

14

## STANDARD OF REVIEW

This Court reviews *de novo* the District Court's dismissal of the Amended Complaint for lack of standing. *Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 173 (2d Cir. 2012). All well-pleaded allegations in the complaint must be accepted as true. *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). Further, when resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may also consider relevant materials beyond the pleadings. *Marakova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

The dismissal of Harker's claims may also be affirmed for failure to state a claim upon which relief may be granted. It is well-established that this Court "may affirm on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court." *Chesley*, 927 F.2d at 68 (citation and quotations omitted). In addition to the lack of standing, Something Ideal moved to dismiss Harker's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Something Ideal's Supplemental Appendix ("SA," cited herein as "SA-___") SA-23. As with the standard of review for standing, when deciding a motion to dismiss for failure to state a claim, the Court must accept all well-pleaded factual

15

allegations in the complaint as true. *See Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To defeat the motion, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The facts alleged in the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim that is merely conceivable does not meet the plausibility standard. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Whether a complaint meets the plausibility threshold is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## ARGUMENT

**I. The District Court Properly Determined That Harker Lacked Standing for His Discrimination Claims Because He Never Expressed Any Interest in Performing Gaffer Work for Something Ideal**

Harker's failure to express any interest in working as a gaffer for Something Ideal is fatal to his claims. To establish standing to challenge an allegedly discriminatory employment policy, a plaintiff must submit to that policy. *See Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997); *Dowdy v. New York City Dep't of Sanitation*, No. 22-CV-6284, 2023 WL 6258536, at *5 (S.D.N.Y. Sept. 26, 2023). In the context of a failure to hire claim, to submit to the challenged policy, "a plaintiff must show that he or she actually applied for the position at issue." *Dowdy*, 2023 WL 6258536, at *5 (citation omitted). For standing purposes, a plaintiff may be excused from applying for the position at issue "only where a plaintiff makes a *substantial* showing that application . . . would have been futile." *Jackson-Bey*, 115 F.3d at 1096 (emphasis added) (citing *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 365-66 (1977)).

Harker's allegations do not make a "substantial" showing of futility. Based on his 27-plus years of experience in the industry, including prior work as a gaffer, Harker knew that Something Ideal employed gaffers on commercial productions. He does not allege otherwise. That is, he cannot allege that he was unaware of Something Ideal's employment of gaffers on its commercial productions. He further

17

admits that, prior to the Commercial, he and Something Ideal entered into a settlement agreement, under which Something Ideal agreed to offer him electrician positions on future commercial productions. SA-25–31. Indeed, the settlement agreement expressly references the existence of a "Gaffer/Department Head" position. SA-26.

Infused with his industry knowledge of the gaffer role on commercial productions, and having struck a deal for future employment offers from Something Ideal, Harker needed to at least express *some* interest in gaffer work. He admits he did not. And his appeal brief ignores this issue altogether – not once does he address his prior knowledge of the gaffer role based on his 27 years' industry experience or the settlement agreement. Therefore, he does not make any showing of futility, let alone the "substantial" showing he needed to make in order to have standing.

Harker's alleged unawareness of the DTL Program does not establish futility because, as Harker concedes, he "did not seek to be a non-DTL gaffer." A-57–58. His admission exposes the contrived nature of his lawsuit, and why he lacks standing. By disavowing any interest in a non-DTL gaffer position, Harker confirms that he is not a bona fide applicant. If he was, then he would not have excluded himself from consideration for the non-DTL gaffer position, which entails the same pay and benefits as the DTL gaffer role. For example, Harker does not allege that the non-DTL gaffer role offered better pay as compared to the DTL gaffer role, or

18

vice versa. *See* A-19 (¶ 49) (Harker alleging that, by virtue of his job duties, he had knowledge of the DTL-gaffer's rate of compensation). A bona fide applicant with Harker's industry knowledge – and who previously entered into a settlement agreement with Something Ideal for future employment – would have, at a minimum, expressed *some* level of interest in performing gaffer work. But Harker never did. The District Court properly held Harker accountable for these pleading defects. A-58.

