# 24-2555

## United States Court of Appeals

### *for the*

## Second Circuit

JAMES HARKER,

*Plaintiff-Appellant,*

– v. –

META PLATFORMS, INC., ASSOCIATION OF INDEPENDENT
COMMERCIAL PRODUCERS, INC., SOMETHING IDEAL, LLC,
DBA M SS NG P ECES, BBDO WORLDWIDE, INC.,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## SUPPLEMENTAL APPENDIX FOR DEFENDANT-APPELLEE
## SOMETHING IDEAL, LLC D/B/A M SS NG P ECES

JESSIE F. BEEBER
NICHOLAS M. REITER
VENABLE LLP
*Attorneys for Defendant-Appellee
Something Ideal, LLC d/b/a
M ss ng P eces*
151 West 42nd Street, 49th Floor
New York, New York 10036
(212) 307-5500

CP COUNSEL PRESS    (800) 4-APPEAL • (336932)

i

## TABLE OF CONTENTS

                                                                          **Page**

Complaint, dated September 5, 2023 ........................   SA-1

Amended Notice of Defendant Something Ideal,
    LLC, d/b/a M ss ng P eces' Motion to Dismiss
    Plaintiff's First Amended Complaint Pursuant to
    Federal Rules of Civil Procedure 12(b)(1) and
    12(b)(6), dated December 19, 2023 ......................   SA-23

National Labor Relations Board Settlement
    Agreement (Case No. 29-CA-274206), dated
    September 2, 2022 ................................................   SA-25

SA-1

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES HARKER,<br><br>*Plaintiff*<br><br>v.<br><br>META PLATFORMS, INC.,<br>ASSOCIATION OF INDEPENDENT<br>COMMERCIAL PRODUCERS, INC.,<br>SOMETHING IDEAL, LLC, doing<br>business as "M SS NG<br>P ECES," and BBDO WORLDWIDE, INC.<br><br>*Defendants.* | Civil Action No.:<br><br><br><br><br><br><br>**COMPLAINT** |

Plaintiff James Harker, by and through his undersigned counsel, hereby

avers:

### NATURE OF THE ACTION

1.      This lawsuit is about a race-based hiring program called "Double the

Line," which intentionally discriminates against white men and women, in violation

of the Constitution and laws.

2.      "Double the Line" was created by the Association of Independent

Producers ("AICP") to benefit "Black Indigenous People of Color" ("BIPOC") (sic) and

to exclude non-BIPOC individuals.

3.      The unlawful and immoral intention and purpose of "Double the Line"

is to discriminate between, and steer jobs and independent contracting opportunities

to, individuals based on their race, color, and/or national origin to "push forward a

1

demographic shift." *Equity and Inclusion*, AICP, https://bit.ly/3Z3P1sr.

4.    Meta Platforms, Inc. ("Meta"), BBDO Worldwide, Inc. ("BBDO"), and Something Ideal, Inc. conspired and combined with AICP to support and implement "Double the Line."

5.    James Harker is a highly experienced motion picture lighting technician who, for over twenty-seven years, has worked on major commercial, feature film, and television productions, primarily as an electrician and as a member of the crew behind the camera.

6.    Yet because he is a white man, the Defendants targeted him for discrimination, stigma, and cancellation.

7.    The Defendants have denied Mr. Harker equal rights in violation of 42 U.S.C. § 1981.

8.    The Defendants have conspired to violate Mr. Harker's civil rights in violation of 42 U.S.C. 1985(3).

9.    Something Ideal, Inc. has violated Mr. Harker's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq. by intentionally discriminating against him because of his race, color, or national origin.

## THE PARTIES

10.    The Plaintiff, James Harker, is a New York citizen with his primary residence in Brooklyn, New York.

11.    Defendant Meta Platforms, Inc. maintains its headquarters in Menlo Park, California, and is incorporated in Delaware. Defendant Meta has a registered agent and can be served at 80 State Street, Albany, NY 12207.

12. Defendant, Something Ideal, LLC, d/b/a "M SS NG P ECES" has its principal place of business in New York and is a Florida Limited Liability Company. Defendant Something Ideal, LLC, has a registered agent and can be served at 801 US HWY 1, North Palm Beach, FL 33408.

13. Defendant BBDO Worldwide, Inc. has its principal place of business in New York and is a New York Corporation. Defendant BBDO has a registered agent and can be served % Corporation Services Co., 80 State Street, Albany, NY 12207.

14. Defendant AICP has its principal place of business in New York and is a New York Not-For-Profit Corporation. Defendant AICP has a registered agent and can be served % Drechsler & Leff, 292 Madison Ave., New York, NY, 10017.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the federal claims arise under the Constitution and laws of the United States.

16. This Court has supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367(a).

17. Plaintiff seeks declaratory and injunctive relief under 28 U.S.C. §§ 2201, 2202. Plaintiff seeks compensatory and punitive damages under 42 U.S.C. §§ 1981, 1985(3), 1988, and 42 U.S.C. § 2000e et seq. and the New York Human Rights Law.