In a failed effort to sidestep these issues, Harker emphasizes that he "would have earned more money and gained gaffer experience in the DTL gaffer position" for the Commercial. Harker Appeal Br. at 14. There is no dispute, of course, that lost wages can qualify as damages in an employment case. But the fact that the gaffer position offered higher pay does not magically confer standing onto Harker. The same goes for his allegations of "stigmatiz[ation]" and "reputational harm." *Id.* Those allegations may represent potential damages for a claimant with standing, but they do not make a "substantial" showing that Harker submitted to the allegedly discriminatory policy. He skips over that pleading requirement in his brief for the simple reason that he cannot satisfy it. He understandably prefers to jump ahead to his potential damages.

Harker's legal hopscotch should not be allowed. Before he can seek damages, he must plead facts to establish that he submitted to the allegedly discriminatory

policy, not merely whether he would have received higher compensation in the gaffer role or whether he felt stigmatized. He needed to either allege that he expressed some level of interest in the gaffer position (which he did not) or demonstrate that expressing interest in the gaffer position would have been futile (which he did not, either).

Harker concedes the first point above, *i.e.*, that he did not express interest in the gaffer position at any time. For the futility issue, this Court has previously held that a claimant must do much more to make a "substantial" showing of futility. *See Jackson-Bey*, 115 F.3d at 1096. In *Jackson-Bey*, the plaintiff alleged that compliance with a prison's religion registration requirement for inmates seeking religious accommodations would have been futile because, among other reasons, the prison had previously stated that it did not recognize the plaintiff's religion. *Id.* at 1096-97. Even after acknowledging the prison's written declaration that it did not recognize the prisoner's religion, this Court nonetheless rejected the plaintiff's futility claim because it was "not at all clear" that the prison would not have accommodated the prisoner's religion accommodation had the prisoner complied with the "modest act" of identifying his religious affiliation to the prison. *Id.*

Even where a facially race-based policy exists, a plaintiff will still lack standing for failure to apply. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 170-71 (1972). The plaintiff in *Moose Lodge* was an African American who was denied

food and beverage service as the guest of a white member of a private club (the Moose Lodge). *Id.* at 165-66. The plaintiff challenged the constitutionality of two Moose Lodge's policies: (1) its policy against food and beverage service to African Americans; *and* (2) its policy against the admission of African American members into the club's membership. *Id.* at 165. The district court ruled in favor of the plaintiff's constitutional challenge, thereby ordering the revocation of the Moose Lodge's state-sanctioned liquor license so long as the Moose Lodge refused service to African Americans and refused to admit African Americans into membership. *Id.* at 166.

The U.S. Supreme Court reversed the portion of the District Court's order related to the Moose Lodge's race-based policy for excluding African Americans from membership. *Id.* The Court determined that the plaintiff "was not injured by Moose Lodge's membership policy since he never sought to become a member." *Id.* at 167. It made no difference that the Moose Lodge enforced an admittedly race-based admission policy. The plaintiff in *Moose Lodge* still lacked standing to sue on account of his failure to apply for membership. *Id.*

*Jackson-Bey* and *Moose Lodge* support the District Court's dismissal for lack of standing. Had Harker engaged in the modest act of expressing some level of interest in performing gaffer work, it is not at all clear that Something Ideal would not have hired him as a gaffer. This is particularly the case in light of the non-DTL

21

gaffer work offered by Something Ideal, for which Harker admits he did not apply or express interest.  His admitted knowledge of the gaffer position, considered in tandem with his prior settlement agreement for future work at Something Ideal, required him to say *something* about his alleged interest in being offered a gaffer job.

For the foregoing reasons, the District Court's decision to dismiss Harker's discrimination claims for lack of standing should be affirmed.

## II. The District Court Properly Determined That Harker Lacked Standing for His Retaliation Claims Because He Never Expressed Any Interest in Performing Gaffer Work for Something Ideal After He Learned of the DTL Program

Harker conveniently ignores the District Court's holding that he never alleged he expressed interest in the gaffer position *after* he learned of the DTL program. After acknowledging that "Harker could not have applied to a DTL-Gaffer position before he learned about the program," the District Court properly determined that Harker never "applied or otherwise expressed his interest in being considered for a DTL-Gaffer role in the future, even <u>after</u> he learned about the program on December 14, 2022." A-58 (emphasis in original).  That portion of the District Court's decision is at odds with Harker's argument that the District Court dismissed his retaliation claims "without pausing to provide any explanation as to why Harker lacked standing to bring the retaliation claims."  Harker Appeal Br. at 24.  Once Harker learned of the DTL Program, which he admits occurred no later than the Commercial

on December 14, 2022, he could have (and should have) expressed interest in the DTL-gaffer position. In fact, he does not allege that he applied for *any* positions with Something Ideal after the Commercial. The District Court properly determined that Harker lacked standing for his retaliation claim in light of those admitted facts.