18. Venue is proper in this District under 42 U.S.C § 2000e-5(f)(3), and 28 U.S.C. § 1391(b)(2).

## FACTS

**A.    The Double the Line Program Created by AICP.**

3

19.    Defendant AICP is an association of commercial production companies.

20.    According to the AICP, its members account for 80-85% of all motion picture ads in the United States. *AICP at a Glance*, AICP, https://bit.ly/47NVJH0.

21.    The AICP created and supports the "Double the Line" ("DTL") initiative as part of its Equity and Inclusion Program.

22.    DTL is described by the AICP on its website as follows.

> What does it mean to #doubletheline? It's simple. On every commercial production, roles for the project are listed on individual lines in the budget with their associated costs.

> On every job you are bidding, the agency and/or client will consult with the production and post production company and based on potential candidates, costs, and opportunities, will agree to double the role of any single position on the bid. In doing so, they agree to cover the costs to hire a BIPOC candidate to work alongside the chosen role.

*Double the Line*, AICP, https://bit.ly/3OXQ095.

23.    The AICP defines "BIPOC" to mean "Black, Indigenous People of Color" (sic) and uses the term to target and exclude white people born in the United States because of their race, color, or national origin.

24.    The AICP justifies this unlawful and immoral racism on the grounds that:

> Many agencies and clients are reaching out to production and post companies asking how to add mandates to the bidding process to increase diversity among crew.

> We are asking clients and agencies to take the pledge to #doubletheline so that we can increase diversity and inclusion with an emphasis on leadership positions.

*Double the Line*, AICP, https://bit.ly/3OXQ095.

4

25.    Defendants Meta and Something Ideal are examples of such "clients and agencies."

26.    The AICP describes how DTL works this way:

> Once the role is agreed upon, the final total of that budget line (including the appropriate P&W, insurance, etc.) would be duplicated on a separate line item labeled "Double the Line." Production and post companies can make this "Double the Line" line item cost plus and provide any required back up. In this way, the total amount invested is clear on every project and makes the monetary investment accountable and measurable.

*Double the Line*, AICP, https://bit.ly/3OXQ095.

27.    The AICP's website contains an "FAQ" explaining that clients, production companies, and ad agencies should participate in the DTL initiative because "In order to increase the diversity of crew at all levels of the process, we have to acknowledge that a primary issue we face is access to our industry." *Double the Line*, AICP, https://bit.ly/3OXQ095.

28.    The AICP website provides additional clarity on the scope of the agreement between the various parties, including the agency, client, and production company:

> The way it [DTL] works is simple. An agency or client commits in advance to #doubletheline in their bidding specs. In bidding, the production or post company will identify one or more lines they'd suggest be doubled, based either on potential candidates they know, the nature of the job, or a predetermined financial commitment. Once the role is agreed upon, the final total of that budget line (including the appropriate P&W, insurance, etc.) would be duplicated on a separate line item called "Double the Line." Production and post companies can make this "Double the Line" item cost plus and provide any required backup. In this way, the total amount invested is clear on any project and makes the monetary investment accountable and measurable.

5

*Double the Line*, AICP, https://bit.ly/3OXQ095.

29.     The AICP even provides resources to find BIPOC-only candidates with a list of other organizations that primarily focus on hiring only black candidates, such as "Black in Post," which focuses solely on black artists in post-production work. *Talent Resources*, AICP, https://bit.ly/3QXBBwc.

30.     It explains:

> For instance, an agency or client would commit to spending $15k and the production company could suggest they double the line for the producer. Whether it's someone coming from television, or a producer that they have been working with in music videos and want to continue their training. The agency or client would agree, thereby allowing a BIPOC producer to work alongside the commercial producer in a paid capacity.

> The idea is to pick one line that allows a candidate who has not previously had access to our business, but is qualified in the role, to have access to the production to learn the nuances around commercial production in a real, hands on way.

*Double the Line*, AICP, https://bit.ly/3OXQ095.

31.     The AICP explains that the production company is responsible for "identifying, hiring, and educating" the DTL candidates. *Double the Line*, AICP, https://bit.ly/3OXQ095.

32.     The AICP further explains that the funds invested in the DTL initiative can be categorized and tracked because the funds are "clearly labeled in the budget on their own dedicated line to easily allow a production, post production company, agency, or client to track the monies invested." *Double the Line*, AICP, https://bit.ly/3OXQ095. Specifically:

> Once the role is agreed upon, the final total of that budget line (including the appropriate P&W, insurance, etc.) would be

> duplicated on a separate line item labeled "Double the Line." Production and post companies can make this "Double the Line" line item cost plus and provide any required back up. In this way, the total amount invested is clear on every project and makes the monetary investment accountable and measurable.

*Double the Line*, AICP, https://bit.ly/3OXQ095.

33.     The intent and purpose of the DTL initiative and of the AICP's "Equity and Inclusion program" is to encourage, facilitate, and promote facially illegal race-based hiring to "push forward a demographic shift" and to stigmatize, target, harm, demote, constructively discharge, refuse to hire, and intentionally discriminate against white people like Mr. Harker solely because of their race, color, and national origin.