### III.  Harker Does Not State a Claim for Discrimination or Retaliation Because He Failed to Express Interest in the Gaffer Role

Even if Harker's lack of standing is ignored, which it should not be, the Court may still affirm the dismissal of his discrimination and retaliation claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To plead a failure to hire claim, "a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected despite being qualified; and (4) after this rejection, the position remained open and the employer continued to seek applicants with plaintiff's qualifications." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 445 (S.D.N.Y. 2018) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see also Taylor v. City of New York,* 207 F. Supp. 3d 293, 303 (S.D.N.Y. 2016) (noting that same pleading standard applies for Title VII, Human Rights Law, and Section 1981 failure to hire claims); *Gad-Tadros v. Bessemer Venture Partners*, 326 F. Supp. 2d 417, 424 (E.D.N.Y. 2004) (holding that courts evaluate Section 1981 and Title VII discrimination claims under the same standards).

Even after amending his pleading, Harker still cannot satisfy the second and third elements above for his discrimination and retaliation theories. He alleges that Something Ideal offered him a "Best Boy Electrician" position, and he complains that "[h]e was not offered any gaffer positions." A-18–19 (¶¶ 40, 43). But nowhere in the Amended Complaint does Harker allege that he applied for *any* gaffer position – whether the position was affiliated with the DTL Program or not. Further, Something Ideal could not have rejected Plaintiff for a gaffer position – the third element – if he did not apply.

The application and rejection requirements for failure to hire claims are well-established. *See Brown v. Coach Stores, Inc.*, 163 F.3d at 706. In *Brown*, this Court affirmed the dismissal of a failure to promote claim[2] because the plaintiff failed to allege that she applied and was rejected for a specific position at the defendant. *Id.* at 712. According to *Brown*, a plaintiff must "allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion." *Id.* at 710 (citing *McDonnel Douglas*, 411 U.S. at 802); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, n.6 (1981)). Notably, *Brown* affirmed the granting

---

[2] It is of no moment that *Brown* is a failure to promote case since "[t]he test for determining whether [a] plaintiff has established a *prima facie* case of failure to promote for discriminatory reasons is the same as the *McDonnel Douglas* test for failure to hire." *Chojar v. Levitt*, 773 F. Supp. 645, 652 (S.D.N.Y. 1991).

of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), *not* a motion for summary judgment. The same reasoning in *Brown* supports dismissal of the failure to hire claims in this case.

Harker is quite aware of this pleading defect. In an attempt to stave off dismissal, he cites the exception to the application rule set forth in *Petrosino v. Bell Atlantic*, 385 F.3d 210, 227 (2d Cir. 2004). *See* A-31 (¶ 141) (citing same). Under that exception, a plaintiff need not apply for a position with the defendant if the plaintiff establishes that: "(1) "the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Petrosino*, 385 F.3d at 227 (citing *Brown*, 163 F.3d at 710 n.2).

To shoehorn his failure to hire claim into the *Petrosino* exception, Harker alleges that Something Ideal did not utilize a process for candidates to apply for the DTL Program positions for the Commercial. A-30 (¶ 134). He further alleges that Something Ideal did not publicly post any of the DTL Program positions and that he was unaware of whether there were DTL Program positions available for the Commercial. A-30–31 (¶¶ 135-136).