**B.     James Harker's Work Experience.**

34.     James Harker has worked for over twenty-seven years as an electrician on major commercial, feature film, and television productions.

35.     Most of his work over the last twenty-seven years was done as a gaffer, best boy, or electrician. A gaffer is the most senior or highest-level electrician on a production, while a best boy electrician has supervisory duties over the other electricians and reports to the gaffer.

36.     Mr. Harker's experience generally, and as a gaffer particularly, includes understanding protocols, work practices, and electrical equipment as essential to maintaining the safety of the set because they are dealing with high voltage cables, sophisticated equipment unique to the industry, and complicated equipment rigging techniques necessary to prevent the risk of fire or electrocution to the cast and crew, as well as countless other potential injuries.

7

SA-8

37.    Mr. Harker is a former union member with the International Alliance of Theatrical State Employees ("IATSE") Local 52.

38.    Mr. Harker withdrew from the union before the December 14, 2022, production.

**C.    The December 14, 2022, Production.**

39.    On December 12, 2022, Mr. Harker received an email from the production supervisor, Shun Tsuchiya, and was offered a position as Best Boy Electrician for a commercial being made on December 14, 2022.

40.    He was not offered any gaffer positions.

41.    He accepted the Best Boy position.

42.    On December 14, 2022, Mr. Harker's responsibilities included supervisory responsibilities, organizing equipment, managing the work of electricians according to the needs of the gaffer, and ensuring all the crew members' paperwork (their W-2 forms, NYS wage forms, timecards, etc.) were completed and submitted.

43.    Listed on the Call Sheet for the December 14, 2022, shoot were two gaffers; one of them had "DTL" listed next to their name.

44.    Mr. Harker spoke with the gaffer with DTL next to her name, and she indicated she did not have any experience as a gaffer.

45.    While preparing the crew's paperwork as part of his duties, Mr. Harker learned the DTL Gaffer, despite the lack of experience, was compensated more than he was earning as an experienced electrician.

8

46.    Mr. Harker was offended by this and followed up with questions to both the DTL Gaffer and the Production Supervisor.

47.    While the DTL Gaffer was pleasant, it became clear to Mr. Harker that she had virtually no experience as an electrician and limited knowledge of the electrical equipment and work practices on set.

48.    Mr. Harker observed that the DTL Gaffer was unable to even properly coil an electric extension cord, which is among the most basic skills of any motion picture electrician.

49.    Mr. Harker then asked Shun Tsuchiya, the production supervisor, what the DTL designation meant.

50.    Tsuchiya explained that the DTL designation was related to a program run by the AICP that applied to the December 14, 2022, production.

51.    The Call Sheet listed a total of nine (9) "DTL" production members working on December 14, 2022.

52.    Because Mr. Harker is white, he was not considered for any of the relevant positions designated as "DTL" on the December 14, 2022, Call Sheet.

53.    Since December 14, 2022, Mr. Harker has not been re-hired for any subsequent projects by the Defendants.

**D.    Defendants' Relationship to the DTL Program.**

54.    Defendant Meta is listed on the AICP website as a DTL Program Supporter. *Double the Line Supporters*, AICP, https://bit.ly/47Oz9Oy.

55.    The "Double the Line" supporters are described as follows:

9

> In addition to our membership, Double the Line is supported by industry-leading clients and agencies. We thank them for their commitment to a more diverse industry and creating opportunities for **BIPOC** crew members.

56.     Something Ideal, LLC, was the production company for the commercial being made for Meta on December 14, 2022.

57.     The FAQ for the DTL Program on AICP's website explains how candidates are selected for participation:

> The role will be selected based on the parameters of the project with potential candidates identified by the production or post production company. The goal of this is for the companies to invest in the building of careers and apprenticeship training over a period of several jobs to ensure the needed experience is received. The agency and the client would commit to covering the cost of the selected role, thereby doubling the line.

*Double the Line*, AICP, https://bit.ly/3OXQ095 (click on "Question: How do I select a candidate for participation?").

58.     Defendant Something Ideal, LLC, participated in the DTL initiative.

59.     Defendant Meta, the client, and/or Defendant BBDO, the agency, committed to "covering the cost of the selected role, thereby doubling the line."

60.     Upon information and belief, Defendant Meta and/or Defendant BBDO had a "clearly labeled" budget identifying the cost of the DTL initiative.

61.     Defendants were aware of and participated in the DTL initiative with full knowledge and intent to discriminate on the basis of race, color, or national origin.

62.     Defendants conspired to implement the DTL initiative and Equity Inclusion program with the goal of creating lasting positions for these DTL individuals.

63.    Defendants conspired and contracted to implement the DTL initiative and to deny and continue to deny Mr. Harker the opportunity to contract for available positions for which he was willing and qualified to do so.

## CLAIMS FOR RELIEF

### Count I
### Violation of the Civil Rights Act of 1866, 42 U.S.C. §1981

64.    Plaintiff repeats and reasserts each and every allegation in paragraphs 1-63 above as if fully set forth herein at length.

65.    42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of private contracts.