Those allegations do not satisfy the *Petrosino* exception. As an initial matter, this Court has described the exception as "narrow." *Petrosino*, 385 F.3d at 227. A plaintiff may not invoke the exception by merely asserting "that an aura of

25

discrimination in the workplace somehow discouraged her from filing a formal application." *Id.* Further, Harker does not allege any of the *Petrosino* exception requirements for the non-DTL gaffer position for the Commercial. All of his allegations regarding the *Petrosino* exception relate to the DTL Program positions only. *See* A-30–31 (¶¶ 134-136). Although he alleges Something Ideal did not have an application process for the DTL gaffer position, he omits the non-DTL gaffer role from that allegation. *See* A-30 (¶ 134). And his allegation that Something Ideal typically "initiated contact with prospective employees" (*see* A-31 (¶ 137)) is irrelevant, since he does not allege (nor could he allege) that he was unaware of a non-DTL gaffer position for the Commercial. A-30–31 (¶¶ 135-136). As a seasoned veteran of the commercial production industry (with over 27 years of experience as a gaffer, best boy, and electrician, no less), Harker knew there was a gaffer position. *See* A-17 *(¶ 35).*

New York federal courts do not hesitate to dismiss discrimination claims for failure to satisfy the *Petrosino* application exception. *See, e.g., Altidor v. Medical Knowledge Grp. LLC*, No. 1:22-CV-7083 (MKV), 2023 WL 6124019, at *7 (S.D.N.Y. Sept. 16, 2023) (granting Rule 12(b)(6) dismissal motion where plaintiff failed to allege that he applied informally for the position at issue); *Pollock v. Shea*, 568 F. Supp. 3d 500, 508 (S.D.N.Y. 2021) (granting Rule 12(b)(6) dismissal motion where plaintiff did not allege she was unaware of vacancies and that she applied for

the positions, either formally or informally).  In *Altidor*, for example, the plaintiff alleged that "he would have applied" for a position "had Defendant announced that there was an open spot." *Altidor*, 2023 WL 6124019, at *6.  That allegation was not enough to avoid dismissal.  *Altidor* held that "[a]n employee can know of a vacancy without it being posted or announced, and when that is the case, he must act before he can state a claim." *Id.* at *7.  Because the plaintiff in *Altidor* "fail[ed] to state any factual allegations to demonstrate that he attempted in any way to inquire about or pursue the open position," the court dismissed the race discrimination claim.  *Id.*[3]

The same reasoning applies here.  Like the plaintiff in *Altidor*, Harker knew about the non-DTL gaffer position for the Commercial without the position being posted or announced.  Harker does not allege otherwise, even after amending his Original Complaint.  Indeed, he cannot disavow knowledge of the gaffer position in light of his substantial experience in the commercial production industry, "most" of which includes prior work as a gaffer, best boy, or electrician.  A-17 (¶ 35).  He *knew*

---

[3] Although in the summary judgment context, *Fletcher v. ABM Building Value*, No. 14 Civ. 4712 (NRB), 2018 WL 1801310, at *9 (S.D.N.Y. Mar. 28, 2018) further illustrates why Harker fails to meet the *Petrosino* application exception.  In *Fletcher*, the plaintiff expressed interest in a promotion and allegedly told her supervisors, "if there is any opportunity that opened up that I would like to be considered for those opportunities." *Id*.  The *Fletcher* court held that statement was insufficient to avoid dismissal.  *Id*. ("This general expression of interest in promotion is insufficient as a matter of law to satisfy the application requirement for her claim.").  Here, Harker did even less than the plaintiff in *Fletcher*.  He never told anyone that he would like to be considered for future gaffer opportunities.  Notably, this Court affirmed *Fletcher*.  *See* 775 F. App'x 8 (2d Cir. 2019).

Something Ideal employed a gaffer on its commercial productions, and yet, he never applied for that job. Even if he allegedly did not know a DTL-gaffer position existed, he still could have inquired, informally or formally, about being hired for the non-DTL gaffer role.

It makes no difference that Something Ideal had already hired the non-DTL gaffer when it offered Harker the Best Boy position for the Commercial. Harker's reliance on the job offer email to show that the non-DTL gaffer position for the Commercial had been filled (*see* Harker Appeal Br. at 22) ignores his substantial industry knowledge, through which he admits he knew that Something Ideal employed gaffers on its commercial productions. His argument also ignores his prior employment relationship with Something Ideal, which included the settlement of a NLRB charge that required Something Ideal to offer Harker future employment opportunities. SA-25–31. Harker knew that future job offers from Something Ideal were forthcoming, and he knew that Something Ideal employed gaffers. Yet, he inexplicably never expressed any interest in a gaffer position before, during, or after the Commercial. To state a discrimination or retaliation claim, he needed to put Something Ideal on notice that he wanted gaffer work. He never did, therefore, his failure to hire and failure to re-hire claims were properly dismissed.