66.    It protects the rights of "would-be" contractors along with those who have already made contracts.

67.    Defendants conspired and agreed to contract based on race, color, or national origin pursuant to the DTL initiative.

68.    But for his race and national origin, Mr. Harker was qualified to apply for the positions reserved by Defendants for "BIPOC" individuals.

69.    Defendants, jointly and severally, are knowingly and intentionally violating Section 1981 by expressly excluding Mr. Harker from employment and other contract opportunities because of his race or national origin.

70.    Defendants have acted with malice and/or reckless indifference to Mr. Harker's rights, and thus have caused Mr. Harker to be damaged.

### Count II
### Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985(3)

71.    Plaintiff repeats and reasserts each allegation in paragraphs 1-70 above as if fully set forth herein at length.

72.    The Defendants conspired and agreed to discriminate against Mr. Harker, and to violate his legal rights, because of his race or national origin.

73.    The Defendant AICP designed the racially discriminatory DTL initiative and condoned, encouraged, aided, and abetted its implementation and execution, all in violation of Mr. Harker's rights.

74.    The Defendant Meta participated in, condoned, encouraged, facilitated, and aided and abetted the implementation and execution of the racially discriminatory DTL initiative by, among other things, funding it, promoting it, and authorizing or encouraging the use of racially discriminatory hiring practices on, *inter alia*, the December 14, 2022, production in conformance thereof, all in predictable and intentional violation of Mr. Harker's rights.

75.    The Defendant BBDO participated in, condoned, encouraged, facilitated, and aided and abetted the racially discriminatory DTL initiative by, among other things, funding it and authorizing or encouraging the use of racially discriminatory hiring practices on, *inter alia,* the December 14, 2022, production in conformance thereof, all in predictable and intentional violation of Mr. Harker's rights.

76.    The Defendant Something Ideal, LLC, pursuant to its agreements with the other Defendants, participated in, condoned, facilitated, and aided and abetted the racially discriminatory DTL initiative by applying it to the December 14, 2022,

12

production, all in predictable and intentional violation of Mr. Harker's rights.

77.    The Defendants' actions as described herein constitute an unlawful race-based conspiracy in malicious and willful violation of Mr. Harker's rights contrary to 42 U.S.C. § 1985(3), and thus have caused Mr. Harker to be damaged.

### Count III
### Discriminated in Violation of Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e et seq.

78.    Plaintiff repeats and reasserts each and every allegation in paragraphs 1-77 above as if fully set forth herein at length.

79.    The Defendant Something Ideal, LLC, pursuant to its agreements with the Defendants Meta and BBDO, and for the purpose of executing the Defendant AICP's plan to "push forward demographic shift," created a racially exclusive applicant pool for DTL positions on the December 14, 2022, production that limited, segregated, or classified Mr. Harker in a way depriving him, or tending to deprive him, of employment opportunities or adversely affect his status as an employee because of his race, color, or national origin.

80.    The Defendant Something Ideal, LLC, pursuant to its agreements with the Defendants Meta and BBDO, and for the purpose of executing the Defendant AICP's plan to "push forward demographic shift," paid the DTL gaffer more than it paid Mr. Harker, discriminating against him with respect to his compensation, terms, conditions, or privileges of employment because of his race, color, and national origin.

81.    Mr. Harker filed a timely charge with the EEOC for discrimination by the Defendant Something Ideal, LLC, on May 31, 2023.

82.    Mr. Harker has a Notice of Right to Sue Letter from the United States Equal Employment Opportunity Commission, dated June 8, 2023. *See* Exhibit 1.

83.    Mr. Harker has complied with Title VII's charge filing provisions, 42 U.S.C. §§ 2000e-5(e)(1) and (f)(1).

84.    The Defendant's actions as described herein constitute an unlawful race and color based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and thus have caused Mr. Harker to be damaged.

## Count IV
### Retaliation in Violation of Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e-2 et seq.

85.    Plaintiff repeats and reasserts each and every allegation in paragraphs 1-84 above as if fully set forth herein at length

86.    Defendant Something Ideal, LLC has not hired Mr. Harker for any subsequent projects since Mr. Harker questioned Defendants' unlawful DTL hiring practice.

87.    The Defendant's actions as described herein constitute an unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and thus have caused Mr. Harker to be damaged.

## Count V
### Violation of N.Y. Exec. Law § 296

88.    Plaintiff repeats and reasserts each and every allegation in paragraphs 1-87 above as if fully set forth herein at length

89.    The New York Human Rights Law prohibits the Defendants:

A. From discriminating against Mr. Harker based on his race, color, national origin, or age.

B. From refusing to hire or employ or to bar or to discharge him, or to discriminate against him in compensation or in terms, conditions or privileges of employment, based on his race, color, national origin, or age.

C. From posting the AICP program online and making any inquiry in connection with prospective employment, which expresses directly or indirectly, any limitation, specification or discrimination as to race, color, or national origin unless based upon a bona fide occupational qualification.

D. From denying or withholding from Mr. Harker the right to be admitted to or participate in the AICP initiative because of his race, color, or national origin.