### IV. Harker Does Not State a Retaliation Claim Because He Fails to Allege a Protected Activity

Harker alternatively fails to plead a protected activity for his retaliatory failure to re-rehire claims. To state a claim for retaliation under Title VII, Section 1981, or the Human Rights Law, "a plaintiff generally must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Torre v. Charter Communs., Inc.*, 493 F. Supp. 3d 276, 288-89 (S.D.N.Y. 2020) (internal citation omitted); *see Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 56-57 (S.D.N.Y. 2019); *see also Paupaw-Myrie v. Mount Vernon City Sch. Dist.,* No. 21-CV-11237 (CS), 2023 WL 1109702, at *11 (S.D.N.Y. Jan. 30, 2022) (holding that courts evaluate Title VII and Section 1981 retaliation claims under the same standards); *see also Seals v. Marianetti-Desrosiers*, No. 5:21-CV-988 (BKS/TWD), 2022 WL 3153942, at *7 (N.D.N.Y. Aug. 8, 2022) (analyzing Title VII, Section 1981, and Human Rights Law retaliation claims under the same standards).

To engage in a protected activity, a plaintiff must allege "action that protests or opposes statutorily prohibited discrimination." *Giscombe v. New York City Dep't of Educ.*, 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). Protected activities "include informal complaints to the plaintiff's supervisors, commencing litigation, or filing a formal complaint." *Id.*; *see also*

29

*O'Brien v. City of New York, Dep't of Educ.*, 686 F. Supp. 3d 221, 235 (E.D.N.Y. 2023) (applying same protected activity standards to Title VII and Human Rights Law retaliation claims). And even though "informal protests of discriminatory employment practices, including making complaints to management[,] can constitute protected activity," *see Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 445 (W.D.N.Y. 2021) (citation omitted), "[g]eneralized complaints, however, are insufficient; complaints must be sufficiently specific to make clear that the employee is complaining about conduct prohibited by the applicable discrimination statute." *McCullough v. John T. Mather Hosp. of Port Jefferson, New York, Inc.*, No. 16-CV-4968 (DRH)(SIL), 2019 WL 1755436, at *8 (E.D.N.Y. Apr. 19, 2019) (*citing Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011)).

Further, to engage in a protected activity, a plaintiff must have "a good-faith, reasonable belief" that his employer's challenged action violated the law. *Kelly v. Howard I. Shapiro & Assocs. Consulting Engs., P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). Not just any violation of law will do. The plaintiff "is required to have a good faith, reasonable belief that []he was opposing an employment practice *made unlawful by Title VII.*" *Id.* (emphasis added) (citation and quotations omitted).

Here, Harker's alleged protected activities fall short of the standards above. He alleges that he asked "questions" of his supervisor and a gaffer about the DTL

30

Program. *See* A-19–20 (¶¶ 51-52). Merely asking questions, however, is not a protected activity. *See, e.g., Lawrence v. Thomas Learning, Inc.*, No. 1:05-CV-329 (RFT), 2007 WL 1593270, at *31 (N.D.N.Y. Jun. 1, 2007) (holding that the plaintiff's "mere inquiry" about the defendant's affirmative action plan was "not an allegation of an unlawful employment practice, and thus, does not constitute protected activity"); *c.f. Peddy v. L'Oréal USA, Inc.*, No. 18-CV-7499 (RA), 2020 WL 4003587, at *18 (S.D.N.Y. Jul. 15, 2020) (holding that a plaintiff's responses to an employer's questionnaire did not constitute protected activity because the responses did not allege discrimination based on a protected characteristic).

Notably absent from the Amended Complaint are the alleged questions Harker asked about the DTL Program, the date he allegedly asked the questions, and any alleged statements through which he complained to Something Ideal about race discrimination. The Amended Complaint offers nothing to establish that Harker's "questions" constituted complaints of race discrimination, let alone somehow put Something Ideal on notice of his alleged opposition to race discrimination. The most substance from Harker as to his "questions" is that he asked his production supervisor "what the DTL designation meant" within the Call Sheet for the Commercial. A-20 (¶ 52). That fleeting inquiry is not, and cannot become, the new standard for establishing a protected activity.