E. From discriminating against Mr. Harker in his pursuit of employment and contracting opportunities subject to the AICP program, and in the terms, conditions or privileges thereof, because of his race, color, or national origin.

90. The public policy of this State condemns racial discrimination. "No person shall, because of race, color, creed, or religion, be subjected to any discrimination in his civil rights." (N.Y. CONST., art. I, § 11, adopted by Constitutional Convention of 1938; approved by the People, Nov. 8, 1938.).

91. Likewise, it is unlawful to aid, abet, incite, compel, or coerce any of the acts forbidden by the New York Human Rights Law. N.Y. Exec. Law § 296, et seq.

92. The Defendants Meta, Something Ideal, and BBDO, in concert, aided, abetted, and condoned by the AICP, denied Mr. Harker employment and contracting opportunities solely because of his race, color, and national origin.

93. These Defendants, aided and abetted by AICP, placed less-qualified DTL "BIPOC" employees in leadership positions and paid the DTL "BIPOC" employees more than Mr. Harker solely because of their race, color, or national origin.

94.    The Defendants violated New York's Human Rights Law, and thus have

caused Mr. Harker to be damaged.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Harker respectfully requests that this Court enter

judgment in his favor and against Meta, AICP, BBDO, and Something Ideal, LLC,

jointly and severally with respect to all defendants identified in each separate

Count, and provide the following relief:

A.    A declaratory judgment that the Double the Line Program violates 42 U.S.C. § 1981 and/or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq.

B.    A declaratory judgment that the Defendants are violating New York's Human Rights Law, N.Y. Exec. Law § 296.

C.    A permanent injunction barring the Defendants from operating the "Double the Line" program and otherwise violating applicable nondiscrimination laws.

D.    An order for such equitable relief, including back pay, will make James Harker whole for the Defendants' conduct; compensatory damages; punitive damages; and prejudgment and post-judgment interest.

E.    Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws.

F.    Such other relief as the Court deems appropriate and just.

Dated: New York, New York
         September 5, 2023

Respectfully submitted,
/s/ Ronald A. Berutti

Ronald A. Berutti
Murray-Nolan Berutti LLC
30 Wall Street
8th Floor
New York, New York 10005

16

(212) 575-8500
ron@murray-nolanberutti.com

Nicholas R. Barry (TN Bar No. 031963)
(pro hac vice forthcoming)
Ian Prior (MA Bar No. 655704)
(pro hac vice forthcoming)
America First Legal Foundation
611 Pennsylvania Ave, SE #231
Washington, DC 20003
Telephone: (615) 431-9303
Facsimile: (513) 216-9882
nicholas.barry@aflegal.org
juli.haller@aflegal.org
ian.prior@aflegal.org
Attorneys for Plaintiff

## JURY DEMAND

Trial by jury is demanded on all Counts so triable.

Dated: New York, New York
       September 5, 2023

MURRAY-NOLAN BERUTTI LLC
Attorneys for Plaintiffs

*s/ Ronald A. Berutti*

By:_____
       Ronald A. Berutti
       30 Wall Street, 8th Floor
       New York, New York 10005
       212-575-8500

SA-18

## CERTIFICATE OF COMPLIANCE

This document complies with Local Rule 11.1(b) because it uses a 12-point font.

SA-19

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 06/08/2023

**To:** Mr. James J. Harker
250 Ocean Parkway Apt. 5-I
BROOKLYN, NY 11218
Charge No: 520-2023-04789

EEOC Representative and email:    RICHARD MCCRAE
Investigator
richard.mccrae@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2023-04789.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
06/08/2023
Timothy Riera
Acting District Director

SA-20

**Cc:**

Please retain this notice for your records.

SA-21

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 520-2023-04789 to the District Director at Timothy Riera, 33 Whitehall St 5th Floor

New York, NY 10004.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

SA-22

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to:
https://www.eeoc.gov/eeoc/foia/index.cfm.

SA-23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES HARKER,

       Plaintiff,

    v.

META PLATFORMS, INC., ASSOCIATION
OF INDEPENDENT COMMERCIAL
PRODUCERS, INC., SOMETHING IDEAL,
LLC, doing business as "M SS NG P ECES,"
and BBDO WORLDWIDE, INC.

       Defendants.

Case No. 1:23-CV-07865-LTS

**AMENDED NOTICE OF
DEFENDANT SOMETHING IDEAL,
LLC, D/B/A   M SS NG P ECES'
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT
PURSUANT TO FEDRAL RULES OF
CIVIL PROCEDURE 12(b)(1) and
12(b)(6)**

      **PLEASE TAKE NOTICE** that, upon the accompanying Memorandum of Law and the
Original Complaint and Amended Complaint filed by Plaintiff in the above-captioned action (Dkt.
Nos. 1, 34), Defendant Something Ideal, LLC d/b/a "M ss ng P eces" ("Something Ideal"), through
its attorneys Venable LLP, will move this Court, before the Honorable Laura T. Swain, United
States District Judge, on a date and time to be set by the Court, at the Southern District of New
York, 500 Pearl Street, Courtroom 17C, for an Order dismissing the First Amended Complaint
against Something Ideal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and
for such other further relief as the Court deems just and proper.