Harker's only other purported protected activity is his allegation that he told Something Ideal its payment practices "may" deprive DTL Program employees of their benefits under a collective bargaining agreement. A-32 (¶ 144). That alleged comment is not a protected activity for two reasons.

First, even if the comment was made, it does not establish that Harker held a good faith, reasonable belief that Something Ideal violated the law. He did not tell anyone that he believed Something Ideal was, in fact, engaged in an unlawful employment practice. Instead, by his own admission, he "communicated to Defendant Something Ideal, that their payment practices *may* deprive DTL employees of benefits they were owed under the IATSE Collective Bargaining Agreement." *Id.* (emphasis added). Therefore, at most, Harker expressed his hunch that Something Ideal "may" have breached a collective bargaining agreement. Communicating a hunch to an employer is insufficient to state a protected activity. *See Townsend v. Benjamin Enterps., Inc.*, 679 F.3d 41, 48 (2d Cir. 2012). In *Townsend*, for example, this Court noted that where a plaintiff did not know whether allegations of harassment were true, the plaintiff "thus lacked a good-faith belief that the discriminatory action had occurred, which is required for protection under the opposition clause." *Id.* That same reasoning applies here. Harker's alleged comment confirms that, at that time, he did not actually believe that Something Ideal

had, in fact, violated the law. He merely thought that Something Ideal "may" have violated the law.

Second, Harker's alleged comment falls short of establishing that he had a good faith, reasonable belief that, at the time of his comment, he was opposing conduct unlawful under Title VII. Harker alleges he told Something Ideal that the company's pay practices potentially deprived DTL Program employees of their rights under a collective bargaining agreement. A-32 (¶ 144). That communication suggests a potential breach of contract or National Labor Relations Act violation, but it is not an alleged Title VII violation. *See Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678, 681 (2d Cir. 2016) (no protected activity where plaintiff challenged the employer's procedures for investigating internal discrimination complaints, since Title VII does not proscribe particular procedures for handling such complaints); *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988) (no protected activity where plaintiff complained about employer's selection of white job candidate over minority job candidates). Accordingly, the alleged "collective bargaining agreement" comment does not meet the requirement for opposing conduct prohibited under Title VII.[4]

---

[4] In Harker's original complaint, his alleged protected activity was his alleged question about "what the DTL designation meant?" SA-9 (¶ 49); SA-14 (¶ 86-87). After amending his complaint, he suddenly portrayed himself as a champion of BIPOC employees' rights, alleging for the first time that he expressed a concern about BIPOC employees' benefits under a collective bargaining agreement. In any

Harker's anticipated reliance on paragraph 145 of the Amended Complaint is of no moment. That paragraph tells only part of the relevant story. It must be read in tandem with the paragraph immediately beforehand, paragraph 144, in which Harker alleges his actual comment to Something Ideal. To wit, in paragraph 144, he alleges:

> Mr. Harker communicated to Defendant Something Ideal, that their payment practices *may* deprive DTL employees of benefits they were owed under the IATSE Collective Bargaining Agreement.

A-32 (¶ 144) (emphasis added).

Then, in the next paragraph of the Amended Complaint, Harker alleges:

> Because the "DTL" category is defined by race, Mr. Harker expressed to Shun Tsuchiya, Something Ideal's production supervisor for the December 14, 2022 Meta production, that depriving DTL employees of benefits owed to them under the CBA was racially discriminatory.

*Id.* (¶ 145).

When the two paragraphs are read together, as they must be, the Court can see these allegations for what they are. Paragraph 144 alleges Harker's actual comment to Something Ideal (*i.e.*, that its payment practices *might* deprive DTL employees of certain benefits owed under a collective bargaining agreement), whereas paragraph 145 sets forth Harker's conclusory assertion that his alleged comment constituted

---

case, even if Harker's newfound affinity for BIPOC employees must be accepted as true for purposes of the motions to dismiss, the alleged comment about a *potential* violation of a collective bargaining agreement does not constitute a protected activity.

opposition to race discrimination merely because it referenced "the 'DTL' category," which Harker alleges "is defined by race." Harker's actual comment to Something Ideal – not his characterization of that comment – is relevant here. *See Iqbal*, 556 U.S. at 678 (2009) ("mere conclusory statements" are not entitled to the presumption of truth on a motion to dismiss). He cannot clean up the inadequacy of his alleged comment by relying upon his after-the-fact characterization.