      Pursuant to the Court's Individual Rules for motions in civil matters, Something Ideal
certifies that Something Ideal used its best efforts to resolve the matters raised in its motion.
Something Ideal's resolution efforts are set forth in the supporting declaration of Nicholas M.
Reiter, counsel for Something Ideal.  Something Ideal further states that the challenged pleading
has been amended in response to the arguments raised in the motion, with the exception of Sections

SA-24

IV.B. and IV.C. of Something Ideal's supporting memorandum of law, which respond to new

allegations in the First Amended Complaint.

Dated: December 19, 2023                    VENABLE LLP
New York, New York

/s/ Nicholas M. Reiter
Jessie F. Beeber
Nicholas M. Reiter
151 W 42nd Street, 49th Floor
New York, New York 10036
(212) 370-6296
jfbeeber@venable.com
nmreiter@venable.com

*Attorneys for Defendant Something Ideal,
LLC d/b/a "M ss ng P eces"*

SA-25

UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD
**SETTLEMENT AGREEMENT**

**IN THE MATTER OF**

| | |
|---|---|
| Arts and Sciences, Biscuit Filmworks, CMS Products, | **Case Nos. 29-CA-274217** |
| Division7, M ss ng P eces, Morton Jankel Zander, Inc., O | **29-CA-274206** |
| Positive LLC, Park Pictures LLC, Piro, Inc., Radical Media | **29-CA-274241** |
| LLC, Smuggler, Spare Parts, Inc. | **29-CA-274254** |
| Charged Parties | **29-CA-276120** |
| | **29-CA-277630** |

Subject to the approval of the Regional Director for the National Labor Relations Board, Arts and Sciences, Biscuit Filmworks, CMS Products, Division7, M ss ng P eces, Morton Jankel Zander, Inc., O Positive LLC, Park Pictures LLC, Piro, Inc., Radical Media LLC, Smuggler, Spare Parts, Inc. ("Charged Parties") and James Harker, an Individual ("Charging Party") **HEREBY AGREE TO SETTLE THE ABOVE MATTER AS FOLLOWS**:

**POSTING OF NOTICE TO EMPLOYEES —** Upon approval of this Agreement and receipt of the Notices from the Region in English and in additional languages if the Regional Director decides that it is appropriate to do so, a responsible official of each of the Charged Parties will then sign and date those Notices and immediately post them in all locations where each of the Charged Parties typically posts notices to employees.

**SENDING NOTICES TO EMPLOYEES —** Upon approval of this Agreement, a responsible official of each of the Charged Parties will then sign and date those Notices. A responsible official of each of the Charged Parties will, within fourteen (14) days of the Regional Director's approval of this agreement, email or mail the Notices to all employees who worked for the Charged Parties under the collective bargaining agreement with Motion Picture Studio Mechanics, Local 52, International Alliance of Theatrical Stage Employees (Union) between March 15, 2021 and August 1, 2022 on a production that filmed in New York, New Jersey, or Connecticut. The message of the e-mail transmitted with the Notices will state: "We are distributing the Attached Notice to Employees to you pursuant to a Settlement Agreement approved by the Regional Director of Region 29 of the National Labor Relations Board in Case(s) 29-CA-274217, 29-CA-274206, 29-CA-274241, 29-CA-274254, 29-CA-276120, and 29-CA-277630."

**FUTURE OFFERS OF WORK –** Each of the Charged Parties will, by letter, email or text message, offer Charging Party James Harker a position on each of their CBA covered productions shooting in New York, New Jersey, or Connecticut that begins hiring CBA production crew in the six (6) month period beginning one month after the Regional Director's approval of this agreement and notwithstanding that the shooting of such commercial production is scheduled to take place after the six (6) month period. The Charged Parties, directly or via an agent, will offer Harker a

SA-26

position on all commercial productions in any CBA covered electrical department category where the production employs more than one CBA covered employee (not counting the Gaffer/Department Head) in the electrical department. The positions offered to Harker will be covered by the collective bargaining agreement between the AICP Production Companies and Motion Picture Studio Mechanics, Local 52, IATSE or its successor collective bargaining agreement ("CBA"). The Charged Parties will offer Harker a position (an "offer" shall include but shall not be limited to a request to Harker to put himself "on hold") on each such production. Harker may reject any offer without prejudice to him. If Harker accepts an offer, and the production begins, Harker will be employed on the production. The number of days that Harker will be offered work on each production shall be subject to the mutual agreement of Harker and each Charged Party in light of production specifications, budget, creative decisions, and Harker's schedule.

Every month, each Charged Party will provide the Compliance Officer of Region 29 with a running list of all productions which began hiring in the electrical department for the prior month. Since the Charged Parties agree to offer Harker employment on every production, the lists will contain the name of each production that offered Harker work, the name of the position offered, the date and manner of each offer (via letter, email, or text message) and whether Harker accepted or rejected said offer. The list will state the date and manner of Harker's acceptance or rejection of each offer. Each monthly list is due by the 10th day of the subsequent month. Each Charged Party will also provide a copy of each list to Harker by the 10th day of the subsequent month.