As much as he wishes it was not the case, Harker's use of the word "may" in paragraph 144 matters. It means that, at most, he expressed his suspicion of a *potential* violation. And in any case, he voiced his concern about a potential violation of a collective bargaining agreement, not a potential violation of Title VII. That is not enough to meet the protected activity standards.

Harker's alleged comment in paragraph 144 of the Amended Complaint also could not have put Something Ideal on notice of his purported opposition to unlawful race discrimination. *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII."). The alleged comment more closely suggests a potential violation of a

35

collective bargaining agreement, as opposed to a potential violation of Title VII.[5] The mere reference to the DTL Program is not enough. *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1010 (8th Cir. 2005) (complaint that "there were no blacks in the district-manager position in his region" did not constitute a protected activity), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

Harker's failure to plead sufficient details about his alleged comment is compounded by the fact that he already previously amended his complaint. The allegations in the Amended Complaint are, apparently, the best he can do. His alleged comments did not establish that he put Something Ideal on notice of conduct prohibited by Title VII, nor can he establish that he held a reasonable, good-faith belief of an *actual* Title VII violation. Therefore, the retaliation claims should alternatively be dismissed for Harker's failure to allege a protected activity.

## V. Harker Does Not State a Retaliation Claim Because He Fails to Plead an Adverse Employment Action After the Commercial

Even if Harker sufficiently pleaded a protected activity, which he does not, the retaliatory failure to re-hire claims still fail because he does not allege he applied for a job with Something Ideal after his alleged protected activities. *See Chen v.*

---

[5] Harker's recourse for retaliation in response to an allegation of a collective bargaining agreement violation is an unfair labor practice charge for retaliation before the National Labor Relations Board, *not* a Title VII retaliation suit in court. *See* 29 U.S.C. § 158(a)(1).

*Bowes*, No. 98-CV-2478(EBB), 2000 WL 1849762, at *5 (D. Conn. Nov. 22, 2000) ("It is well established that an essential element to any failure to rehire or promote claim is that the plaintiff has applied for or at least expressed interest in rehire or promotion.") (citing *Brown,* 163 F.3d at 706).

Harker does not allege that he applied for or expressed interest in being offered a position at Something Ideal after his purported protected activities. He also does not allege that he was unaware of whether there were any open positions at Something Ideal following the December 14, 2022 Commercial. Harker is a self-proclaimed 27-year production industry veteran who has professional relationships with other production industry employees through his years of union membership. *See* A-17 (¶¶ 34-35); A-20–21 (¶ 60). He could have very easily inquired, whether formally or informally, about employment opportunities at Something Ideal following the Commercial. He admits he never did. He also fails to allege that he applied and was rejected. The most he can allege is that he "has not been re-hired for any subsequent projects by the Defendants." A-24 (¶ 89). Again, even after accepting Harker's pleadings as true, Something Ideal could not have unlawfully refused to re-hire him if he never applied for a job after his supposed protected activities. This is yet another basis to affirm the dismissal of the retaliation claims.

## VI.    The Section 1985(3) Claim is Duplicative of the Section 1981 and Title VII Claims

Section 1985(3) "does not create substantive rights or liabilities; instead, it is a remedial statute." *Singh v. Excel Sec. Corp.*, No. 14 Civ. 10111 (PAC), 2021 WL 1199469, at *9 (S.D.N.Y. Mar. 30, 2021) (citing *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979)); *see also Foss v. Coca-Cola Enterps., Inc.*, Case No. 07-CV-1322 (JS)(WDW), 2008 WL 11447999, at *4 (E.D.N.Y. Jan. 4, 2008). By failing to plead a violation of Section 1981, Harker has failed to state a claim under Section 1985(3). Further, even if he had pleaded a violation of Section 1981, which he has not, "alleged violations of Section 1981 cannot form the basis of a conspiracy claim under Section 1985(3)." *Tardd v. Brookhaven Nat. Laboratory*, 407 F. Supp. 2d 404, 414 (E.D.N.Y. 2006) (citing *Brown v. Philip Morris, Inc.,* 250 F.3d 789, 805-06 (3d Cir. 2001)); *Jenkins v. Arcade Bldg. Maint*., 44 F. Supp. 2d 524, 532-34 (S.D.N.Y. 1999).