**MAKE WHOLE REMEDY: PAYMENT OF WAGES, BENEFITS, INTEREST AND EXCESS TAX LIABILITY TO DISCRIMINATEE** — Within fourteen (14) days from approval of this agreement, the Charged Parties will make Harker whole by payment to him of the amount opposite their name below. Each of the Charged Parties is responsible for paying its share of FICA and will make appropriate withholdings for taxes. Each of the Charged Parties will remit a separate check for the interest, excess tax and expenses portion of the backpay due (if applicable), from which no withholdings shall be made. Each of the Charged Parties will compensate Harker for the adverse tax consequences, if any, of receiving one or more lump sum backpay awards covering periods longer than one (1) year. Each of the Charged Parties will also file with the Regional Director a completed Report of Backpay Paid under the National Labor Relations Act, which the Regional Director will file with the Social Security Administration for the purpose of allocating the payment to the appropriate calendar year. Each of the Charged Parties will file with the Regional Director a copy of the IRS form W-2 for wages earned by the employees in the current calendar year no sooner than December 31st of the current year and no later than January 30th of the following year, as such form is prepared by the Charged Party's Charging Party's payroll service or in lieu of such form the wage information pertaining to Harker as determined by the Charged Party's payroll service.. The Compliance Officer, on behalf of the Regional Director, will distribute the checks and itemized earnings statements to Harker.

| Charged Party | Backpay | Interest | Excess Tax Liability |
|---|---|---|---|
| Arts and Sciences | $1,341 | $52 | $12 |
| Biscuit Filmworks | $145 | $8 | $2 |
| CMS Productions | $3,053 | $120 | $19 |
| Division7 | $5,744 | $153 | $30 |
| Morton Jankel Zander, Inc. | $77 | $3 | $1 |

SA-27

| O Positive LLC | $1,103 | $25 | $6 |
|---|---|---|---|
| Park Pictures LLC | $2,857 | $84 | $17 |
| Radical Media LLC | $4,251 | $82 | $18 |
| Smuggler | $1,282 | $60 | $17 |
| Spare Parts, Inc. | $2,841 | $72 | $14 |

**PENSION FUND AND INDIVIDUAL ACCOUNT PLAN CONTRIBUTIONS** – The Charged Parties will make payment on behalf of Harker to the Motion Picture Industry Pension and Health Plan and to the Individual Account Plan in the amounts required under the CBA as set forth below. Each of the Charged Parties will remit those prepared checks to the Compliance Officer at the address set forth above.

| Charged Party | Pension Fund Contribution | Interest |
|---|---|---|
| Arts & Sciences | $59 | $2 |
| Biscuit Filmworks | $59 | $3 |
| CMS Productions | $177 | $7 |
| Division7 | $353 | $9 |
| O Positive LLC | $59 | $1 |
| Park Pictures LLC | $176 | $5 |
| Radical Media LLC | $294 | $10 |
| Smuggler | $59 | $3 |
| Spare Parts, Inc. | $177 | $4 |

| Charged Party | Individual Account Plan Contribution | Interest |
|---|---|---|
| Arts and Sciences | $77 | $3 |
| Biscuit Filmworks | $8 | $0 |
| CMS Productions | $179 | $7 |
| Division7 | $336 | $9 |
| Morton Jankel Zander, Inc. | $4 | $0 |
| O Positive LLC | $62 | $1 |
| Park Pictures LLC | $163 | $5 |
| Radical Media LLC | $246 | $7 |
| Smuggler | $59 | $3 |
| Spare Parts, Inc. | $166 | $3 |

**COMPLIANCE WITH NOTICE —** The Charged Parties will comply with all the terms and provisions of said Notice.

**SCOPE OF THE AGREEMENT —** This Agreement settles only the allegations in the above-captioned case(s), including all allegations covered by the attached Notice to Employees made part of this agreement, and does not settle any other case(s) or matters. It does not prevent persons from filing charges, the General Counsel from prosecuting complaints, or the Board and the courts

SA-28

from finding violations with respect to matters that happened before this Agreement was approved regardless of whether General Counsel knew of those matters or could have easily found them out. The General Counsel reserves the right to use the evidence obtained in the investigation and prosecution of the above-captioned case(s) for any relevant purpose in the litigation of this or any other case(s), and a judge, the Board and the courts may make findings of fact and/or conclusions of law with respect to said evidence.

**PARTIES TO THE AGREEMENT —** If the Charging Party fails or refuses to become a party to this Agreement and the Regional Director determines that it will promote the policies of the National Labor Relations Act, the Regional Director may approve the settlement agreement and decline to issue or reissue a Complaint in this matter. If that occurs, this Agreement shall be between the Charged Parties and the undersigned Regional Director. In that case, a Charging Party may request review of the decision to approve the Agreement. If the General Counsel does not sustain the Regional Director's approval, this Agreement shall be null and void.