Nor does Title VII provide a safety route for Harker's Section 1985(3) claim. In the context of employment discrimination claims, it is well-established that Section 1985(3) "may not be invoked to redress violations of Title VII." *Novotny*, 442 U.S. at 378. Yet that is precisely what Harker seeks to do here – redress an alleged violation of Title VII via a claim under Section 1985(3). Accordingly, whether it is asserted to redress a violation of Title VII or Section 1981, the Section 1985(3) claim in this case fails as a matter of law. *See Singh*, 2021 WL 1199469, at

38

*9 (dismissing discriminatory failure to hire claim under Section 1985(3) as nothing more than plaintiff's "attempt to vindicate his Title VII rights through § 1985(3) – something the law does not allow").

In the alleged discriminatory failure to hire context specifically, this Court has affirmed a district court's dismissal of Section 1985(3) claims. *See McCall v. City of Danbury*, 116 F. Supp. 2d 316, 319-21 (D. Conn. 2000), *aff'd*, 16 Fed. App'x 77, 79 (2d Cir. 2001); *see also Singh*, 2021 WL 1199469, at *9, *aff'd*, No. 21-1092-cv, 2022 WL 2187206, at *2 (2d Cir. June 17, 2022).

*McCall* dismissed the plaintiff's race-based failure to hire claims under Title VII and Section 1981. *McCall*, 116 F. Supp. 2d at 320. In addition to race-based discriminatory hiring, the plaintiff in *McCall* alleged that the defendants conspired in violation of Section 1985 to create an application process that discriminated against African American applicants. *Id*. at 318-20. Having dismissed the Title VII and Section 1981 claims arising from the same allegations, *McCall* also dismissed the Section 1985 claim. *Id*. at 321. This Court affirmed. 16 Fed. App'x at 79.

The same reasoning in *McCall* applies here. Harker may try to brand his Section 1981 claim against Something Ideal as a "non-employment claim," but that does not make it so. The plain reading of the Amended Complaint is that Harker's claims against Something Ideal are for the alleged failure to hire him as a gaffer based upon his race. Regardless of the statutory vehicle, those claims fail as a matter

39

of law for the reasons stated above. And even if Harker had alleged a viable race-based failure to hire claim, which he has not, his Section 1985(3) claim would nonetheless fail, because it arises from the same alleged conduct as his Title VII claim.

## **CONCLUSION**

This is not a case where an employer created a new position in secret, only for the plaintiff to learn of the position at a later time. Harker, a seasoned veteran of the commercial production industry, who had entered into a settlement agreement with Something Ideal for future employment opportunities, knew that Something Ideal employed gaffers. If, as he now claims, he was dead set on obtaining work as a gaffer, he should have, and he could have, communicated his alleged interest to Something Ideal. He never did, even after he learned about the DTL Program. His *admitted* failure to express interest in both the non-DTL and DTL gaffer positions exposes his real motives here. He is not a bona fide applicant. Therefore, he lacks Article III standing, and the District Court's decision should be affirmed. In the alternative, even if the Court determines Harker has standing, the record supports affirming the dismissal of all claims against Something Ideal for the other grounds cited herein.

Dated: February 4, 2025                  VENABLE LLP
151 West 42nd Street, 49th Floor
New York, New York 10036
(212) 370-6296
nmreiter@venable.com
jfbeeber@venable.com

By:    */s/ Nicholas M. Reiter*
Jessie F. Beeber
Nicholas M. Reiter

*Attorneys for Defendant-Appellee
Something Ideal, LLC d/b/a "M ss ng
P eces"*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Second Circuit Rule 32.1(a)(4) because it contains 9,173 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated:  February 4, 2025            */s/ Nicholas M. Reiter*
                                    Nicholas M. Reiter