**AUTHORIZATION TO PROVIDE COMPLIANCE INFORMATION AND NOTICES DIRECTLY TO CHARGED PARTIES —** Counsel for the Charged Parties authorizes the Regional Office to forward the cover letter describing the general expectations and instructions to achieve compliance, a conformed settlement, original notices and a certification of posting directly to the Charged Parties. If such authorization is granted, Counsel will be simultaneously served with a courtesy copy of these documents.

Yes _____     No _____
Initials                  Initials

**PERFORMANCE —** Subject to the terms set forth above, performance by the Charged Parties with the terms and provisions of this Agreement shall commence immediately after the Agreement is approved by the Regional Director, or if the Charging Party does not enter into this Agreement, performance shall commence immediately upon receipt by the Charged Parties of notice that no review has been requested or that the General Counsel has sustained the Regional Director.

Each Charged Party agrees that in case of non-compliance with any of the terms of this Settlement Agreement by the Charged Party, and after fourteen (14) days' notice from the Regional Director of the National Labor Relations Board of such non-compliance without remedy by the Charged Party, the Regional Director will issue a complaint that includes the allegations covered by the Notice to Employees, as identified above in the Scope of Agreement section, as well as filing and service of the charge(s), commerce facts necessary to establish Board jurisdiction, labor organization status, appropriate bargaining unit (if applicable), and any other allegations the General Counsel would ordinarily plead to establish the unfair labor practices. Thereafter, the General Counsel may file a Motion for Default Judgment with the Board on the allegations of the Complaint. The Charged Party understands and agrees that all the allegations of the Complaint will be deemed admitted and that it will have waived its right to file an Answer to such Complaint. The only issue that the Charged Party may raise before the Board will be whether it defaulted on the terms of this Settlement Agreement. The General Counsel may seek, and the Board may impose, a full remedy for each unfair labor practice identified in the Notice to Employees. The Board may then, without necessity of trial or any other proceeding, find all allegations of the Complaint to be true and make findings of fact and conclusions of law consistent with those

SA-29

allegations adverse to the Charged Party on all issues raised by the pleadings. The Board may then issue an Order providing a full remedy for the violations found as is appropriate to remedy such violations. The parties further agree that a U.S. Court of Appeals Judgment may be entered enforcing the Board Order ex parte, after service or attempted service upon Charged Party at the last address provided to the General Counsel.

Responsibility for compliance with the terms of this Agreement is several and not joint. The failure of any Charged Party to comply shall not affect, or result in a compliant issued against, any other Charged Party.

**NOTIFICATION OF COMPLIANCE** — Each party to this Agreement will notify the Regional Director in writing what steps each of the Charged Parties have taken to comply with the Agreement. This notification shall be given within five (5) days, and again after sixty (60) days, from the date of the approval of this Agreement. If the Charging Party does not enter into this Agreement, initial notice shall be given within five (5) days after notification from the Regional Director that the Charging Party did not request review or that the General Counsel sustained the Regional Director's approval of this agreement. No further action shall be taken in the above captioned case(s) provided that the Charged Parties comply with the terms and conditions of this Settlement Agreement and Notice.

| **Charging Party** **James J. Harker, An Individual** | | | **Charged Party** **Arts & Sciences** | | |
|---|---|---|---|---|---|
| By: | Name and Title | Date | By: | Name and Title | Date |
| Print Name and Title below | | | Print Name and Title below | | |
| **Charged Party** **Biscuit Filmworks** | | | **Charged Party** **CMS Productions** | | |
| By: | Name and Title | Date | By: | Name and Title | Date |
| Print Name and Title below | | | Print Name and Title below | | |

SA-30

| **Charged Party**<br>**Division7** | **Charged Party**<br>**M ss ng P eces** |
|---|---|
| By:　　　Name and Title　　　　Date<br><br>_____<br>Print Name and Title below | By:　　　Name and Title　　　Date<br>**09/02/2022**<br><br>*[signature]*<br>**Marla Whittaker - Freelance HoP** |
| **Charged Party**<br>**Morton Jankel Zander Inc.** | **Charged Party**<br>**O Positive LLC** |
| By:　　　Name and Title　　　　Date<br><br>_____<br>Print Name and Title below | By:　　　Name and Title　　　Date<br><br>_____<br>Print Name and Title below |
| **Charged Party**<br>**Park Pictures LLC** | **Charged Party**<br>**Piro Inc.** |
| By:　　　Name and Title　　　　Date<br><br>_____<br>Print Name and Title below | By:　　　Name and Title　　　Date<br><br>_____<br>Print Name and Title below |
| **Charged Party**<br>**Radical Media LLC** | **Charged Party**<br>**Smuggler** |
| By:　　　Name and Title　　　　Date<br><br>_____<br>Print Name and Title below | By:　　　Name and Title<br><br>_____<br>Print Name and Title below |

SA-31

| | |
|---|---|
| **Charged Party**<br>**Spare Parts** | |
| By:    Name and Title         Date<br><br>_____<br>Print Name and Title below | <br><br><br>_____<br> |
| **Recommended by:**<br>**John Mickley, Board Agent**<br><br><br>_____    _____<br>**Name**                    **Date** | **Approved by:**<br>**Kathy Drew King, Regional Director**<br><br><br>_____<br>**Name**                    **Date** |